# Exhibit 1



# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Essence Oliphant<br>Dollar Tree Stores Inc<br>500 Volvo Pkwy<br>Chesapeake, VA 23320-1604 |
| **Electronic copy provided to:** | Heather Mohr<br>JJ Jacobson-Allen |

| | |
|---|---|
| **Entity:** | Dollar Tree Stores, Inc.<br>Entity ID Number  3697563 |
| **Entity Served:** | Dollar Tree Stores, Inc. |
| **Title of Action:** | L.G., a minor through her mother and natural guardian vs. Wanabana LLC |
| **Matter Name/ID:** | L.G., a minor through her mother and natural guardian vs. Wanabana LLC (17491075) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Personal Injury |
| **Court/Agency:** | Middlesex County Superior Court, NJ |
| **Case/Reference No:** | MID-L-003463-25 |
| **Jurisdiction Served:** | New Jersey |
| **Date Served on CSC:** | 06/19/2025 |
| **Answer or Appearance Due:** | 35 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Anglin Rea Cahalane & Pieper, P.A.<br>609-409-0444 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

ANGLIN REA CAHALANE & PIEPER, P.A.
Patrick H. Cahalane, Esq., ID #02152-1992
Attorney for Plaintiff(s)
1005 Eastpark Boulevard
Cranbury, New Jersey 08512
(609)409-0444

| | | |
|---|---|---|
| | | SUPERIOR COURT OF NEW JERSEY |
| L.G., a minor through | : | LAW DIVISION |
| her mother and natural guardian, MARILYN | : | |
| GONZALEZ, and, MARILYN GONZALEZ, | : | |
| individually, | : | |
| | : | |
| *Plaintiff(s)* | : | MIDDLESEX COUNTY |
| vs. | : | |
| WANABANA LLC; WANABANA USA | : | Docket No. MID-3463-25 |
| LLC; DOLLAR TREE STORES, INC.; | : | |
| JOHN DOE CORPS. 1-10 | : | Civil Action |
| *Defendant(s)* : | | **SUMMONS** |

From the State of New Jersey
To the Defendant(s) named above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided). If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, CN-971, Trenton, NJ 08625. A filing fee of $175.00 payable to the Clerk of the Superior Court and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live. A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

Date:   June 10, 2025                          */s/ Michelle M. Smith*
                                               Michelle M. Smith, Esq., Superior Court Clerk

Name of Defendant to be served:      *DOLLAR TREE STORES INC.*
Address of the Defendant to be served:

ANGLIN REA CAHALANE & PIEPER, P.A.
Patrick H. Cahalane, Esq., ID #02152-1992
Attorney for Plaintiff(s)
1005 Eastpark Boulevard
Cranbury, New Jersey 08512
(609)409-0444

| | |
|---|---|
| L.G., a minor through her mother and natural guardian, MARILYN GONZALEZ, and, MARILYN GONZALEZ, individually, | SUPERIOR COURT OF NEW JERSEY LAW DIVISION |
| *Plaintiff(s)* | MIDDLESEX COUNTY |
| vs. | |
| WANABANA LLC; WANABANA USA LLC; DOLLAR TREE STORES, INC.; JOHN DOE CORPS. 1-10 | Docket No. |
| *Defendant(s)* | Civil Action **COMPLAINT** |

L.G., a minor through her mother and natural guardian, MARILYN GONZALEZ, and, MARILYN GONZALEZ individually,   (hereinafter collectively referred to as "Plaintiffs"), file this complaint against WanaBana LLC, WanaBana USA LLC (hereinafter referred to as "WanaBana Defendants"), John Doe Corporations 1-10 (hereinafter referred to as "John Doe Parties"), and Dollar Tree Stores, Inc. (hereinafter referred to as "Dollar Tree" all collectively referred to as "Defendants" for personal injuries and damages sustained as a result of plaintiff, L.G., a minor through her mother and natural guardian, MARILYN GONZALEZ, ingestion of lead contained in WanaBana Defendant's product, WanaBana Apple Cinnamon Fruit Purée (hereinafter referred to as "Products"), and sold by Dollar Tree. Plaintiffs' allegations are made upon their personal knowledge, acts and experiences and, as to all other matters, upon information and belief.

## NATURE OF THE ACTION

1. Plaintiff MARILYN GONZALEZ is the natural mother of L.G., a minor.

1

2. Plaintiff L.G. consumed Defendants' Products and suffered catastrophic life-long injuries, including lead poisoning that will require continued medical monitoring, as a result of her consumption of Defendants' lead-contaminated Products.

3. The WanaBana Defendants design, manufacture, distribute, test, package, label, promote, market, advertise, distribute, and provide for sale fruit Purée "pouches," including the lead-contaminated apple cinnamon Products at issue here, throughout the United States.

4. The Dollar Tree Defendant is a retailer and seller of the WanaBana Defendants' fruit Purée pouches, including the lead-contaminated cinnamon apple Products.

5. Defendants are each liable to Plaintiffs for the injuries Plaintiffs have suffered by virtue of the doctrine of joint and several liability. Further, as alleged herein, Defendants worked and work in tandem to sell the Products.

## THE PARTIES
### Plaintiffs

1. Plaintiffs MARILYN GONZALEZ who, along with her Minor Child, L.G., are citizens and residents of Parlin, Middlesex County, New Jersey;

2. Minor child L.G. consumed Defendants' products from approximately August 2022 to August 2023, when L.G. was approximately 2 years old and during her developmental stages. During this time period, L.G. consumed several pouches of Defendants' Products.

3. As a result of her ingestion of Defendants' Products, L.G. has suffered catastrophic, life-long injuries including lead poisoning.

### *Defendants*

1. Defendant WanaBana LLC is a Florida Limited Liability Corporation with its principal place of business

2

at 9405 N. Miami Ave., Miami Shores, FL 33150.

2. Defendant WanaBana LLC contracts for ingredients for, manufactures, tests, packages, labels, promotes, markets, advertises, and/or distributes, and sells the Products throughout the United States, including in Central New Jersey and Staten Island, New York.

3. Defendant WanaBana LLC registered as a Florida Limited Liability Corporation on January 11, 2018.

4. Defendant WanaBana USA LLC is a Florida Limited Liability Corporation with its principal place of business at 1413 Ponce De Leon Ave., Ste. 301 San Juan, Puerto Rico 00907.

5. Defendant WanaBana USA LLC contracts for ingredients for, manufactures, tests, packages, labels, promotes, markets, advertises, and/or distributes, and sells the Products throughout the United States, including in Middlesex County, State of New Jersey and Staten Island County, New York.

6. The WanaBana Defendants produce, manufacture, market, distribute, and/or sell pureed fruit and vegetable products comprised of various flavorings. These products are manufactured, produced, marketed, and distributed out of Florida. At all times relevant to this Complaint, Defendant WanaBana's products were sold throughout USA the including in State of New Jersey and State of New York.

7. Defendant Dollar Tree Stores, Inc. is a Virginia Limited Liability Corporation with its principal place of business at 500 Volvo Parkway, Chesapeake, Virginia 23320.

8. At all times relevant to this Complaint, Defendant Dollar Tree Stores, Inc., marketed, advertised, sold and/or distributed the WanaBana Defendants' products to Plaintiffs and across the United States, including throughout the State of New Jersey and State of New York.

9. Defendants John Doe Corporations 1-10 are the fictitious names of corporations, partnerships, or other business entities or organizations whose identities are not presently known, and who are the alter egos of or are otherwise responsible for the conduct or liability of those who developed, manufactured, packaged, sold, supplied purchased, marketed, promoted, advertised, distributed, labeled, sold, and/or retained

3

profits from the Products to which Plaintiff L.G. was exposed.

10. Defendants as used in this Complaint collectively refers to and means Defendants WanaBana LLC, WanaBana USA LLC, Dollar Tree Stores, Inc., and the John Doe parties, either or both in its own right or as a corporate successor to an entity or person whose acts, omissions, undertakings, or activities are attributed to it by contract or operation of law.

### JURISDICTION AND VENUE

1. This is an action for damages in excess of fifty-thousand dollars.

2. This Court has original jurisdiction, as Defendants committed tortious acts within the State of New Jersey and State of New York.

3. Plaintiffs are entitled to bring this action before this Court as the WanaBana Defendants maintain a corporate residence in the State of New Jersey and State of New York.

4. The WanaBana Defendants contract with suppliers and import their Products from Ecuador for distribution throughout the United States via a large shipping and warehouse facility in Jacksonville, Florida. From this Florida location, the WanaBana Defendants then distribute the Products throughout the United States, making them available at numerous online and retail outlets including through Defendant Dollar Tree stores.

5. The WanaBana Defendants regularly and systematically conduct business, including importing, contracting, distributing, and selling its products—including the Products at issue here— in the State of New Jersey and the State of New York and the United States.

6. During all relevant times, the WanaBana Defendants controlled the sourcing of ingredients, quality control, testing, manufacturing, design, packaging, labeling, marketing, promotion, advertising, distribution, and sales of their Products. Therefore, the WanaBana Defendants had control over the contents, packaging and labeling of their Products.

4

MID-L-093463-25   06/09/2025 4:03:26 PM   Pg 5 of 38   Trans ID: LCV20251712838

7. The WanaBana Defendants have also been involved in the manufacture, design, testing, packaging, labeling, marketing, advertising, promotion, distribution, and sales of the Products under the WanaBana name throughout the United States, including in the State of New Jersey and the State of New York. The WanaBana Defendants have done so continuously throughout the relevant time period.

8. The Defendant Dollar Tree regularly and systematically conducts business, including selling WanaBana Defendants' products—including the Products at issue here—in Middlesex County and Staten Island County, to consumers in Middlesex County and State Island County, and throughout New Jersey, New York and the United States.

9. The Dollar Tree Defendant has sold the Products to consumers continuously throughout the relevant time period here, including in New Jersey, New York and in Middlesex County, New Jersey and Staten Island County, New York.

10.Accordingly, all Defendants are subject to the jurisdiction of this Court.

11.Venue is likewise proper in Middlesex County because all Defendants are subject to personal jurisdiction in Middlesex County and regularly conduct substantial business in Middlesex County. Moreover, a substantial part of the events, acts and transactions giving rise to the action—including distribution, marketing, promotion, and manufacturing of the Products—occurred in Middlesex County, New Jersey.

## FACTUAL ALLEGATIONS: Plaintiffs' Facts

1.In or around August 2022, Plaintiff MARILYN GONZALEZ began purchasing WanaBana Apple Cinnamon Fruit Purée pouches, from a store owned and operated by Defendant Dollar Tree, for her Minor Child L.G..

2.Plaintiff MARILYN GONZALEZ, as the parent of the Minor Child, seeks to provide a diet that is both nutritious and healthy for her young and developing Minor Child.

5

3.As a result of these concerns, Plaintiff MARILYN GONZALEZ relied heavily on the Products' labeling which indicated it was "kosher," "additive-free," and "USDA Organic" when purchasing the Defendants' WanaBana Apple Cinnamon Fruit Purée pouches for her Minor Child.

4. Minor Child L.G. began consuming Defendants' WanaBana Apple Cinnamon Fruit Purée pouches in or around March 2022 to March 2023, when L.G. was approximately two years old.

5.Minor Child L.G. consumed the "pouches" of Defendants' Products until approximately August 2023.

6.In August of 2023, as part of her medical exam, L.G.'s physician tested her blood. The physician subsequently discovered that L.G. had an elevated level of lead in her system, with a blood lead level of 6.8 µg/dL.

7.L.G.'s elevated blood lead level caused, Plaintiff MARILYN GONZALEZ worry and concern for her Minor Child's health.

8. Plaintiff MARILYN GONZALEZ also had her and her 10 year old son's blood collected for lead testing; the results of both collections showed normal blood lead levels. Plaintiff MARILYN GONZALEZ also had her property tested for lead; the results showed normal lead levels.

9.In response to this new development, the Middlesex County Environmental Health Department conducted a lead investigation into L.G.'s home — no sources of lead were found at the Minor Child's home.

10. As extensive lead investigations exhausted plausible other sources of lead to explain the cause of the Minor Child's elevated blood lead level, the Minor Child's physician recommended that Plaintiff MARILYN GONZALEZ conduct an "elimination diet" – a process-of-elimination audit of the food consumed in Plaintiffs' household.

6

11. Through doing an elimination diet during approximately July of 2023, Plaintiffs realized that the only food consumed by the Minor Child that was not consumed by Plaintiffs MARILYN GONZALEZ and her 10 year old son, were the Defendants' WanaBana Fruit Purée Products.

11. Immediately following the elimination diet, the Minor Child stopped consuming Defendants' Products.

12. Accordingly, other blood lead tests were conducted on L.G.. These subsequent tests revealed that the Minor Child's blood lead levels had declined.

13. Since eliminating Defendants' Products from her diet, L.G.'s blood lead level declined from 6.8 μg/dL to 1.6 μg/dL. Following the Minor Child's exposure, Plaintiff, MARILYN GONZALEZ, began treatments for the Minor Child for lead extraction, and developmental and medical monitoring.

14. Continued treatment is necessary for childhood lead poisoning victims, such as L.G., because lead poisoning can manifest itself throughout an individual's life through developmental delays, learning difficulties, irritability, loss of appetite, sluggishness and fatigue, abdominal pain, vomiting, constipation, hearing loss, and seizures. As a result, regular monitoring is required for early detection of lead poisoning manifestations.

15. As a result of consuming Defendants' Products, L.G. is subject to continued treatment and monitoring, requiring routine appointments with physicians, chelation treatment, blood lead level testing, developmental testing, and regular appointments with a nutritionist.

16. Recent physician testing for L.G. reports that her elevated blood lead levels have decreased less and less from August 2023 to September 2023 to October 2023 since L.G. stopped consuming Defendants' Products and Plaintiff, MARILYN GONZALEZ prepared all food for L.G.'s intake.

### *North Carolina Public Health Authorities' Investigation of Plaintiffs' Lead Exposure Leads to FDA Action and Recall*

1. Upon North Carolina public health authorities' discovery of lead contained in Defendants' Products purchased and consumed by Plaintiffs, as well as the Products simultaneously being linked to many childhood lead poisoning cases in North Carolina, North Carolina public health authorities issued a statement ("NCDHHS Statement") regarding four children in the North Carolina who were found to have high levels of lead in their blood linked to the WanaBana Defendants' Purée products.[1]

2. On or about October 30, 2023, the FDA issued a public health alert, based on the NCDHHS Statement and coordinated investigations among North Carolina public health authorities, that the Products contained "extremely high levels" of the lead (hereinafter referred to as "FDA Alert"). [2]

3. The FDA Alert stated that the NCDHHS "analyzed multiple lots of WanaBana apple cinnamon fruit puree, detecting extremely high concentrations of lead."[3]

---

[1] North Carolina Department of Health and Human Services ("NCDHHS"), *NCDHHS Urges Caution After Reportable Lead Found in WanaBana Brand Apple Cinnamon Puree*, https://www.ncdhhs.gov/news/press-releases/2023-10-28-ncdhhs-urges-caution-after-reportable-lead-found-WanaBana-brand-apple-cinnamon-puree, Oct. 28, 2023 (last accessed Jan. 18, 2023) ("NCDHHS Statement").

[2] Food and Drug Administration ("FDA"), *FDA Advises Parents and Caregivers Not to Buy or Feed WanaBana Apple Cinnamon Fruit Purée Pouches to Toddlers and Young Children Because of Elevated Lead Levels*, https://www.fda.gov/food/alerts-advisories-safety-information/fda-advises-parents-and-caregivers-not-buy-or-feed-WanaBana-apple-cinnamon-fruit-puree-pouches, Nov. 3, 2023 (last accessed Jan. 18, 2023) ("FDA Alert").

[3] *Id.*

4. The FDA Alert also stated that "The FDA has reviewed and supports NCDHHS's analytical findings and found that analytical results at this level could result in acute toxicity" and that it "has shared the results with [WanaBana Defendants] whose representatives are cooperating with the FDA and have agreed to voluntarily recall all WanaBana apple cinnamon fruit purée pouches regardless of expiration." [4]

5. The FDA identified and confirmed the serious health implications arising from lead exposure and its toxicity. [5]

6. On November 3, 2023, the investigation into WanaBana Defendants' Products was transferred to the FDA's Coordinated Outbreak Response & Evaluation (CORE) Network for continued investigation "in collaboration with the Centers for Disease Control and Prevention (CDC) and state and local partners." [6]

7. On November 09, 2023, the FDA announced that the recall of WanaBana Apple Cinnamon Fruit Purée pouches was expanded to include Schnucks Apple Sauce 90g pouches with cinnamon, and Weis Cinnamon Apple Sauce 90g, both of which are independently distributed private label brands of the WanaBana Defendants. [7]

8. The FDA also made a statement that "FDA is aware that, as of December 13 [2023], recalled WanaBana Apple Cinnamon Purée products (including recalled three packs) were still on the shelves at several Dollar Tree stores in multiple states. As of December 19 [2023], FDA also

---

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] FDA, *Company Announcement: WanaBana Recalls WanaBana, Weis, and Schnucks Apple Cinnamon Fruit Purée Pouches & Cinnamon Apple Sauce Due to Elevated Lead Levels*, Nov. 9, 2023, https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/WanaBana-recalls-WanaBana-weis-and-schnucks-apple-cinnamon-fruit-puree-pouches-cinnamon-applesauce (last accessed Jan. 18, 2024)

received a report that recalled WanaBana Apple Cinnamon Purée product (including recalled three packs) may still be on shelves at Family Dollar/Dollar Tree combination stores. This product should not be available for sale and consumers should not purchase this product."[8]

9. FDA officials investigating Defendants' Products have raised the possibility that the lead contamination in the cinnamon used by Defendants may have been intentionally added for economic reasons.[9]

10. The FDA's Department of Health and Human Services conducted an inspection of the facility where the Products were processed, the facility which mixes the ingredients which are put into the final products, including the Products at issue here. The inspection was conducted from December 4th to December 14th 2023.[10]

11. The FDA inspection report found that the WanaBana Defendants did not include cinnamon in its hazard analysis which required a preventative control for heavy metals, including lead.[11]

12. The FDA inspection report further reported that the WanaBana Defendants did not sample and test raw materials or the finished products for heavy metals, including lead.[12]

---

[8] FDA, *Investigation of Elevated Lead & Chromium Levels: Cinnamon Applesauce Pouches (November 2023)*, here: www.fda.gov/food/outbreaks-foodborne-illness-investigation-elevated-lead-chromium-cycle-cinnamon-applesauce-pouches-november-2023 (last accessed Jan. 18, 2024).

[9] Associated Press, *Parents of Children Sickened by Lead Linked to Tainted Food Pouches Fear for Kids' Future*, https://apnews.com/article/WanaBana-apple-cinnamon-lead-poisoning-trans-pouch-86a3276bc0408430be94d23d6cee519 (last accessed Jan. 22, 2024).

[10] FDA Health and Human Services, *Austrofood S.A.S. Inspection*. FEI No. 3013416401, Dec. 14, 2023, 2024-01-24_fda_fois-2023-11385-ocr.pdf (finalexander.github.io) (last accessed Jan. 24, 2024).

[11] *Id.*

[12] *Id.*

10

13. Additionally, the FDA inspection report concluded that the WanaBana Defendants did not have an appropriate preventative control and monitoring procedure in place to significantly minimize or prevent hazards. In particular, the report cited the food safety plan for apple cinnamon Purée to be not sufficient to prevent hazards.[13]

14. The FDA Inspection report identified that the WanaBana Defendants' Products processing facility had no controls in place to account for metal contamination from the rough edges, chips, and pitted areas that are present on the conveyer belt which processes the Purée in the Products.[14]

15. This food safety misconduct and the failed preventative controls, as identified in the FDA inspection report, resulted in the lead poisoning of dozens of children and consumers, including Plaintiff L.G..

16. As of January 3, 2024, the FDA has received 89 total complaints/Adverse Event Reports.[15]

17. The median age of the individuals affected by lead poisoning caused by Defendants' Products is one year old.[16]

18. The CDC's investigation identifies links between blood lead levels of 3.5 μg/dL or higher in children within three months of the consumption of Defendants' Products. The CDC reports that, as of January 19, 2024, it has received reports from state and local health departments that

---

[13] Id.

[14] Id.

[15] FDA, *Investigation of Elevated Lead & Chromium Levels: Cinnamon Applesauce Pouches (November 2023)*, https: www.fda.gov food outbreaks-foodborne-illness-investigation-elevated-lead-chromium-levels-cinnamon-applesauce-pouches-november-2023 (last accessed Jan. 23, 2024).

[16] Id.

implicate over 385 total cases of lead poisoning resulting from exposure to WanaBana Defendants' Products.[17]

19. Additional laboratory testing by the FDA of Defendants' Products found that the Products also contained chromium.[18]

20. On January 5, 2024, the FDA announced that WanaBana's cinnamon and recalled products also contained elevated levels of chromium contamination as high as 1201 ppm in the cinnamon. At high levels chromium can cause toxicity and the more toxic form of chromium is "chromium (VI)." The quantity of chromium detected by the FDA and the lead to-chromium ratio is consistent with lead chromate ($PbCrO_4$).[19]

21. Lead chromate typically appears as a yellow, orange, and red power and is often used as a pigment in a powder or paint. It is carcinogenic, a neurotoxin, and a nephrotoxin.

22. Lead chromate primarily affects the lungs, but it can also affect the gastrointestinal tract, liver, kidneys, and immune system. Lead chromate also contains the most toxic form of chromium (chromium (VI)).

### The Longstanding Knowledge of the Dangers of Lead

1. Defendants' Products contained lead and chromium.

2. Lead is a toxic heavy metal, upon which exposure and ingestion can lead to lead poisoning.

3. Lead poisoning can result in serious, life-long adverse health effects especially in children.

---

[17] Center for Disease Control and Prevention, *Lead and Chromium Poisoning Outbreak Linked to Cinnamon Applesauce Pouches.* Dec. 20, 2023, https://www.cdc.gov/nceh/lead/news/lead-poisoning-outbreak-linked-to-cinnamon-applesauce-pouches.html (last accessed Jan. 23, 2024)

[18] *Id.*

[19] *Id.*

4. The harmful effects of lead poisoning in children can include, but are not limited to: behavior and learning problems, lower IQ and hyperactivity, slowed growth, hearing problems, and anemia.[20]

5. The harm that lead poisoning inflicts on children has been well-known for decades.

6. Lead is dangerous to children, in particular, "because their growing bodies absorb more lead than adults do and their brains and nervous systems are more sensitive to the damaging effects of lead."[21]

7. Indeed, children absorb ingested lead from a given source 4-5 times more than adults. [22]

8. "The neurological and behavioral effects of lead are believed to be irreversible."[23]

9. Moreover, there is no known safe blood level concentration in children.[24]

10. The World Health Organization reports that even "blood lead concentrations as low as 3.5 µg/dL may be associated with decreased intelligence in children, behavioral difficulties and learning problems.[25]

11. The World Health Organization has also identified lead as one of its 10 chemicals that constitute a major public health concern.[26]

---

[20] EPA, Learn About Lead https: www. epa gov Lead learn-about lead effects (last accessed Jan. 14, 2024).
[21] Id.
[22] World Health Organization. Lead Poisoning https: www who int news room fact sheets detail lead poisoning and health text 1 expsng lead global global health Clean coalitions in f advocacy 20 20 phaseout 20 and Pgi20ings (last accessed Jan. 14, 2024).
[23] Id.
[24] Id.
[25] Id.
[26] Id.

12.Lead in the body is known to distribute throughout a child's brain, liver, kidney, and bones. It is also stored in a child's teeth and bones, where it can accumulate over time.[27]

13.The FDA and the World Health Organization have declared lead to be dangerous to human health. [28]

14.In addition to the lead, the chromium in defendants' contaminated products represents a significant health risk. Although chromium is naturally occurring and may be normally found within a diet, at high levels it is toxic. Moreover, there is a significant difference between trivalent chromium (chromium (III)) and the significantly more toxic hexavalent chromium (chromium (VI)). Chromium (VI) is a known carcinogen and has been associated with other health effects when ingested including irritation, ulcers, and anemia. Although the health effects of eating food contaminated with chromium (VI) are not well understood, there is also no antidote to treat chromium exposure.[29]

15.The more toxic and dangerous form of chromium (chromium (VI)) is found in lead chromate. Lead chromate has been used to adulterate spices, such as turmeric, and is toxic. The FDA's reported laboratory ratios of lead and chromium found in Defendants' Products are consistent with the Products being contaminated with lead chromate.

---

[27] *Id.*

[28] *See, e.g.*, U.S. House of Representatives Committee on Oversight and Reform, *Staff Report: Baby Foods are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury* at 2, Feb. 4, 2021, https://oversightdemocrats.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (last accessed Jan. 18, 2024).

[29] CDC, *Lead and Chromium Poisoning Outbreak Linked to Cinnamon Applesauce Pouches*, https://www.cdc.gov/nceh/lead/news/lead-poisoning-outbreak-linked-to-cinnamon-applesauce-pouches.html (last accessed Jan. 24, 2024).

16. Adulteration of spices using lead chromate compounds has been documented globally as a growing public health concern. It has contributed to lead poisoning of children and adults around the world.[30]

17. Lead chromate is considered a hazardous substance in the United States for several reasons, including its carcinogenic nature, its risk of causing lead poisoning, and its risk of causing kidney and brain damage, among other major health concerns.[31]

18. Given the negative effects of lead on child development and adult health, the presence of these substances in food is material to reasonable consumers, including Plaintiffs, as it relates to their purchasing and consumption decisions.

19. Defendants' Products included undisclosed levels of lead, due to Defendants' failure to sufficiently monitor for their presence in the ingredients and finished products. Defendants were or should have been aware of this risk.

20. Concerns over exposure to lead, and the knowledge of such risks associated with exposure, are not a new phenomenon, and Defendants knew or should have known of the risks associated with the presence of lead in foods they sell to consumers.

21. Defendants knew or should have known that it owed consumers, including Plaintiffs, a duty of care to prevent, or at the very least, minimize the presence of lead in the Products to the extent reasonably possible.

22. Defendants knew or should have known that it owed consumers, including Plaintiffs, a duty of care to adequately test for lead in the Products and the contributing ingredients.

---

[30] Lopez, Alanden et al., *Assessing Analytical Methods for the Rapid Detection of Lead in the Global Spice Market*. Environ. Sci. Technol. 2022, 56, 23, 16996-17006, Nov. 7 2022, https://pubs.acs.org/doi/10.1021/acs.est.2c03811 (last accessed Jan. 24, 2024).

[31] National Center for Biotechnology Information (2024). *Lead Chromate Compound Summary*. https://pubchem.ncbi.nlm.nih.gov/compound/Lead-chromate (last accessed Jan. 24, 2024).

15

23.Defendants also had a duty to ensure the Products were not deceptively, misleadingly, unfairly, and falsely marketed and that all material information was properly and fully disclosed.

24.Defendants knew or should have known that proper and sufficient testing and/or monitoring the Products for lead in both the ingredients and finished products was critical.

25.Defendants knew, yet failed to disclose, that they were not sufficiently or adequately monitoring or testing the Products or ingredients used in the Products for lead.

26.Defendants knew or should have known they could control the levels of lead in the Products by properly monitoring and testing for lead at ingredient sourcing, manufacturing, and packaging stages, and effecting changes when needed.

27.In addition, Defendants knew or should have known that a reasonable consumer would consume the Products regularly, leading to repeated exposure to and accumulation of lead.

### Defendants Made Material Misrepresentations and Omissions

1.Upon information and belief, the WanaBana Defendants' exclusive packager is Ecuadorian-based company Austrofoods, which ships the WanaBana Products to the United States.[32]

2.Upon information and belief, the WanaBana Defendants' exclusive cinnamon supplier is the Ecuadorian-based company Negasmart, which provided the contaminated cinnamon which was added to the Products.[33]

---

[32] FDA, *Investigation of Elevated Lead & Chromium Levels: Cinnamon Applesauce Pouches (November 2023)*, https: www.fda.gov lead outbreaks-foodborne-illness-investigation elevated-lead-chromium-levels-cinnamon-applesauce-pouches-november-2023 (last accessed Jan. 24, 2024).

[33] *Id.*

16

3. Ecuadorian authorities have reported that Negasmart's cinnamon, which was added to the Products here, had higher levels of lead than allowed by Ecuador.[31]

4. Upon information and belief, WanaBana Defendants' agents vetted Negasmart and its cinnamon. These vetting procedures were either inadequate or the WanaBana Defendants deliberately disregarded in that the procedures failed to identify the presence of harmful lead and chromium in the Products.

5. Upon information and belief, neither the WanaBana Defendants nor its supplier agents tested the cinnamon before incorporating it into the Products.

6. Upon information and belief, the WanaBana Defendants selected and used ingredients from an exclusive supplier that they knew or should have known was intentionally adding lead to its cinnamon spice product to increase the weight, and therefore the value, of the cinnamon.[35]

7. The WanaBana Defendants have a duty to ensure that their products, including the Products at issue here, were not contaminated with lead or other harmful substances. This duty derives, in part, from the WanaBana Defendants' control and oversight of its agents, including its exclusive suppliers, that contribute to the manufacture of the end Products to which Plaintiff L.G. was exposed.

8. The WanaBana Defendants' duty to ensure their products, including the Products at issue here, are safe and free of harmful substances, such as lead, is of even greater significance because of the WanaBana Defendants' knowledge that their products will be consumed by children and their marketing efforts consistent with that knowledge.

---

[31] Id.

[35] Id.

17

9. Meanwhile, WanaBana Defendants make specific representations to consumers that their fruit pouches, including the Products at issue in this litigation, are high- quality, healthy, and safe products for consumers, including Plaintiffs, to choose for their children, including that they are the "ideal snack for the whole family."[36]

10. The product's selected slogan, "I AM ONLY FRUIT," is used by WanaBana Defendants to imply to parents that they are purchasing for their children a premium, healthy fruit Purée pouch.[37]

11. Defendants used the same slogan "I AM FRUIT" on the "apple cinnamon" flavor Products ingested by L.G.. The front packaging of the Products also reads: "No preservatives," "Gluten free," "NO SUGAR ADDED," and "KOSHER."[38]

12. The back of the apple cinnamon Products ingested by L.G. lists three ingredients: "apple puree, cinnamon powder, acidulant: citric acid."[39]

13. The back of the apple cinnamon Products ingested by L.G. also states that the Products are "Gluten Free" and contain no BPA in its packaging.[40]

14. Defendant Dollar Tree sells three-packs of the WanaBana Defendants' products in brick- and-mortar retail locations as well as through its website.[41]

---

[36] WanaBana, *Homepage*, [illegible] (last accessed Jan. 15, 2024)

[37] WanaBana, *Fruit Pouch*, [illegible] (last accessed Jan. 15, 2024).

[38] See USA Today, *All WanaBana apple cinnamon pouches recalled for potentially elevated levels of lead; FDA image provided by FDA therein*. [illegible] (last accessed Jan. 15, 2024).

[39] See id.

[40] See id.

[41] See, e.g., Dollar Tree, *WanaBana Fruit Purée Pineapple Banana Fruit Pouches, 3-ct, 2.5 oz.*, [illegible] (last accessed Jan. 15, 2024).

18

15. The boxing encasing the "3-pack" of fruit Purée pouches also states that the products are Kosher, contain no preservatives, are gluten free, "[r]eady to eat," and are in "BPA Free Packaging."

16. The WanaBana Defendants also tout the purported safety and quality of their products on their website. As an example, the WanaBana Defendants list six certification seals followed by the statement: "We have certifications that guarantee the excellence of our food processes. Ensuring a product with worldwide safety and quality."[42]

17. The WanaBana Defendants also displayed logos of other certifications, but the WanaBana Defendants have since removed those logos since the FDA's Alert.

18. The WanaBana Defendants' "Our Story" website page features language which touts their purported commitment to their consumers by "exceeding the expectations of our customers through the elaboration of products derived from fresh fruits that meet quality, safety, legality and authenticity parameters focused on continuous improvement in our BPM management systems, HACCP, BRC, SGCS BASC and nationally and internationally recognized quality standards."[43]

19. In order to achieve this purported commitment, the WanaBana Defendants state: "we have a team of highly qualified people, controlled processes and a food safety management system, which allows us to guarantee the safety of our products and a continuous improvement of our processes, as well as the prevention of illegal activities, corruption and bribe."[44]

---

[42] WanaBana, *Homepage*, https://WanaBana.com/ (last accessed Jan. 15, 2024). From left: certified Kosher; the Business Alliance for Secure Commerce, certified compliant; Good Manufacturing Practice certified; and certified organic by the European Union; certified organic by the U.S. Department of Agriculture; and certified organic by Quality Certification Services – Ecuador.

[43] WanaBana, Our Story, WanaBana.com/about-us (last accessed Jan. 15, 2024).

[44] *Id.*

20. The WanaBana Defendants make repeated statements on their website that their products are safe and high-quality, using their certifications as an endorsement of their purported quality: "[o]ur products not only maintain the fruit's organoleptic and nutritional characteristics, but also carry a production line with the highest standards in the market, evidenced in the certifications obtained year after year."[45]

21. The WanaBana Defendants have yet to make a post on its official English Facebook or Instagram pages warning consumers about the recall of its Products.

22. In fact, the WanaBana Defendants' Instagram post dated October 17, 2023 shows an image of its apple cinnamon pouch Products with a "Your Brand Here" affixed on the rendering of the pouch. The purpose of the post was to announce the WanaBana Defendants' attendance at the Private Label Manufacturers Association, further stating: "It's a #Wanafantastic opportunity to find out more about our innovative packaging, products, and all that we can do with #realfruit and #newblends."[46]

23. The WanaBana Defendants' Instagram Page states the following about its products in its bio/page description:[47]

   a.   "Purees, pulps & smoothies 100% Fruit;"

   b.   "No sugar added;"

   c.   "Practical package, easy to carry and enjoy;"

   d.   "Quality certification;"

---

[45] *Id.*

[46] WanaBana—USA—&—Canada—Instagram Page, *Oct. 17th 2023 Instagram Post*, Instagram.com/WanaBanausa (last accessed Jan. 15, 2024).

[47] WanaBana USA & Canada Instagram Page, Instagram.com/WanaBanausa (last accessed Jan. 15, 2024).

24. The WanaBana Defendants' Instagram Page also contains posts which explicitly markets its products to children, including with one post featuring a child painting beside an interposed graphic of a WanaBana fruit Purée pouch, with the caption stating: "Encourage your children's imagination  with a snack that will give them the vitamins and minerals they need for their growth. WanaBana is real fruit! Give WanaBana a try in its many delicious flavors."[48]

25. Another post on WanaBana Defendants' Instagram page purports that its products give energy and nutrition to children: "The energy and nutrition that WanaBana gives children is incredible. Have you tried the WanaBana Purée and pulp yet? The little ones in your home will love it."[49]

26. The WanaBana Defendants also reassert their claims about the purported safety and health benefits of their products on their Facebook page bio:[50]

> a. "A convenient and versatile way to enjoy real fruit. Made out of 100% natural fruit.No added sugar, no preservatives, no additives. BPA free package[.] Quality recognized internationally. We help develop agriculture & agroindustry with innovative solutions."

27. When advertising their products on Facebook, the WanaBana Defendants regularly use the hashtags such as "#onlyfruit," "#realfruit," "#organicfruit" to market their Purée products. [51]

---

[48] WanaBana USA & Canada Instagram Page, *Jan. 28. 2022 Instagram Post*, https://www.instagram.com/p/ZSiieRrcsk (last accessed Jan. 15, 2024).

[49] WanaBana USA & Canada Instagram Page, *Jan. 22. 2022 Instagram Post*, https://www.instagram.com/p/CZDF9a-trCj/ (last accessed Jan. 15, 2024).

[50] WanaBana USA Facebook Page, https://www.facebook.com/WanaBanausa/ (last accessed Jan. 15, 2024).

[51] *See id.* at *Feb. 18, 2022 Post*.

28. The WanaBana Defendants also state on their Facebook page, under the privacy and legal info tab:[52]

  a. "JUST OPEN AND ENJOY – Convenient and versatile way to enjoy a real fruit wherever you go and does not need to be refrigerated."

  b. "I AM ONLY FRUIT – Made of only 100 percent natural fruit. We are dedicated to the production, and processing of fresh fruit to guarantee a healthy option for the whole family."

  c. "NATURAL - No added sugar, no preservatives, no additives, and comes in a BPA- free package giving you and your loved ones a high-quality addition to your diet."

  d. "EXTRAORDINARY STANDARDS – Recognized both at the national and international level, while also striving for innovation and contributing to the development of agriculture and agroindustry. "

29. These statements are demonstrably false, as Plaintiff Minor Child L.G. and other consumers have suffered from lead poisoning due to ingesting Defendants' Products.

30. Contrary to Defendants' representations and assurances that its Products are safe, healthy, certified, and manufactured under strict quality standards, Defendants' Products contain detectable levels of lead, which is known to pose life-long human health risks—particularly in children.

31. Defendants failed to disclose to consumers that the Products contain or have a material risk of containing lead.

---

[52] WanaBana USA Facebook Page, *About*, https://www.facebook.com/WanaBanausa/about (last accessed Jan. 15, 2024).

22

32. Consumers, including Plaintiffs, trusted manufacturers like the WanaBana Defendants and retailers like Defendant Dollar Tree to sell only fruit Purée products that are safe for themselves and their children, not to sell products that contain or have a material risk of containing lead.

33. Reasonable consumers, including the Plaintiffs, expect the fruit Purée products they purchase for their children will not be contaminated or have a material risk of being contaminated with lead — a substance that is known to accumulate in the body and pose significant and dangerous health consequences.

34. The quality of a product's contents, particularly as it relates to toxic contents such as lead, are material to a reasonable consumer's purchasing and consumption decision, including Plaintiffs' decisions.

35. Consumers, including Plaintiffs, lack the scientific knowledge or ability to conduct their own testing to determine whether Defendants' products do in fact contain lead, or to ascertain the true nature of the ingredients and quality of Products. Accordingly, reasonable consumers must and do rely on each Defendant to: (1) know what their Products contain; (2) regularly test the Products to confirm their quality and compositions; and (3) properly and fully disclose these contents to consumers prior to sale and consumption.

36. Defendants knew or should have known that their Products contained lead and wrongfully failed to disclose that the Products contain or have a material risk of containing lead on its packaging.

37. Defendants knew or should have known that their Products contained lead yet chose to not disclose such information to consumers and thus actively concealed the presence and risk of lead in the Products.

38. No reasonable consumer would expect, suspect, or understand that the Products contain or have a material risk of containing lead.

39. Defendants failed to disclose on the Products' packaging that the Products contain or have a material risk of containing lead. It was only through the FDA and NCDHHS' testing, and subsequent advisories that the general public became aware of the lead content in Defendants' Products.

23

MID-L-003463-25   06/09/2025 4:03:26 PM   Pg 24 of 38   Trans ID: LCV20251712838

40.Based on Defendants' misrepresentations and omissions, no reasonable consumer, including Plaintiffs, had any reason to know, suspect, or expect that the Products contained lead.

41.Defendants are aware that their customers trust the quality of their Products and would not expect the Products to contain or have a material risk of containing lead.

42.As evidenced by Defendants' marketing, Defendants also know that reasonable consumers, especially parents, seek out products with ingredients free of toxins or contaminants, and that these consumers will pay more for products they believe meet these standards.

43.Defendants also know that reasonable consumers would not knowingly consumer, or feed to their families and children, products that contain lead.

44.Defendants knew that the consumers to whom it markets the Products would find their misrepresentations and omissions to be material and that Defendants were in a special position of public trust to those consumers.

45.In light of Defendants' representations regarding the health and quality standards of Defendants' operations and Products, Defendants knew or should have known the Products contained or had a material risk of containing lead.

46.Defendants' misrepresentations and omissions are deceptive, misleading, unfair, and/or false because the Products contain undisclosed lead.

47. Defendants' misrepresentations and omissions allowed Defendants to capitalize on, and reap enormous profits from, reasonable consumers like Plaintiffs that omitted material information as to the Products' true quality and value and, in fact, poisoned their children.

48.The popularity of pureed products in "pouch" form, including the Products at issue in this litigation, is increasing across the world, as parent-consumers, including Plaintiffs, seek nutritious and convenient

24

foods for their children.

49. The purported safety and health benefits of Defendants' Products are fully displayed on Defendants' packaging, as set forth in this Complaint.

50. Defendants' misrepresentations and omissions wrongfully convey to consumers that Defendants' Products are of superior quality and have certain characteristics that the Products do not actually possess.

51. Defendants' misrepresentations and omissions have caused consumers, including the Plaintiffs here, to believe the Products do not contain any harmful substances, when in fact the Products contain or have a material risk of containing undisclosed levels of lead, which is material information to reasonable consumers, including Plaintiffs.

52. Defendants' misrepresentations and omissions make the Products' packaging deceptive based on the presence or risk of lead in the Products. Reasonable consumers, including Plaintiffs, would consider the presence or risk of lead in the Products to be a material fact when considering which applesauce or other pureed products to consume.

53. Defendants' misrepresentations were material and misleading due to Defendants' failure to sufficiently or adequately monitor, control, or test for and disclose the presence or material risk of lead in the Products.

54. Information regarding the true nature and/or presence of lead in the Products was and is in the exclusive possession of Defendants and not available to consumers. Defendants chose to not disclose such information to consumers and thus concealed the presence and risk of lead in the Products from Plaintiffs.

55. Although Defendants are in the best position to know what content it placed on their website(s), social media sites, and in marketing materials during the relevant timeframe; the knowledge Defendants had regarding the existence of lead in their Products; and their failure to disclose the existence of lead in the Products to Plaintiffs and consumers both before and after the Products were recalled; Plaintiffs allege the following facts with particularity:

25

a. WHO: Defendants made false statements and material misrepresentations and/or omissions of fact on their Products, labeling, marketing materials and in public statements, which include express and/or implicit representation that their Products were and are free of lead and were safe for human consumption.

b. WHAT: Defendants falsely and misleadingly, and through misrepresentations and omissions, led consumers to believe that their Products were and are free of lead and failed to disclose that the Products contain these materials. Thus, Defendants' conduct deceived Plaintiffs into believing that the Products were created, manufactured, and sold with such qualities. Defendants knew or should have known this information is material to reasonable consumers, including Plaintiffs, in making their decisions about the food to feed to their children, yet Defendants continued to pervasively market the Products as possessing qualities they do not possess.

c. WHEN: Defendants made material misrepresentations, false statements and/or omissions both prior to and at the time Plaintiff L.G. consumed Defendants' Products.

d. WHERE: Defendants' marketing message was uniform and pervasive, carried through material misrepresentations, false statements and/or omissions on their Products labeling and packaging, websites, and social media accounts.

e. HOW: Defendants made material misrepresentations, false statements and/or omissions regarding the presence of lead in their Products by making express and/or implicit representations in the above-referenced materials that their Products were healthy, safe, and made of premium ingredients and by omitting any facts in their marketing, labeling, and/or other descriptions of their Products that would inform a consumer as to the presence of lead.

## CAUSES OF ACTION

## COUNT ONE – ALL DEFENDANTS – STRICT LIABILITY FAILURE TO WARN

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

26

2. At all pertinent times, the WanaBana Defendants were engaged in manufacturing, marketing, testing, promoting, selling and/or distributing Products in the regular course of business.

3. At all pertinent times, the WanaBana Defendants knew or should have known that the use of their Products which contained lead significantly increases the risk of causing catastrophic, life- altering lead poisoning in children.

4. At all pertinent times, Defendant Dollar Tree was engaged in the business of marketing, promoting and selling the Products in the regular course of business.

5. At all pertinent times, Defendant Dollar Tree knew or should have known that the use of their Products which contained lead significantly increases the risk of causing catastrophic, life- altering lead poisoning in children.

6. At all pertinent times, Plaintiffs ingested Defendants' Products, which is a reasonably foreseeable use and in a manner normally intended by the Defendants.

7. At all pertinent times, Defendants' Products were unreasonably dangerous and in a defective condition because, among other things, it failed to warn Plaintiffs of the presence of lead in the Products and the increased risk of lead poisoning and catastrophic injury as a result of their ingestion. Had Plaintiff received a warning that the Defendants' Products contained lead and that ingestion would result in lead poisoning, then Plaintiff, MARILYN GOMEZ would not have used Defendants' Products in that manner, if at all.

8. These defects in Defendants' Products substantially contributed to Plaintiff L.G.'s lead poisonings. As a result, L.G. suffered bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring loss of earnings, and loss of ability to earn money in the future. The losses are permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

27

9. As a further result, Plaintiff, MARILYN GOMEZ has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of her minor child and will continue to suffer such losses in the future.

**Wherefore**, Plaintiffs request a judgment against Defendants joint and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

## COUNT TWO – WANABANA DEFENDANTS - STRICT LIABILITY – DEFECTIVE DESIGN

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. The WanaBana Defendants were in the business of designing, manufacturing, packaging, labeling, selling, and distributing the Products in the regular course of business.

3. The WanaBana Defendants had a duty of a reasonable manufacturer to foresee and appreciate risks of harm associated with the ordinary use of their Products.

4. At all pertinent times, the WanaBana Defendants knew or in the exercise of reasonable care should have known that children ingest their fruit Purée Products.

5. At all pertinent times, the WanaBana Defendants knew or in the exercise of reasonable care should have known that the use of their Products which contained lead significantly increases the risk of causing catastrophic, life-altering lead poisoning in children.

6. The Products are defective in design because the foreseeable risk of becoming poisoned by lead exceeds a reasonable consumer's expectations that when consumed by children the fruit Purée Products are safe, that the risk of being exposed to lead as a result of ingestion significantly outweighs any potential benefit, and that the Products contain lead.

7. At all pertinent times, the Products were substantially in the same condition as when it left the possession of the WanaBana Defendants.

8. At all pertinent times, Plaintiff L.G. used the Products for food, which was a reasonably foreseeable and normally intended use by the WanaBana Defendants, as they gave no warnings in opposition, but rather promoted use of the Products for consumption by children and adults alike.

9. The Products' defective design was a substantial contributing factor of Plaintiff L.G.'s lead poisonings. As a result, L.G. suffered bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring loss of earnings, and loss of ability to earn money in the future. The losses are permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

10. As a further result, Plaintiff, MARILYN GOMEZ has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of their minor child and will continue to suffer such losses in the future.

Wherefore, Plaintiffs request a judgment against Defendants joint and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

## COUNT THREE – WANABANA DEFENDANTS– GROSS NEGLIGENCE

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. At all pertinent times, the WanaBana Defendants had a duty to reasonably and properly design, manufacture, test, inspect, package, label, distribute, market, examine, maintain, supply, provide proper warnings and prepare for use the Products, as a reasonably prudent and careful manufacturer. The WanaBana Defendants owed this duty to Plaintiffs.

3. The Products which contained lead posed a clear and present danger to all foreseeable consumers, including children and Plaintiffs.

29

4. At all pertinent times, the WanaBana Defendants' cinnamon supplier, upon information and belief, intentionally added lead to the cinnamon to increase the cinnamon's weight-per-unit economic value. This cinnamon was then added to the Products as part of the WanaBana Defendants' manufacturing process.

5. At all pertinent times, the WanaBana Defendants knew or in the exercise of reasonable care should have known that the Products were not properly designed, manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold, supplied, prepared and/or provided with the proper warnings, and was unreasonably likely to injure users and consumers, including Plaintiff L.G.. The WanaBana Defendants' conduct created a foreseeable risk of injury to Plaintiffs and all of its customers.

6. The WanaBana Defendants breached their duty by, among other things:

> a. Failing to comply with state and federal regulations concerning the study, testing, design, development, manufacture, inspection, advertisement, marketing, promotion, distribution, and/or sale of the Products;

> b. Allowing its exclusive supplier to contaminate the cinnamon in its Products with lead;

> c. Failing to warn Plaintiffs of the hazards associated with the use of the Products, including the risk of ingesting lead and being lead poisoned after consuming the Products;

30

d. Failing to properly test the Products to determine the adequacy and effectiveness or safety measures. if any, prior to release for consumer use;

e. Failing to warn Plaintiffs that the Products contained lead;

f. Choosing a supplier that intentionally added lead to the product to increase the weight, and consequently, the value of the cinnamon;

g. Failing to properly test and/or conduct a quality control of the Products to determine the increased risk of children being lead poisoned from normal and/or intended use;

h. Failing to adequately test the Products to ensure the absence of lead contamination;

i. Failing to inform ultimate users, such as Plaintiffs as to the safe and proper consumption of the Products;

j. Failing to remove Products from the market or adding proper warnings when the WanaBana Defendants knew or in the exercise of reasonable care should have known the Products were defective;

k. Failing to instruct the ultimate user, such as Plaintiffs, as to the methods of reducing the type of exposure to Products which led to an increased risk of lead poisoning; and

l. Marketing and labeling the Products as safe for all uses despite knowledge to the contrary and/or lack of testing to support their marketing and labeling claims.

7. The WanaBana Defendants were grossly negligent in that they acted reckless and in conscious

disregard or indifference to the life, safety, or rights of persons exposed to their Products.

8. The WanaBana Defendants also conducted intentional misconduct through their actions of adding lead-contaminated cinnamon to its Products. These actions are imputed to the WanaBana Defendants through their exclusive Ecuadorian-based suppliers.

9. The WanaBana Defendants' foregoing conduct was grossly negligent and in breach of their duty to Plaintiffs, and a substantial contributing factor of Plaintiff L.G.'s lead poisonings. As a result, L.G. suffered bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring loss of earnings, and loss of ability to earn money in the future. The losses are permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

10. As a further result, Plaintiff, MARILYN GOMEZ has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of her minor child and will continue to suffer such losses in the future.

**Wherefore.** Plaintiffs request a judgment against Defendants jointly and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate, and demands trial by jury of all issues raised herein.

## COUNT FOUR – DEFENDANT DOLLAR TREE – GROSS NEGLIGENCE

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. Defendant Dollar Tree is engaged in the business of selling low-cost food products. Their business model is designed to maximize its profits as a retailer, and the Products are one such example of Defendant Dollar Tree's low-quality food products sold for a large financial return.

3. In so doing, Defendant Dollar Tree selected and provided for sale to consumers the WanaBana Defendants' Products that contained lead. The Products which contained lead posed a clear and present danger to all foreseeable consumers, including children and Plaintiffs.

4. At all pertinent times, Defendant Dollar Tree had a duty of a reasonably prudent and careful seller of the Products to take precautions and appreciate risks of harm associated with the ordinary use of the Products, in light of the risks associated with the Products and lead ingestion.

5. At all pertinent times, Defendant Dollar Tree had a duty to exercise reasonable care to consumers, including to Plaintiffs, to properly promote, market, distribute, and sell the Products.

6. At all pertinent times, Defendant Dollar Tree owed a duty of due care to consumers, including Plaintiffs, as a foreseeable user of the Products, that it would be reasonably safe for all intended uses and free from defects.

7. At all pertinent times, Defendant Dollar Tree knew or should have known in the exercise of reasonable care that use of the Products which contained lead significantly increases the risk of lead poisoning and the detrimental effects therefrom, especially to children.

8. At all pertinent times, Defendant Dollar Tree knew or in the exercise of reasonable care should have known that the WanaBana Defendants were not providing warnings to the consumers of the Products concerning the risk of lead ingestion and poisoning associated with the Products. Thus, Defendant Dollar Tree had a duty to warn its customers, including Plaintiffs, of a known and foreseeable risk.

9. Defendant Dollar Tree breached its duty to Plaintiffs by failing to include information in relation to the increased risk of lead ingestion and lead poisoning caused by the Products. Defendant Dollar Tree was grossly negligent in that they acted reckless and in conscious disregard or indifference to the life, safety, or rights of persons exposed to the WanaBana products they provided for sale.

10. Defendant Dollar Tree's gross negligence was a substantial contributing factor of Plaintiff L.G.'s lead poisoning. As a result, L.G. suffered bodily injuries and resulting pain and suffering, disability,

disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring loss of earnings, and loss of ability to earn money in the future. The losses are permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

11. As a further result, Plaintiff, MARILYN GOMEZ has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of her minor child and will continue to suffer such losses in the future.

   **Wherefore**, Plaintiffs request a judgment against Defendants jointly and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

### COUNT FIVE – WANABANA DEFENDANTS–NEGLIGENCE

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. At all pertinent times, the WanaBana Defendants had a duty to reasonably and properly design, manufacture, test, inspect, package, label, distribute, market, examine, maintain, supply, provide proper warnings and prepare for use the Products, as a reasonably prudent and careful manufacturer. The WanaBana Defendants owed this duty to Plaintiffs.

3. At all pertinent times, the WanaBana Defendants knew or in the exercise of reasonable care should have known that the Products were not properly designed, manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold, supplied, prepared and/or provided with the proper warnings, and was unreasonably likely to injure users and consumers, including Plaintiff L.G.. The WanaBana Defendants' conduct created a foreseeable risk of injury to Plaintiffs and all of its customers.

4. The WanaBana Defendants breached their duty by, among other things:

   a. Failing to comply with state and federal regulations concerning the study.

34

testing, design, development, manufacture, inspection, advertisement, marketing, promotion, distribution, and/or sale of the Products;

b. Failing to warn Plaintiffs of the hazards associated with the use of the Products, including the risk of ingesting lead and being lead poisoned after consuming the Products;

c. Failing to properly test the Products to determine the adequacy and effectiveness or safety measures, if any, prior to release for consumer use;

d. Failing to warn Plaintiffs that the Products contained lead;

e. Choosing a supplier that intentionally added lead to the product to increase the weight, and consequently, the value of the cinnamon;

f. Failing to properly test and/or conduct a quality control of the Products to determine the increased risk of children being lead poisoned from normal and/or intended use;

g. Failing to adequately test the Products to ensure the absence of lead contamination;

h. Failing to inform ultimate users, such as Plaintiffs as to the safe and proper consumption of the Products;

i. Failing to remove Products from the market or adding proper warnings when the WanaBana Defendants knew or in the exercise of reasonable care should have known the Products were defective;

j. Failing to instruct the ultimate user, such as Plaintiffs, as to the methods of reducing the type of exposure to Products which led to an increased risk of

35

lead poisoning; and

k. Marketing and labeling the Products as safe for all uses despite knowledge to the contrary and/or lack of testing to support their marketing and labeling claims.

5. The WanaBana Defendants' foregoing conduct was negligent and in breach of their duty to Plaintiffs, and a substantial contributing factor of Plaintiff L.G.'s lead poisonings. As a result, L.G. suffered bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring loss of earnings, and loss of ability to earn money in the future. The losses are permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

6. As a further result, Plaintiff, MARILYN GOMEZ has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of their minor child and will continue to suffer such losses in the future.

Wherefore, Plaintiffs request a judgment against Defendants jointly and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

## COUNT SIX– DEFENDANT DOLLAR TREE –NEGLIGENCE

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. Defendant Dollar Tree is engaged in the business of selling low-cost food products. Their business model is designed to maximize its profits as a retailer, and the Products are one such example of Defendant Dollar Tree's low-quality food products sold for a large financial return.

3. In so doing, Defendant Dollar Tree selected and provided for sale to consumers Defendant WanaBana's

36

products that contained lead.

4. At all pertinent times, Defendant Dollar Tree had a duty of a reasonably prudent and careful seller of the Products to take precautions and appreciate risks of harm associated with the ordinary use of the Products, in light of the risks associated with the Products and lead ingestion.

5. At all pertinent times, Defendant Dollar Tree had a duty to exercise reasonable care to consumers, including to Plaintiffs, to properly promote, market, distribute, and sell the Products.

6. At all pertinent times, Defendant Dollar Tree owed a duty of due care to consumers, including Plaintiffs, as a foreseeable user of the Products, that it would be reasonably safe for all intended uses and free from defects.

7. At all pertinent times, Defendant Dollar Tree knew or should have known in the exercise of reasonable care that use of the Products which contained lead significantly increases the risk of lead poisoning and the detrimental effects therefrom, especially to children.

8. At all pertinent times, Defendant Dollar Tree knew or in the exercise of reasonable care should have known that the WanaBana Defendants were not providing warnings to the consumers of the Products concerning the risk of lead ingestion and poisoning associated with the Products. Thus, Defendant Dollar Tree had a duty to warn its customers, including Plaintiffs, of a known and foreseeable risk.

9. Defendant Dollar Tree breached its duty to Plaintiffs by failing to include information in relation to the increased risk of lead ingestion and lead poisoning caused by the Products.

10. Defendant Dollar Tree's negligence was a substantial contributing factor of Plaintiff L.G.'s lead poisoning. As a result, L.G. suffered bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring loss of earnings, and loss of ability to earn money in the future. The losses are permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

MID-L-003463-25   06/09/2025 4:03:26 PM   Pg 38 of 38   Trans ID: LCV20251712838

11. As a further result, Plaintiff, MARILYN GOMEZ, has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of her minor child and will continue to suffer such losses in the future.

**Wherefore**, Plaintiffs request a judgment against Defendants jointly and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

## COUNT SEVEN – DOLLAR TREE DEFENDANT – STRICT SELLER LIABILITY

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. Defendant Dollar Tree, at all times pertinent, engaged in the business of selling and distributing the Products to consumers nationwide, including in the States of New Jersey and New York and Middlesex County and Staten Island County.

3. Defendant Dollar Tree, upon information and belief, did and continues to derive substantial revenue in the State of New Jersey and the State of New York for the sale of WanaBana Defendants' fruit Purée pouches, including the Products at issue here.

4. At all pertinent times, the Products were defective at the time of sale to the ultimate consumer, like Plaintiffs, as the Products were unreasonably dangerous due to their inclusion of lead.

5. At all pertinent times, the Products were defective as the foreseeable risk of ingesting lead and lead poisoning as a result exceeds a reasonable consumer's expectations when used by children as food and is defective in design because the risk of lead exposure significantly outweighs any potential benefit.

6. The Products are defective as the packaging failed to include an adequate warning regarding the risk of lead exposure. Upon information and belief, Defendant Dollar Tree advertised and continues to sell the Products, displaying the fruit Purée pouches' packaging which purports to be "just fruit" with no

38

additives. Defendant Dollar Tree's website offers no warnings or details as to the potential harm associated with ingesting lead-containing fruit Purée pouches.

7. Defendant Dollar Tree knew or should have known that the presence of lead in the Products significantly increases the risk of lead ingestion and lead poisoning based upon extensive scientific knowledge dating back to the 1970s.

8. At all times pertinent, the Products were expected to and did reach the consumers, including Plaintiffs, without substantial change from the condition in which they were sold. The condition in which the Products reach Plaintiffs was one that Plaintiffs did not contemplate, in that they did not expect that the use of the Products would result in lead exposure and lead poisoning. Thus, the Products failed Plaintiffs' expectations as consumers.

9. Defendant Dollar Tree's acts and omissions, as alleged herein, were a substantial contributing factor of Plaintiff L.G.'s lead poisonings. As a result, L.G. suffered bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring, loss of earnings, and loss of ability to earn money in the future. The losses are permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

10. As a further result, Plaintiff, MARILYN GOMEZ has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of her minor child and will continue to suffer such losses in the future.

   **Wherefore,** Plaintiffs request a judgment against Defendants joint and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

### COUNT EIGHT – DOLLAR TREE DEFENDANT – BREACH OF EXPRESS WARRANTY

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. Defendant Dollar Tree expressly warranted, through direct-to-consumer marketing, social media, advertising, packaging and labeling, that the Products were safe and effective for all reasonably anticipated uses, including for ingestion by children. Plaintiff L.G. was a person whom the Dollar Tree Defendant would reasonably have expected to use, consume, and/or be affected by the Products and who did use and consume it.

3. Plaintiffs saw these advertisements and packaging, including at a retail location owned and operated by Defendant Dollar Tree, and believed the Products were safe and effective for L.G. to consume, leading them to rely on the Products' advertisements and packaging.

4. Plaintiffs are in privity with Defendant Dollar Tree because it directly sold the Products to Plaintiffs.

5. The Products are good as defined by U.C.C. § 2-105 and Defendant Dollar Tree knew or had reason to know of the specific use for which the Products, as good, are purchased.

6. The Products were defective because it did not conform to these express representations as well as New Jersey and New York common law, because the Products were unsafe for the reasonably foreseeable use and consumption of L.G. due to the increased risk of lead ingestion and lead poisoning when consumed.

7. As detailed above, Defendant Dollar Tree, through the written packaging, labeling, and advertising related to the Products expressly warranted that its Products were safe and fit for the purposes intended, that they were merchantable quality, that they were healthy and safe for human consumption, and that they did not pose dangerous health risks.

8. Plaintiff, MARILYN GOMEZ read and relied on these express warranties provided by Defendant Dollar Tree, including that the Products contained only cinnamon and apples, no added sugar, no gluten, no BPAs, and no preservatives. Plaintiff believed, based on the Defendant Dollar Tree's representations, that the Products were safe and health for her Minor Child L.G..

40

MID-L-003463-25  06/09/2025 4:03:26 PM  Pg 3 of 16  Trans ID: LCV20251712838

9. Defendant Dollar Tree breached its express warranties because the Products were not reasonably safe for their ordinary and intended purpose of providing Plaintiffs and consumers with safe and health food for their children. Instead, the Products contained lead, which is harmful to children and adults, not fit for human consumption, and not conforming to the Products' packaging.

10. Defendant Dollar Tree breached its express warranties by selling Products that contain lead.

11. The presence of lead rendered the Products unfit for their intended use and purpose and substantially impaired the use and value of the Products.

12. Defendant Dollar Tree was on notice of this breach, as it was aware or should have been aware of the inclusion of lead in the Products.

13. Defendant Dollar Tree's actions, as complained of herein, breached the warranties that the Products were of merchantable quality and fit for such use.

14. Defendant Dollar Tree's intended beneficiaries of these express warranties were ultimately consumers such as Plaintiffs, not third-party retailers, resellers, or distributors who sold the Products. Moreover, the Dollar Tree Defendant exercises substantial control over which retail locations can carry and sell the Products, which are the same outlets that Plaintiffs purchased the Products. In addition, the Dollar Tree Defendant's warranties are in no way designed to apply to third-party retailers, resellers, or distributors who purchase the Products in bulk and then sell them on an individual basis to consumers. Individual consumers are the ones who ultimately review the Product labels prior to making any purchasing decisions. Accordingly, these warranties are specifically designed to benefit the individual consumers who purchased the Products.

15. Defendant Dollar Tree's breach of express warranty was a substantial contributing factor of Plaintiff L.G.'s lead poisonings. As a result, L.G. suffered bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring loss of earnings, and loss of ability to earn money in the future. The losses are

41

permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

16. As a further result, Plaintiff, MARILYN GOMEZ has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of her minor child and will continue to suffer such losses in the future.

**Wherefore,** Plaintiffs request a judgment against Defendants joint and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

## COUNT NINE – WANABANA DEFENDANTS – BREACH OF EXPRESS WARRANTY

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. The WanaBana Defendants expressly warranted, through direct-to-consumer marketing, social media, advertising, packaging and labeling, that the Products were safe and effective for all reasonably anticipated uses, including for ingestion by children. Plaintiff L.G. was a person whom the WanaBana Defendants would reasonably have expected to use, consume, and/or be affected by the Products and who did use and consume it.

3. Plaintiffs saw these advertisements and packaging, including at a Dollar Tree retail location, and believed the Products were safe and effective for L.G. to consume, leading them to rely on the WanaBana Defendants advertisements and packaging.

42

4. Plaintiffs are in privity with the WanaBana Defendants because the WanaBana Defendants directly sold the Products to Plaintiffs via authorized retailers.

5. The Products are good as defined by U.C.C. § 2-105 and Defendants know or have reason to know of the specific use for which the Products, as good, are purchased.

6. The Products were defective because it did not conform to these express representations, as well as New Jersey and New York common law, because the Products were unsafe for the reasonably foreseeable use and consumption of L.G., due to the increased risk of lead ingestion and lead poisoning when consumed.

7. As detailed above, the WanaBana Defendants, through its written packaging, labeling, and advertising expressly warranted that its Products were safe and fit for the purposes intended, that they were merchantable quality, that they were healthy and safe for human consumption, and that they did not pose dangerous health risks.

8. Plaintiff, MARILYN GOMEZ read and relied on these express warranties provided by the WanaBana Defendants, including that the Products contained only cinnamon and apples, no added sugar, no gluten, no BPAs, and no preservatives. Plaintiff believed, based on the WanaBana Defendants' representations, that the Products were safe and health for her Minor Child L.G..

9. The WanaBana Defendants breached their express warranties because the Products were not reasonably safe for their ordinary and intended purpose of providing Plaintiffs and consumers with safe and health food for their children. Instead, the Products contained lead, which is harmful to children and adults, not fit for human consumption, and not conforming to the Products' packaging.

10. The WanaBana Defendants breached their express warranties by selling Products that contain lead.

11. The presence of lead rendered the Products unfit for their intended use and purpose and substantially impaired the use and value of the Products.

43

12. The WanaBana Defendants were on notice of this breach, as they were aware or should have been aware of the inclusion of lead in the Products.

13. The WanaBana Defendants' actions, as complained of herein, breached the warranties that the Products were of merchantable quality and fit for such use.

14. The WanaBana Defendants' intended beneficiaries of these express warranties were ultimately consumers such as Plaintiffs, not third-party retailers, resellers, or distributors who sold the Products. Moreover, the WanaBana Defendants exercise substantial control over which outlets can carry and sell their Products, which are the same outlets that Plaintiffs purchased the Products. In addition, the WanaBana Defendants' warranties are in no way designed to apply to third-party retailers, resellers, or distributors who purchase the Products in bulk and then sell them on an individual basis to consumers. Individual consumers are the ones who ultimately review the Product labels prior to making any purchasing decisions. Accordingly, these warranties are specifically designed to benefit the individual consumers who purchased the Products.

15. The WanaBana Defendants' breach of express warranty was a substantial contributing factor of Plaintiff L.G.'s lead poisonings. As a result, L.G. suffered bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring loss of earnings, and loss of ability to earn money in the future. The losses are permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

16. As a further result, Plaintiff, MARILYN GÓMEZ has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of her minor child and will continue to suffer such losses in the future.

**Wherefore,** Plaintiffs request a judgment against Defendants joint and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

44

## COUNT TEN – ALL DEFENDANTS – NEGLIGENT MISREPRESENTATION

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. Defendants, as manufacturers and sellers of the Products at issue here. owed a duty to the consuming public in general, and to the Plaintiffs in particular. to exercise reasonable care to design, test, manufacture, inspect, label, advertise, market, and distribute a product free of unreasonable risk of harm to users, when such products are used in their intended manner and for their intended purpose.

3. Defendants' Products contained lead.

4. Exposure to lead has been linked with an increased risk of health problems, particularly for children.

5. Given the established and documented dangerous nature of lead, the presence of lead in Defendants' Products is a material fact about the safety of the Products.

6. Given the established and documented dangerous nature of lead, the presence of lead in Defendants' Products renders them unsafe, unhealthy, and unfit for human consumption.

7. As set forth fully above, Defendants made numerous misrepresentations and omissions about the health, safety, and nutrition of their Products on its advertising and labeling.

8. Defendants touted the health, safety, and nutrition of their products, including the limited ingredients and lack of preservatives or BPAs in their Products, with the intention of inducing confidence and driving consumers, including Plaintiffs, to purchase the Products.

9. Defendants knew that consumers, including Plaintiffs, would rely on these misrepresentations in making the decision to purchase their Products.

10. Such representations were materially false given the presence of lead in Defendants' Products.

45

11.Defendants knew that reliance on these representations could result in loss or injury.

12. Defendants omitted and/or concealed from its labeling, marketing, and advertising the material fact that lead was present in their Products.

13. Because of the false and misleading claims by Defendants, Plaintiff, MARILYN GOMEZ was unaware that Defendants' Products contained toxic lead. Plaintiff, MARILYN GOMEZ fed Defendants' Products to her Minor Child L.G. on the belief that Defendants' labeling and sale of Products was accurate and that the Products were unadulterated and safe for consumption.

14. Plaintiff relied on Defendants' misrepresentations and omissions on the Products' packaging, which was prepared, reviewed, and/or approved by Defendants and disseminated by Defendants throughout the United States.

15. Plaintiff did in fact justifiably rely on Defendants' representations in deciding to buy the products and feed the products to Minor Child L.G..

16. Plaintiff believed that she was allowing L.G. to consume a high-quality, additive-free, safe, and nutritious pureed fruit product from Defendants.

17. Plaintiff relied on the nutritional and safety claims on the packaging of the Products prior to allowing L.G. to consume the Products.

18.Plaintiff would not have fed L.G. the Defendants' Products had she known that there was a risk that the Products may contain lead.

19.As a result, Plaintiff Minor Child L.G. suffered bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring loss of earnings, and loss of ability to earn money in the future. The losses are permanent or

46

continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

20. As a further result, Plaintiff, MARILYN GOMEZ has incurred the expenses of testing, treatment, and medical and nursing care of her Minor Child and will continue to suffer such losses in the future.

**Wherefore,** Plaintiffs request a judgment against Defendants joint and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

## COUNT ELEVEN – WANABANA DEFENDANTS – FRAUDULENT MISREPRESENTATION

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. In the course of business, the WanaBana Defendants designed, manufactured and sold the Products, knowing it was reasonable and foreseeable that children and consumers would consume the Products.

3. At all relevant times, the WanaBana Defendants intentionally, willfully, and/or recklessly, with the intent to deceive, misrepresented and/or concealed material facts to consumers, including Plaintiffs.

4. At all relevant times, the WanaBana Defendants misrepresent and/or concealed material facts concerning the Products to consumers, including Plaintiffs, with knowledge of the falsity of their misrepresentations.

5. The WanaBana Defendants were aware of the dangerous and defective condition of the Products and intentionally withheld this information from Plaintiffs, the healthcare field, and the general public even though these significant dangers were not readily obvious to ordinary users.

6. At all pertinent times and upon information and belief, the misrepresentations and concealments made by the WanaBana Defendants concerning the Products include, but are not limited to the following:

   i.   Falsely labeling and advertising the Products: "I am fruit."

47

ii.  Knowingly misrepresenting to Plaintiffs and the public, through the advertisements described above, that the Products is safe for consumption;

iii.  Intentionally failing to disclose that the Products contain lead on its packaging;

iv.  Intentionally failing to issue statements on its United States social media pages which inform consumers of the recall of its products.

v.  Intentionally failing to include adequate warnings with the Products regarding the potential and actual risks of consuming the Products which contain lead;

vi.  Despite the WanaBana Defendants' knowledge regarding the harmful effects of lead poisoning, particularly in children, the WanaBana Defendants falsely marketed, advertised, labeled and sold the Products as safe for public consumption and usage, including for ingestion by children.

7. Plaintiffs justifiably relied upon the aforementioned misrepresentations and concealments by the WanaBana Defendants and the Minor Child L.G. consumed the Products as described herein for several months.

8. The WanaBana Defendants' fraudulent misrepresentations directly and in natural and continuous sequence produced and contributed substantially to Plaintiffs' reliance on the WanaBana Defendants' fraudulent misrepresentations and concealments. Plaintiff L.G. was seriously and permanently injured.

9. The WanaBana Defendants' fraudulent misrepresentations directly and proximately produced and contributed substantially to Plaintiffs' reliance, from which Minor Child L.G. sustained damages including injuries and illnesses and was deprived of the opportunity of informed free choice in connection with the purchase, use of and exposure to the Products.

10. As a direct and proximate result of Plaintiff's L.G.'s ingestion of the Products, L.G. suffered bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring, loss of earnings, and loss of ability to earn money in the future. The losses are permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

48

11. As a further result, Plaintiff, MARILYN GOMEZ has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of her minor child and will continue to suffer such losses in the future.

12. The conduct of the WanaBana Defendants in continuing to market, promote, sell and distribute the Products while fraudulently concealing knowledge that the Products were failing and performing as represented and intended, shows a complete indifference to, or conscious disregard for the safety of consumers, including Plaintiffs.

**Wherefore,** Plaintiffs request a judgment against Defendants joint and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

## COUNT TWELVE – ALL DEFENDANTS – VIOLATION OF DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. At all pertinent times, Defendants engaged in deceptive trade practices, in violation of New Jersey and New York's Deceptive and Unfair Trade Practice Act.

3. New Jersey and New York have enacted statutes to protect consumers from deceptive, fraudulent, and unconscionable trade and business practices. Defendants violated these statutes by knowingly and falsely representing that the subject Products were fit to be used for the purpose for which it was intended, when Defendants knew it was defective and dangerous, in the manufacturing, distributing, marketing, promoting, and sale of the Products in the following ways:

49

i. Representing that the Products contained "only fruit;" and were nutritional foods for children to ingest when the purported benefits of such usage were disproportionately outweighed by the significant increase in the likelihood of lead poisoning when consumed.

ii. Representing that the Products are of a particular standard or quality, purportedly safe for consumers and children to ingest, when Defendants knew or in the exercise of reasonable care should have known that such use would lead to significant increased likelihood of lead poisoning;

iii. Continuing to advertise the Products as safe, when Defendants have known that lead exposure and poisoning, particularly in children, can pose significant health and developmental issues.

iv. Consistently engaging in advertising campaigns in print and on the web promoting the purported health and nutritional benefits of the Products when consumed, promoting confusion as Product testing and health agencies say otherwise.

v. Otherwise engaging in practices that are unfair and/or deceptive to consumers, including Plaintiffs.

4. As a direct and proximate result of Defendants' deceptive trade practices in the marketing, promoting, selling, distributing, advertising, and offering for sale the Products to consumers, Plaintiff was harmed. Had Plaintiff received a warning that the use of the Products would expose her Minor Child L.G. to lead, Plaintiff would not have purchased or used the Products. Plaintiff L.G.'s use of the Products proximately caused her lead poisoning.

5. As a direct and proximate result of Defendants' design, manufacture, marketing, sale and distribution of the Products, Plaintiff Minor Child L.G. suffered bodily injuries

50

and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring, loss of earnings, and loss of ability to earn money in the future. The losses are permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

6. As a further result, Plaintiff, MARILYN GOMEZ has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of her minor child and will continue to suffer such losses in the future.

**Wherefore,** Plaintiffs request a judgment against Defendants joint and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

## COUNT THIRTEEN – ALL DEFENDANTS – UNJUST ENRICHMENT

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. Plaintiff, MARILYN GOMEZ, and other consumers conferred a monetary benefit on Defendants, and Defendants had knowledge of this benefit.

3. By its wrongful acts and omissions described herein, including selling the Products containing lead, Defendants were unjustly enriched at the expense of Plaintiffs and consumers.

4. Plaintiffs' detriment and Defendants' enrichment were related to and flowed from the wrongful conduct alleged herein.

5. Defendants have profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiffs under circumstances in which it would be inequitable for Defendants to

51

retain the profits, benefits, and other compensation obtained from its wrongful conduct as described herein in connection with selling the Products.

6. Plaintiffs have been damaged as a direct and proximate result of Defendants' unjust enrichment because they would not have purchased the Products had they known that the Products contained lead.

7. Defendants either knew or should have known that payments rendered by Plaintiffs and other consumers were given and received with the expectation that the Products were free of lead. It is inequitable for Defendants to retain the benefit of payments under these circumstances.

8. Plaintiffs are in privity with Defendants because Defendants either directly sold the Products to Plaintiffs via authorized retailers or directly sold to Plaintiffs as an authorized retailer.

9. As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiffs are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants for their inequitable and unlawful conduct.

10. As a result, Plaintiff Minor Child L.G. suffered bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring, loss of earnings, and loss of ability to earn money in the future. The losses are permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

11. As a further result, Plaintiff, MARILYN GOMEZ has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of her minor child and will continue to suffer such losses in the future.

52

Wherefore, Plaintiffs request a judgment against Defendants joint and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against the Defendants on each of the above-referenced claims and Causes of Action and as follows:

    a. In favor of Plaintiff and against all Defendants, for damages in such amounts as may be proven at trial;

    b. Compensation for compensatory damages in excess of the jurisdictional amount, including, but not limited to mental pain and suffering, emotional distress, and all other- noneconomic damages in an amount to be determined at trial of this action.

    c. Awarding economic damages in the form of medical expenses, future medical expenses, chelation treatment, nutritional consulting, out of pocket expenses, lost earnings, and other economic damages in an amount to be determined at a trial of this action;

    d. Awarding restitution and disgorgement of revenues as appropriate;

    e. Attorney's fees and costs;

    f. Pre-judgment interest;

    g. Post-judgment interest;

    h. Statutory damages as available'

    i. Awarding Plaintiffs the cost of these proceedings; and

    j. Such other and further relief as this Court deems just and proper.

    k. Punitive damages

ANGLIN REA CAHALANE & PIEPER, P.A.
Attorney for Plaintiff(s)
By: Patrick H. Cahalane, Esq.

## JURY DEMAND

Pursuant to Rule 1:8-2(b), plaintiffs hereby demand that the issues herein be tried by a jury of six (6) persons.

ANGLIN REA CAHALANE & PIEPER, P.A.
Attorney for Plaintiff(s)
By: Patrick H. Cahalane, Esq.

## CERTIFICATION

I certify that to my knowledge the within action is the only action pending concerning the subject occurrence or transaction.

ANGLIN REA CAHALANE & PIEPER, P.A.
Attorney for Plaintiff(s)
By: Patrick H. Cahalane, Esq.

## DESIGNATION OF TRIAL COUNSEL

In accordance with R.4:25-4, Patrick H. Cahalane, Esq., is hereby designated as trial counsel for plaintiff.

ANGLIN REA CAHALANE & PIEPER, P.A.
Attorney for Plaintiff(s)
By: Patrick H. Cahalane, Esq.

1

MID-L-003463-25   06/09/2025 4:03:26 PM   Pg 1 of 2   Trans ID: LCV20251712838

# Civil Case Information Statement

**Case Details: MIDDLESEX | Civil Part Docket# L-003463-25**

**Case Caption:** GONZALEZ LESANDRA  VS WANABANA
LLC
**Case Initiation Date:** 06/09/2025
**Attorney Name:** PATRICK H CAHALANE
**Firm Name:** ANGLIN REA & CAHALANE, PA
**Address:** 1005 EASTPARK BOULEVARD
CRANBURY NJ 08512
**Phone:** 6094090444
**Name of Party:** PLAINTIFF : GONZALEZ, LESANDRA
**Name of Defendant's Primary Insurance Company
(if known):** Unknown

**Case Type:** PERSONAL INJURY
**Document Type:** Complaint with Jury Demand
**Jury Demand:** YES - 6 JURORS
**Is this a professional malpractice case?**  NO
**Related cases pending:** NO
**If yes, list docket numbers:**
**Do you anticipate adding any parties (arising out of same
transaction or occurrence)?** NO
**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: LESANDRA GONZALEZ?** NO

**Are sexual abuse claims alleged by: MARILYN GONZALEZ?** NO

**Are sexual abuse claims alleged by: MARILYN GONZALEZ?** NO

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual
management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
**If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
**If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO
**Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the
court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

MID-L-003463-25   06/09/2025 4:03:26 PM   Pg 2 of 2   Trans ID: LCV20251712838

06/09/2025
Dated

/s/ PATRICK H CAHALANE
Signed

MID-L-003463-25  06/10/2025 5.40.33 AM  Pg 1 of 1  Trans ID: LCV20251715765

MIDDLESEX VICINAGE CIVIL DIVISION
P O BOX 2633
56 PATERSON STREET
NEW BRUNSWICK    NJ 08903-2633

                                    TRACK ASSIGNMENT NOTICE
COURT TELEPHONE NO. (732) 645-4300
COURT HOURS  8:30 AM - 4:30 PM

                    DATE:    JUNE 09, 2025
                    RE:      GONZALEZ LESANDRA   VS WANABANA LLC
                    DOCKET: MID L -003463 25

    THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 2.

    DISCOVERY IS   300 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

    THE PRETRIAL JUDGE ASSIGNED IS:  HON JOSEPH REA

    IF YOU HAVE ANY QUESTIONS, CONTACT TEAM     004
AT:  (732) 645-4300 EXT 88905.

    IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
    PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                        ATTENTION:

                            ATT: PATRICK H. CAHALANE
                            ANGLIN REA & CAHALANE, PA
                            1005 EASTPARK BOULEVARD
                            CRANBURY         NJ 08512

ECOURTS

## NJ SUPERIOR COURT LAWYER REFERRAL AND LEGAL SERVICE LIST

**ATLANTIC COUNTY:**
Deputy Clerk, Superior Court
Civil Division, Direct Filing
1201 Bacharach Blvd., 1st Fl.
Atlantic City, NJ 08401
LAWYER REFERRAL
(609) 345-3444
LEGAL SERVICES
(609) 348-4200

**BERGEN COUNTY:**
Deputy Clerk, Superior Court
Civil Division, Room 115
Justice Center, 10 Main St.
Hackensack, NJ 07601
LAWYER REFERRAL
(201)488-0044
LEGAL SERVICES
(201) 487-2166

**BURLINGTON COUNTY:**
Deputy Clerk, Superior Court
Central Processing Office
Attn: Judicial Intake
First Fl., Courts Facility
49 Rancocas Road
Mt. Holly, NJ 08060
LAWYER REFERRAL
(609) 261-4862
LEGAL SERVICES
(609) 261-1088

**CAMDEN COUNTY:**
Deputy Clerk, Superior Court
Civil Processing Office
Hall of Justice
1st Fl, Suite 150
101 South 5th Street
Camden, NJ 08103
LAWYER REFERRAL
(856) 482-0618
LEGAL SERVICES
(856) 964-2010

**CAPE MAY COUNTY:**
Deputy Clerk, Superior Court
9 N. Main Street
Cape May Court House, NJ
08210
LAWYER REFERRAL
(609) 463-0313
LEGAL SERVICES
(609) 465-3001

**CUMBERLAND COUNTY:**
Deputy Clerk, Superior Court
Civil Case Management Office
60 West Broad Street
P. O. Box 10
Bridgeton, NJ 08302
LAWYER REFERRAL
(856) 696-5550
LEGAL SERVICES
(856) 691-0494

**ESSEX COUNTY:**
Deputy Clerk, Superior Court
Civil Customer Service
Hall of Records, Room 201
465 Dr. Martin Luther King Jr.
Blvd.
Newark, NJ 07102
LAWYER REFERRAL
(973) 622-6204
LEGAL SERVICES
(973) 624-4500

**GLOUCESTER COUNTY:**
Deputy Clerk, Superior Court
Civil Case Management Office,
Attn: Intake, First Fl., Court
House
1 North Broad Street
Woodbury, NJ 08096
LAWYER REFERRAL
(856) 848-4589
LEGAL SERVICES
(856) 848-5360

**HUDSON COUNTY:**
Deputy Clerk, Superior Court
Civil Records Dept.
Brennan Court House, 1st Floor
583 Newark Avenue
Jersey City, NJ 07306
LAWYER REFERRAL
(201) 798-2727
LEGAL SERVICES
(201) 792-6363

**HUNTERDON COUNTY:**
Deputy Clerk, Superior Court
Civil Division
65 Park Avenue
Flemington, NJ 08822
LAWYER REFERRAL
(908) 236-6109
LEGAL SERVICES
(908) 782-7979

**MERCER COUNTY:**
Deputy Clerk, Superior Court
Local Filing Office, Courthouse
175 S. Broad Street
P. O. Box 8068
Trenton, NJ 08650
LAWYER REFERRAL
(609) 585-6200
LEGAL SERVICES
(609) 695-6249

**MIDDLESEX COUNTY:**
Deputy Clerk, Superior Court
Middlesex Vicinage
Second Floor, Tower
56 Paterson Street
P. O. Box 2633
New Brunswick, NJ 08903-2633
LAWYER REFERRAL
(732) 828-0053
LEGAL SERVICES
(732) 249-7600

**MONMOUTH COUNTY:**
Deputy Clerk, Superior Court
Court House
P. O. Box 1269
Freehold, NJ 07728-1269
LAWYER REFERRAL
(732) 431-5544
LEGAL SERVICES
(732) 866-0020

**MORRIS COUNTY:**
Morris County Courthouse
Civil Division
Washington & Court Streets
P. O. Box 910
Morristown, NJ 07963-0910
LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 285-6911

**OCEAN COUNTY:**
Deputy Clerk, Superior Court
Court House, Room 121
118 Washington Street
P.O. Box 2191
Toms River, NJ 08754-2191
LAWYER REFERRAL
(732) 240-3666
LEGAL SERVICES
(732) 341-2727

**PASSAIC COUNTY:**
Deputy Clerk, Superior Court
Civil Division- Court House
77 Hamilton Street
Paterson, NJ 07505
LAWYER REFERRAL
(973) 278-9223
LEGAL SERVICES
(973) 523-2900

**SALEM COUNTY:**
Deputy Clerk, Superior Court
Attn: Civil Case Management
Office
92 Market Street
Salem, NJ 08079
LAWYER REFERRAL
(856) 935-5629
LEGAL SERVICES
(856) 691-0494

**SOMERSET COUNTY:**
Deputy Clerk, Superior Court
Civil Division Office
40 North Bridge Street
P. O. Box 3000
Somerville, NJ 08876
LAWYER REFERRAL
(908) 685-2323
LEGAL SERVICES
(908) 231-0840

**SUSSEX COUNTY:**
Deputy Clerk, Superior
Court
Sussex County Judicial
Center
43-47 High Street
Newton, NJ 07860
LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 383-7400

**UNION COUNTY:**
Deputy Clerk, Superior
Court
1st Floor, Court House
2 Broad Street
Elizabeth, NJ 07207-
6073
LAWYER REFERRAL
(908) 353-4715
LEGAL SERVICES
(908) 354-4340

**WARREN COUNTY:**
Deputy Clerk, Superior
Court
Civil Division, Court
House
413 Second Street
Belvidere, NJ 07823-
1500
LAWYER REFERRAL
(908) 859-4300
LEGAL SERVICES
(908) 475-2010

# Exhibit 2

ANGLIN REA CAHALANE & PIEPER, P.A.
Patrick H. Cahalane, Esq., ID #02152-1992
Attorney for Plaintiff(s)
1005 Eastpark Boulevard
Cranbury, New Jersey 08512
(609)409-0444

| | |
|---|---|
| _____ | SUPERIOR COURT OF NEW JERSEY |
| L.G., a minor through : | LAW DIVISION |
| her mother and natural guardian, MARILYN : | |
| GONZALEZ, and, MARILYN GONZALEZ,: | |
| individually, : | |
| *Plaintiff(s)* : | MIDDLESEX COUNTY |
| vs. : | |
| WANABANA LLC; WANABANA USA : | Docket No. MID-L-3463-25 |
| LLC; DOLLAR TREE STORES, INC.; : | |
| JOHN DOE CORPS. 1-10 : | Civil Action |
| *Defendant(s)* : | **AMENDED COMPLAINT** |
| _____ | |

L.G., a minor through her mother and natural guardian, MARILYN GONZALEZ, and, MARILYN GONZALEZ individually, (hereinafter collectively referred to as "Plaintiffs"), file this complaint against WanaBana LLC, WanaBana USA LLC (hereinafter referred to as "WanaBana Defendants"), John Doe Corporations 1-10 (hereinafter referred to as "John Doe Parties"), and Dollar Tree Stores, Inc. (hereinafter referred to as "Dollar Tree") all collectively referred to as "Defendants" for personal injuries and damages sustained as a result of plaintiff, L.G., a minor through her mother and natural guardian, MARILYN GONZALEZ, ingestion of lead contained in WanaBana Defendant's product, WanaBana Apple Cinnamon Fruit Purée (hereinafter referred to as "Products"), and sold by Dollar Tree. Plaintiffs' allegations are made upon their personal knowledge, acts and experiences and, as to all other matters, upon information and belief.

## **NATURE OF THE ACTION**

1. Plaintiff MARILYN GONZALEZ is the natural mother of L.G., a minor.

2. Plaintiff L.G. consumed Defendants' Products and suffered catastrophic life-long injuries, including lead poisoning that will require continued medical monitoring, as a result of her consumption of Defendants' lead-contaminated Products.

3. The WanaBana Defendants design, manufacture, distribute, test, package, label, promote, market, advertise, distribute, and provide for sale fruit Purée "pouches," including the lead-contaminated apple cinnamon Products at issue here, throughout the United States.

4. The Dollar Tree Defendant is a retailer and seller of the WanaBana Defendants' fruit Purée pouches, including the lead-contaminated cinnamon apple Products.

5. Defendants are each liable to Plaintiffs for the injuries Plaintiffs have suffered by virtue of the doctrine of joint and several liability. Further, as alleged herein, Defendants worked and work in tandem to sell the Products.

## **THE PARTIES**
### **Plaintiffs**

1. Plaintiffs MARILYN GONZALEZ who, along with her Minor Child, L.G., are citizens and residents of Parlin, Middlesex County, New Jersey.

2. Minor child L.G. consumed Defendants' products from approximately August 2022 to August 2023, when L.G. was approximately 2 years old and during her developmental stages. During this time period, L.G. consumed several pouches of Defendants' Products.

3. As a result of her ingestion of Defendants' Products, L.G. has suffered catastrophic, life-long injuries including lead poisoning.

### ***Defendants***

1. Defendant WanaBana LLC is a Florida Limited Liability Corporation with its principal place of business

2

at 9405 N. Miami Ave., Miami Shores, FL 33150.

2.Defendant WanaBana LLC contracts for ingredients for, manufactures, tests, packages, labels, promotes, markets, advertises, and/or distributes, and sells the Products throughout the United States, including in Central New Jersey and Staten Island, New York.

3.Defendant WanaBana LLC registered as a Florida Limited Liability Corporation on January 11, 2018.

4.Defendant WanaBana USA LLC is a Florida Limited Liability Corporation with its principal place of business at 1413 Ponce De Leon Ave., Ste. 301 San Juan, Puerto Rico 00907.

5.Defendant WanaBana USA LLC contracts for ingredients for, manufactures, tests, packages, labels, promotes, markets, advertises, and/or distributes, and sells the Products throughout the United States, including in Middlesex County, State of New Jersey and Staten Island County, New York.

6.The WanaBana Defendants produce, manufacture, market, distribute, and/or sell pureed fruit and vegetable products comprised of various flavorings. These products are manufactured, produced, marketed, and distributed out of Florida. At all times relevant to this Complaint, Defendant WanaBana's products were sold throughout USA the including in State of New Jersey and State of New York.

7.Defendant Dollar Tree Stores, Inc. is a Virginia Limited Liability Corporation with is principal place of business at 500 Volvo Parkway, Chesapeake, Virginia 23320.

8.At all times relevant to this Complaint, Defendant Dollar Tree Stores, Inc., marketed, advertised, sold and/or distributed the WanaBana Defendants' products to Plaintiffs and across the United States, including throughout the State of New Jersey and State of New York.

9.Defendants John Doe Corporations 1-10 are the fictitious names of corporations, partnerships, or other business entities or organizations whose identities are not presently known, and who are the alter egos of or are otherwise responsible for the conduct or liability of those who developed, manufactured, packaged, sold, supplied purchased, marketed, promoted, advertised, distributed, labeled, sold, and/or retained

profits from the Products to which Plaintiff L.G. was exposed.

10. Defendants as used in this Complaint collectively refers to and means Defendants WanaBana LLC, WanaBana USA LLC, Dollar Tree Stores, Inc., and the John Doe parties, either or both in its own right or as a corporate successor to an entity or person whose acts, omissions, undertakings, or activities are attributed to it by contract or operation of law.

## JURISDICTION AND VENUE

1.This is an action for damages in excess of fifty-thousand dollars.

2. This Court has original jurisdiction, as Defendants committed tortious acts within the State of New Jersey and State of New York.

3.Plaintiffs are entitled to bring this action before this Court as the WanaBana Defendants maintain a corporate residence in the State of New Jersey and State of New York.

4. The WanaBana Defendants contract with suppliers and import their Products from Ecuador for distribution throughout the United States via a large shipping and warehouse facility in Jacksonville, Florida. From this Florida location, the WanaBana Defendants then distribute the Products throughout the United States, making them available at numerous online and retail outlets including through Defendant Dollar Tree stores.

5.The WanaBana Defendants regularly and systematically conduct business, including importing, contracting, distributing, and selling its products—including the Products at issue here— in the State of New Jersey and the State of New York and the United States.

6.During all relevant times, the WanaBana Defendants controlled the sourcing of ingredients, quality control, testing, manufacturing, design, packaging, labeling, marketing, promotion, advertising, distribution, and sales of their Products. Therefore, the WanaBana Defendants had control over the contents, packaging and labeling of their Products.

4

7. The WanaBana Defendants have also been involved in the manufacture, design, testing, packaging, labeling, marketing, advertising, promotion, distribution, and sales of the Products under the WanaBana name throughout the United States, including in the State of New Jersey and the State of New York. The WanaBana Defendants have done so continuously throughout the relevant time period.

8. The Defendant Dollar Tree regularly and systematically conducts business, including selling WanaBana Defendants' products—including the Products at issue here—in Middlesex County and Staten Island County, to consumers in Middlesex County and State Island County, and throughout New Jersey, New York and the United States.

9. The Dollar Tree Defendant has sold the Products to consumers continuously throughout the relevant time period here, including in New Jersey, New York  and in Middlesex County, New Jersey and Staten Island County, New York.

10. Accordingly, all Defendants are subject to the jurisdiction of this Court.

11. Venue is likewise proper in Middlesex County because all Defendants are subject to personal jurisdiction in Middlesex County and regularly conduct substantial business in Middlesex County. Moreover, a substantial part of the events, acts and transactions giving rise to the action—including distribution, marketing, promotion, and manufacturing of the Products—occurred in Middlesex County, New Jersey.

## FACTUAL ALLEGATIONS: Plaintiffs' Facts

1. In or around August 2022, Plaintiff MARILYN GONZALEZ began purchasing WanaBana Apple Cinnamon Fruit Purée pouches, from a store owned and operated by Defendant Dollar Tree, for her Minor Child L.G..

2. Plaintiff MARILYN GONZALEZ, as the parent of the Minor Child, seeks to provide a diet that is both nutritious and healthy for her young and developing Minor Child.

3.As a result of these concerns, Plaintiff MARILYN GONZALEZ relied heavily on the Products' labeling which indicated it was "kosher," "additive-free," and "USDA Organic" when purchasing the Defendants' WanaBana Apple Cinnamon Fruit Purée pouches for her Minor Child.

4. Minor Child L.G. began consuming Defendants' WanaBana Apple Cinnamon Fruit Purée pouches in or around March 2022 to March 2023, when L.G. was approximately two years old.

5.Minor Child L.G. consumed the "pouches" of Defendants' Products until approximately August 2023.

6.In August of 2023, as part of her medical exam, L.G.'s physician tested her blood. The physician subsequently discovered that L.G. had an elevated level of lead in her system, with a blood lead level of 6.8 µg/dL.

7.L.G.'s elevated blood lead level caused, Plaintiff MARILYN GONZALEZ worry and concern for her Minor Child's health.

8. Plaintiff MARILYN GONZALEZ also had her and her 10 year old son's blood collected for lead testing; the results of both collections showed normal blood lead levels. Plaintiff MARILYN GONZALEZ also had her property tested for lead; the results showed normal lead levels.

9.In response to this new development, the Middlesex County Environmental Health Department conducted a lead investigation into L.G.'s home — no sources of lead were found at the Minor Child's home.

10. As extensive lead investigations exhausted plausible other sources of lead to explain the cause of the Minor Child's elevated blood lead level, the Minor Child's physician recommended that Plaintiff MARILYN GONZALEZ conduct an "elimination diet" – a process-of-elimination audit of the food consumed in Plaintiffs' household.

6

11. Through doing an elimination diet during approximately July of 2023, Plaintiffs realized that the only food consumed by the Minor Child that was not consumed by Plaintiffs MARILYN GONZALEZ and her 10 year old son, were the Defendants' WanaBana Fruit Purée Products.

11. Immediately following the elimination diet, the Minor Child stopped consuming Defendants' Products.

12. Accordingly, other blood lead tests were conducted on L.G.. These subsequent tests revealed that the Minor Child's blood lead levels had declined.

13. Since eliminating Defendants' Products from her diet, L.G.'s blood lead level declined from 6.8 μg/dL to 1.6 μg/dL. Following the Minor Child's exposure, Plaintiff, MARILYN GONZALEZ, began treatments for the Minor Child for lead extraction, and developmental and medical monitoring.

14. Continued treatment is necessary for childhood lead poisoning victims, such as L.G., because lead poisoning can manifest itself throughout an individual's life through developmental delays, learning difficulties, irritability, loss of appetite, sluggishness and fatigue, abdominal pain, vomiting, constipation, hearing loss, and seizures. As a result, regular monitoring is required for early detection of lead poisoning manifestations.

15. As a result of consuming Defendants' Products, L.G. is subject to continued treatment and monitoring, requiring routine appointments with physicians, chelation treatment, blood lead level testing, developmental testing, and regular appointments with a nutritionist.

16. Recent physician testing for L.G. reports that her elevated blood lead levels have decreased less and less from August 2023 to September 2023 to October 2023 since L.G. stopped consuming Defendants' Products and Plaintiff, MARILYN GONZALEZ prepared all food for L.G.'s intake.

7

**_North Carolina Public Health Authorities' Investigation of Plaintiffs' Lead Exposure Leads to FDA Action and Recall_**

1.Upon North Carolina public health authorities' discovery of lead contained in Defendants' Products purchased and consumed by Plaintiffs, as well as the Products simultaneously being linked to many childhood lead poisoning cases in North Carolina, North Carolina public health authorities issued a statement ("NCDHHS Statement") regarding four children in the North Carolina who were found to have high levels of lead in their blood linked to the WanaBana Defendants' Purée products.[1]

2. On or about October 30, 2023, the FDA issued a public health alert, based on the NCDHHS Statement and coordinated investigations among North Carolina public health authorities, that the Products contained "extremely high levels" of the lead (hereinafter referred to as "FDA Alert"). [2]

3. The FDA Alert stated that the NCDHHS "analyzed multiple lots of WanaBana apple cinnamon fruit puree, detecting extremely high concentrations of lead."[3]

―――――――――――――――――――――

[1] North Carolina Department of Health and Human Services ("NCDHHS"), _NCDHHS Urges Caution After Reportable Lead Found in WanaBana Brand Apple Cinnamon Puree_, https://www.ncdhhs.gov/news/press-releases/2023/10/28/ncdhhs-urges-caution-after-reportable- lead-found-WanaBana-brand-apple-cinnamon-puree, Oct. 28, 2023 (last accessed Jan. 18, 2023) ("NCDHHS Statement").

[2] Food and Drug Administration ("FDA"), _FDA Advises Parents and Caregivers Not to Buy or_

_Feed WanaBana Apple Cinnamon Fruit Purée Pouches to Toddlers and Young Children Because of Elevated Lead Levels,_ https://www.fda.gov/food/alerts-advisories-safety-information/fda-          advises-parents-and-caregivers-not-buy-or-feed-WanaBana-apple-cinnamon-fruit-puree-pouches, Nov. 3, 2023 (last accessed Jan. 18, 2023) ("FDA Alert").

[3] _Id._

4. The FDA Alert also stated that "The FDA has reviewed and supports NCDHHS's analytical findings and found that analytical results at this level could result in acute toxicity" and that it "has shared the results with [WanaBana Defendants] whose representatives are cooperating with the FDA and have agreed to voluntarily recall all WanaBana apple cinnamon fruit purée pouches regardless of expiration." [4]

5. The FDA identified and confirmed the serious health implications arising from lead exposure and its toxicity. [5]

6. On November 3, 2023, the investigation into WanaBana Defendants' Products was transferred to the FDA's Coordinated Outbreak Response & Evaluation (CORE) Network for continued investigation "in collaboration with the Centers for Disease Control and Prevention (CDC) and state and local partners." [6]

7. On November 09, 2023, the FDA announced that the recall of WanaBana Apple Cinnamon Fruit Purée pouches was expanded to include Schnucks Apple Sauce 90g pouches with cinnamon, and Weis Cinnamon Apple Sauce 90g, both of which are independently distributed private label brands of the WanaBana Defendants. [7]

8. The FDA also made a statement that "FDA is aware that, as of December 13 [2023], recalled WanaBana Apple Cinnamon Purée products (including recalled three packs) were still on the shelves at several Dollar Tree stores in multiple states. As of December 19 [2023], FDA also

---

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] FDA, *Company Announcement: WanaBana Recalls WanaBana, Weis, and Schnucks Apple Cinnamon Fruit Purée Pouches & Cinnamon Apple Sauce Due to Elevated Lead* Levels, Nov. 9, 2023, https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/WanaBana-recalls-    WanaBana-weis-and-schnucks-apple-cinnamon-fruit-puree-pouches-cinnamon-apple-sauce (last accessed Jan. 18, 2024)

received a report that recalled WanaBana Apple Cinnamon Purée product (including recalled three packs) may still be on shelves at Family Dollar/Dollar Tree combination stores. This product should not be available for sale and consumers should not purchase this product."[8]

9.FDA officials investigating Defendants' Products have raised the possibility that the lead contamination in the cinnamon used by Defendants may have been intentionally added for economic reasons.[9]

10.The FDA's Department of Health and Human Services conducted an inspection of the facility where the Products were processed, the facility which mixes the ingredients which are put into the final products, including the Products at issue here. The inspection was conducted from December 4th to December 14th 2023.[10]

11.The FDA inspection report found that the WanaBana Defendants did not include cinnamon in its hazard analysis which required a preventative control for heavy metals, including lead.[11]

12.The FDA inspection report further reported that the WanaBana Defendants did not sample and test raw materials or the finished products for heavy metals, including lead.[12]

---

[8] FDA, *Investigation of Elevated Lead & Chromium Levels: Cinnamon Applesauce Pouches (November 2023)*, https://www.fda.gov/food/outbreaks-foodborne-illness/investigation-elevated- lead-chromium-levels-cinnamon-applesauce-pouches-november-2023 (last accessed Jan. 18, 2024).

[9] Associated Press, *Parents of Children Sickened by Lead Linked to Tainted Food Pouches Fear for Kids' Future*, https://apnews.com/article/WanaBana-apple-cinnamon-lead-poisoning-fruit- pouch-86c32266e010843d0c9ad3340ccae319 (last accessed Jan. 22, 2024).

[10] FDA Health and Human Services, *Austrofood S.A.S. Inspection*, FEI No. 3013416401, Dec. 14, 2023, 2024-01-24_fda_foia-2023-11285-ocr.pdf (tinalexander.github.io) (last accessed Jan. 24, 2024).

[11] *Id.*

[12] *Id.*

13. Additionally, the FDA inspection report concluded that the WanaBana Defendants did not have an appropriate preventative control and monitoring procedure in place to significantly minimize or prevent hazards. In particular, the report cited the food safety plan for apple cinnamon Purée to be not sufficient to prevent hazards.[13]

14. The FDA Inspection report identified that the WanaBana Defendants' Products processing facility had no controls in place to account for metal contamination from the rough edges, chips, and pitted areas that are present on the conveyer belt which processes the Purée in the Products.[14]

15. This food safety misconduct and the failed preventative controls, as identified in the FDA inspection report, resulted in the lead poisoning of dozens of children and consumers, including Plaintiff L.G..

16. As of January 3, 2024, the FDA has received 89 total complaints/Adverse Event Reports.[15]

17. The median age of the individuals affected by lead poisoning caused by Defendants' Products is one year old.[16]

18. The CDC's investigation identifies links between blood lead levels of 3.5 μg/dL or higher in children within three months of the consumption of Defendants' Products. The CDC reports that, as of January 19, 2024, it has received reports from state and local health departments that

---

[13] *Id.*

[14] *Id.*

[15] FDA, *Investigation of Elevated Lead & Chromium Levels: Cinnamon Applesauce Pouches (November 2023)*, https://www.fda.gov/food/outbreaks-foodborne-illness/investigation-elevated- lead-chromium-levels-cinnamon-applesauce-pouches-november-2023 (last accessed Jan. 23, 2024).

[16] *Id.*

implicate over 385 total cases of lead poisoning resulting from exposure to WanaBana Defendants' Products.[17]

19. Additional laboratory testing by the FDA of Defendants' Products found that the Products also contained chromium.[18]

20. On January 5, 2024, the FDA announced that WanaBana's cinnamon and recalled products also contained elevated levels of chromium contamination as high as 1201 ppm in the cinnamon. At high levels chromium can cause toxicity and the more toxic form of chromium is "chromium (VI)." The quantity of chromium detected by the FDA and the lead to-chromium ratio is consistent with lead chromate $(PbCrO_4)$.[19]

21. Lead chromate typically appears as a yellow, orange, and red power and is often used as a pigment in a powder or paint. It is carcinogenic, a neurotoxin, and a nephrotoxin.

22. Lead chromate primarily affects the lungs, but it can also affect the gastrointestinal tract, liver, kidneys, and immune system. Lead chromate also contains the most toxic form of chromium (chromium (VI)).

### *The Longstanding Knowledge of the Dangers of Lead*

1. Defendants' Products contained lead and chromium.

2. Lead is a toxic heavy metal, upon which exposure and ingestion can lead to lead poisoning.

3. Lead poisoning can result in serious, life-long adverse health effects especially in children.

---

[17] Center for Disease Control and Prevention, *Lead and Chromium Poisoning Outbreak Linked to Cinnamon Applesauce Pouches*, Dec. 20, 2023, https://www.cdc.gov/nceh/lead/news/lead- poisoning-outbreak-linked-to-cinnamon-applesauce-pouches.html (last accessed Jan. 23, 2024)

[18] *Id.*

[19] *Id.*

4.The harmful effects of lead poisoning in children can include, but are not limited to: behavior and learning problems, lower IQ and hyperactivity, slowed growth, hearing problems, and anemia.[20]

5.The harm that lead poisoning inflicts on children has been well-known for decades.

6.Lead is dangerous to children, in particular, "because their growing bodies absorb more lead than adults do and their brains and nervous systems are more sensitive to the damaging effects of lead."[21]

7.Indeed, children absorb ingested lead from a given source 4-5 times more than adults. [22]

8."The neurological and behavioral effects of lead are believed to be irreversible."[23]

9.Moreover, there is no known safe blood level concentration in children.[24]

10.The World Health Organization reports that even "blood lead concentrations as low as 3.5 µg/dL may be associated with decreased intelligence in children, behavioral difficulties and learning problems.[25]

11.The World Health Organization has also identified lead as one of its 10 chemicals that constitute a major public health concern.[26]

-----

[20] EPA, Learn About Lead https://www.epa.gov/lead/learn-about-lead#effects (last accessed Jan. 14, 2024).

[21] *Id.*

[22] World Health Organization, Lead Poisoning https://www.who.int/news-room/fact- sheets/detail/lead-poisoning-and- health#:~:text=Exposure%20to%20lead%20can%20affect,%2C%20liver%2C%20kidney%20and%20bones. (last accessed Jan. 14, 2024).

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.*

12. Lead in the body is known to distribute throughout a child's brain, liver, kidney, and bones. It is also stored in a child's teeth and bones, where it can accumulate over time.[27]

13. The FDA and the World Health Organization have declared lead to be dangerous to human health. [28]

14. In addition to the lead, the chromium in defendants' contaminated products represents a significant health risk. Although chromium is naturally occurring and may be normally found within a diet, at high levels it is toxic. Moreover, there is a significant difference between trivalent chromium (chromium (III)) and the significantly more toxic hexavalent chromium (chromium (VI)). Chromium (VI) is a known carcinogen and has been associated with other health effects when ingested including irritation, ulcers, and anemia. Although the health effects of eating food contaminated with chromium (VI) are not well understood, there is also no antidote to treat chromium exposure.[29]

15. The more toxic and dangerous form of chromium (chromium (VI)) is found in lead chromate. Lead chromate has been used to adulterate spices, such as turmeric, and is toxic. The FDA's reported laboratory ratios of lead and chromium found in Defendants' Products are consistent with the Products being contaminated with lead chromate.

---

[27] *Id.*

[28] *See, e.g.*, U.S. House of Representatives Committee on Oversight and Reform, *Staff Report: Baby Foods are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury* at 2, Feb. 4, 2021, https://oversightdemocrats.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (last accessed Jan. 18, 2024).

[29] CDC, *Lead and Chromium Poisoning Outbreak Linked to Cinnamon Applesauce Pouches*, https://www.cdc.gov/nceh/lead/news/lead-poisoning-outbreak-linked-to-cinnamon-applesauce- pouches.html (last accessed Jan. 24, 2024).

16. Adulteration of spices using lead chromate compounds has been documented globally as a growing public health concern. It has contributed to lead poisoning of children and adults around the world.[30]

17. Lead chromate is considered a hazardous substance in the United States for several reasons, including its carcinogenic nature, its risk of causing lead poisoning, and its risk of causing kidney and brain damage, among other major health concerns.[31]

18. Given the negative effects of lead on child development and adult health, the presence of these substances in food is material to reasonable consumers, including Plaintiffs, as it relates to their purchasing and consumption decisions.

19. Defendants' Products included undisclosed levels of lead, due to Defendants' failure to sufficiently monitor for their presence in the ingredients and finished products. Defendants were or should have been aware of this risk.

20. Concerns over exposure to lead, and the knowledge of such risks associated with exposure, are not a new phenomenon, and Defendants knew or should have known of the risks associated with the presence of lead in foods they sell to consumers.

21. Defendants knew or should have known that it owed consumers, including Plaintiffs, a duty of care to prevent, or at the very least, minimize the presence of lead in the Products to the extent reasonably possible.

22. Defendants knew or should have known that it owed consumers, including Plaintiffs, a duty of care to adequately test for lead in the Products and the contributing ingredients.

---

[30] Lopez, Alandra et al., *Assessing Analytical Methods for the Rapid Detection of Lead in the Global Spice Market, Environ. Sci. Technol.* 2022, 56, 23, 16996–17006, Nov. 7 2022, https://pubs.acs.org/doi/epdf/10.1021/acs.est.2c03241 (last accessed Jan. 24, 2024).

[31] National Center for Biotechnology Information (2024), *Lead Chromate Compound Summary,* https://pubchem.ncbi.nlm.nih.gov/compound/Lead-chromate (last accessed Jan. 24, 2024).

23. Defendants also had a duty to ensure the Products were not deceptively, misleadingly, unfairly, and falsely marketed and that all material information was properly and fully disclosed.

24. Defendants knew or should have known that proper and sufficient testing and/or monitoring the Products for lead in both the ingredients and finished products was critical.

25. Defendants knew, yet failed to disclose, that they were not sufficiently or adequately monitoring or testing the Products or ingredients used in the Products for lead.

26. Defendants knew or should have known they could control the levels of lead in the Products by properly monitoring and testing for lead at ingredient sourcing, manufacturing, and packaging stages, and effecting changes when needed.

27. In addition, Defendants knew or should have known that a reasonable consumer would consume the Products regularly, leading to repeated exposure to and accumulation of lead.

### *Defendants Made Material Misrepresentations and Omissions*

1. Upon information and belief, the WanaBana Defendants' exclusive packager is Ecuadorian-based company Austrofoods, which ships the WanaBana Products to the United States.[32]

2. Upon information and belief, the WanaBana Defendants' exclusive cinnamon supplier is the Ecuadorian-based company Negasmart, which provided the contaminated cinnamon which was added to the Products.[33]

---

[32] FDA, *Investigation of Elevated Lead & Chromium Levels: Cinnamon Applesauce Pouches (November 2023)*, https://www.fda.gov/food/outbreaks-foodborne-illness/investigation-elevated-lead-chromium-levels-cinnamon-applesauce-pouches-november-2023 (last accessed Jan. 24, 2024).

[33] *Id.*

3. Ecuadorian authorities have reported that Negasmart's cinnamon, which was added to the Products here, had higher levels of lead than allowed by Ecuador.[34]

4. Upon information and belief, WanaBana Defendants' agents vetted Negasmart and its cinnamon. These vetting procedures were either inadequate or the WanaBana Defendants deliberately disregarded in that the procedures failed to identify the presence of harmful lead and chromium in the Products.

5. Upon information and belief, neither the WanaBana Defendants nor its supplier agents tested the cinnamon before incorporating it into the Products.

6. Upon information and belief, the WanaBana Defendants selected and used ingredients from an exclusive supplier that they knew or should have known was intentionally adding lead to its cinnamon spice product to increase the weight, and therefore the value, of the cinnamon.[35]

7. The WanaBana Defendants have a duty to ensure that their products, including the Products at issue here, were not contaminated with lead or other harmful substances. This duty derives, in part, from the WanaBana Defendants' control and oversight of its agents, including its exclusive suppliers, that contribute to the manufacture of the end Products to which Plaintiff L.G. was exposed.

8. The WanaBana Defendants' duty to ensure their products, including the Products at issue here, are safe and free of harmful substances, such as lead, is of even greater significance because of the WanaBana Defendants' knowledge that their products will be consumed by children and their marketing efforts consistent with that knowledge.

---

[34] *Id.*

[35] *Id.*

9. Meanwhile, WanaBana Defendants make specific representations to consumers that their fruit pouches, including the Products at issue in this litigation, are high- quality, healthy, and safe products for consumers, including Plaintiffs, to choose for their children, including that they are the "ideal snack for the whole family."[36]

10. The product's selected slogan, "I AM ONLY FRUIT," is used by WanaBana Defendants to imply to parents that they are purchasing for their children a premium, healthy fruit Purée pouch.[37]

11. Defendants used the same slogan "I AM FRUIT" on the "apple cinnamon" flavor Products ingested by L.G.. The front packaging of the Products also reads: "No preservatives," "Gluten free," "NO SUGAR ADDED," and "KOSHER."[38]

12. The back of the apple cinnamon Products ingested by L.G. lists three ingredients: "apple puree, cinnamon powder, acidulant: citric acid."[39]

13. The back of the apple cinnamon Products ingested by L.G. also states that the Products are "Gluten Free" and contain no BPA in its packaging.[40]

14. Defendant Dollar Tree sells three-packs of the WanaBana Defendants' products in brick- and-mortar retail locations as well as through its website.[41]

---

[36] WanaBana, *Homepage*, https://WanaBana.com/ (last accessed Jan. 15, 2024)

[37] WanaBana, *Fruit Pouch*, https://WanaBana.com/fruit-pouch/ (last accessed Jan. 15, 2024).

[38] See USA Today, *All WanaBana apple cinnamon pouches recalled for potentially elevated levels of     lead: FDA*,      image      provided      by      FDA      therein, https://www.usatoday.com/story/money/2023/10/30/WanaBana-fruit-pouch-recall- lead/71378400007/ (last accessed Jan. 15, 2024).

[39] *See id.*

[40] *See id.*

[41] See, e.g., Dollar Tree, *WanaBana Fruit Purée Pineapple Banana Fruit Pouches, 3-ct. 7.5 oz.*, https://www.dollartree.com/WanaBana-fruit-puree-pineapple-banana-fruit-pouches-3-ct-75- oz/370158 (last accessed Jan. 15, 2024).

15.The boxing encasing the "3-pack" of fruit Purée pouches also states that the products are Kosher, contain no preservatives, are gluten free, "[r]eady to eat," and are in "BPA Free Packaging."

16.The WanaBana Defendants also tout the purported safety and quality of their products on their website. As an example, the WanaBana Defendants list six certification seals followed by the statement: "We have certifications that guarantee the excellence of our food processes. Ensuring a product with worldwide safety and quality."[42]

17.The WanaBana Defendants also displayed logos of other certifications, but the WanaBana Defendants have since removed those logos since the FDA's Alert.

18.The WanaBana Defendants' "Our Story" website page features language which tours their purported commitment to their consumers by "exceeding the expectations of our customers through the elaboration of products derived from fresh fruits that meet quality, safety, legality and authenticity parameters focused on continuous improvement in our BPM management systems, HACCP, BRC, SGCS BASC and nationally and internationally recognized quality standards."[43]

19. In order to achieve this purported commitment, the WanaBana Defendants state: "we have a team of highly qualified people, controlled processes and a food safety management system, which allows us to guarantee the safety of our products and a continuous improvement of our processes, as well as the prevention of illegal activities, corruption and bribe."[44]

---

[42] WanaBana, *Homepage*, https://WanaBana.com/ (last accessed Jan. 15, 2024). From left: certified Kosher; the Business Alliance for Secure Commerce, certified compliant; Good Manufacturing Practice certified; and certified organic by the European Union; certified organic by the U.S. Department of Agriculture; and certified organic by Quality Certification Services – Ecuador.

[43] WanaBana, Our Story, WanaBana.com/about-us (last accessed Jan. 15, 2024).

[44] *Id.*

20. The WanaBana Defendants make repeated statements on their website that their products are safe and high-quality, using their certifications as an endorsement of their purported quality: "[o]ur products not only maintain the fruit's organoleptic and nutritional characteristics, but also carry a production line with the highest standards in the market, evidenced in the certifications obtained year after year."[45]

21. The WanaBana Defendants have yet to make a post on its official English Facebook or Instagram pages warning consumers about the recall of its Products.

22. In fact, the WanaBana Defendants' Instagram postdated October 17, 2023 shows an image of its apple cinnamon pouch Products with a "Your Brand Here" affixed on the rendering of the pouch. The purpose of the post was to announce the WanaBana Defendants' attendance at the Private Label Manufacturers Association, further stating: "It's a #Wanafantastic opportunity to find out more about our innovative packaging, products, and all that we can do with #realfruit and #newblends."[46]

23. The WanaBana Defendants' Instagram Page states the following about its products in its bio/page description:[47]

    a.   "Purees, pulps & smoothies 100% Fruit;"

    b.   "No sugar added;"

    c.   "Practical package, easy to carry and enjoy;"

    d.   "Quality certification;"

---

[45] *Id.*

[46] WanaBana USA & Canada Instagram Page, *Oct. 17th 2023 Instagram Post*, Instagram.com/WanaBanausa (last accessed Jan. 15, 2024).

[47] WanaBana USA & Canada Instagram Page, Instagram.com/WanaBanausa (last accessed Jan. 15, 2024).

24. The WanaBana Defendants' Instagram Page also contains posts which explicitly markets its products to children, including with one post featuring a child painting beside an interposed graphic of a WanaBana fruit Purée pouch, with the caption stating: "Encourage your children's imagination   with a snack that will give them the vitamins and minerals they need for their growth. WanaBana is real fruit! Give WanaBana a try in its many delicious flavors."[48]

25. Another post on WanaBana Defendants' Instagram page purports that its products give energy and nutrition to children: "The energy and nutrition that WanaBana gives children is incredible. Have you tried the WanaBana Purée and pulp yet? The little ones in your home will love it."[49]

26. The WanaBana Defendants also reassert their claims about the purported safety and health benefits of their products on their Facebook page bio:[50]

> a. "A convenient and versatile way to enjoy real fruit. Made out of 100% natural fruit.No added sugar, no preservatives, no additives. BPA free package[.] Quality recognized internationally. We help develop agriculture & agroindustry with innovative solutions."

27. When advertising their products on Facebook, the WanaBana Defendants regularly use the hashtags such as "#onlyfruit," "#realfruit," "#organicfruit" to market their Purée products. [51]

---

[48] WanaBana USA & Canada Instagram Page, *Jan. 28, 2022 Instagram Post*, https://www.instagram.com/p/CZSiugRroxk/ (last accessed Jan. 15, 2024).

[49] WanaBana USA & Canada Instagram Page, *Jan. 22, 2022 Instagram Post*, https://www.instagram.com/p/CZDF9a-trCj/ (last accessed Jan. 15, 2024).

[50] WanaBana USA Facebook Page, https://www.facebook.com/WanaBanausa/ (last accessed Jan. 15, 2024).

[51] *See id.* at *Feb. 18, 2022 Post*.

28. The WanaBana Defendants also state on their Facebook page, under the privacy and legal info tab:[52]

    a. "JUST OPEN AND ENJOY – Convenient and versatile way to enjoy a real fruit wherever you go and does not need to be refrigerated."

    b. "I AM ONLY FRUIT – Made of only 100 percent natural fruit. We are dedicated to the production, and processing of fresh fruit to guarantee a healthy option for the whole family."

    c. "NATURAL - No added sugar, no preservatives, no additives, and comes in a BPA- free package giving you and your loved ones a high-quality addition to your diet."

    d. "EXTRAORDINARY STANDARDS – Recognized both at the national and international level, while also striving for innovation and contributing to the development of agriculture and agroindustry. "

29. These statements are demonstrably false, as Plaintiff Minor Child L.G. and other consumers have suffered from lead poisoning due to ingesting Defendants' Products.

30. Contrary to Defendants' representations and assurances that its Products are safe, healthy, certified, and manufactured under strict quality standards, Defendants' Products contain detectable levels of lead, which is known to pose life-long human health risks—particularly in children.

31. Defendants failed to disclose to consumers that the Products contain or have a material risk of containing lead.

--------------------------

[52] WanaBana USA Facebook Page, *About*, https://www.facebook.com/WanaBanausa/about (last accessed Jan. 15, 2024).

32. Consumers, including Plaintiffs, trusted manufacturers like the WanaBana Defendants and retailers like Defendant Dollar Tree to sell only fruit Purée products that are safe for themselves and their children, not to sell products that contain or have a material risk of containing lead.

33. Reasonable consumers, including the Plaintiffs, expect the fruit Purée products they purchase for their children will not be contaminated or have a material risk of being contaminated with lead — a substance that is known to accumulate in the body and pose significant and dangerous health consequences.

34. The quality of a product's contents, particularly as it relates to toxic contents such as lead, are material to a reasonable consumer's purchasing and consumption decision, including Plaintiffs' decisions.

35. Consumers, including Plaintiffs, lack the scientific knowledge or ability to conduct their own testing to determine whether Defendants' products do in fact contain lead, or to ascertain the true nature of the ingredients and quality of Products. Accordingly, reasonable consumers must and do rely on each Defendant to: (1) know what their Products contain; (2) regularly rest the Products to confirm their quality and compositions; and (3) properly and fully disclose these contents to consumers prior to sale and consumption.

36. Defendants knew or should have known that their Products contained lead and wrongfully failed to disclose that the Products contain or have a material risk of containing lead on its packaging.

37. Defendants knew or should have known that their Products contained lead yet chose to not disclose such information to consumers and thus actively concealed the presence and risk of lead in the Products.

38. No reasonable consumer would expect, suspect, or understand that the Products contain or have a material risk of containing lead.

39. Defendants failed to disclose on the Products' packaging that the Products contain or have a material risk of containing lead. It was only through the FDA and NCDHHS' testing, and subsequent advisories that the general public became aware of the lead content in Defendants' Products.

40.Based on Defendants' misrepresentations and omissions, no reasonable consumer, including Plaintiffs, had any reason to know, suspect, or expect that the Products contained lead.

41.Defendants are aware that their customers trust the quality of their Products and would not expect the Products to contain or have a material risk of containing lead.

42.As evidenced by Defendants' marketing, Defendants also know that reasonable consumers, especially parents, seek out products with ingredients free of toxins or contaminants, and that these consumers will pay more for products they believe meet these standards.

43.Defendants also know that reasonable consumers would not knowingly consumer, or feed to their families and children, products that contain lead.

44.Defendants knew that the consumers to whom it markets the Products would find their misrepresentations and omissions to be material and that Defendants were in a special position of public trust to those consumers.

45.In light of Defendants' representations regarding the health and quality standards of Defendants' operations and Products, Defendants knew or should have known the Products contained or had a material risk of containing lead.

46.Defendants' misrepresentations and omissions are deceptive, misleading, unfair, and/or false because the Products contain undisclosed lead.

47. Defendants' misrepresentations and omissions allowed Defendants to capitalize on, and reap enormous profits from, reasonable consumers like Plaintiffs that omitted material information as to the Products' true quality and value and, in fact, poisoned their children.

48.The popularity of pureed products in "pouch" form, including the Products at issue in this litigation, is increasing across the world, as parent-consumers, including Plaintiffs, seek nutritious and convenient

foods for their children.

49. The purported safety and health benefits of Defendants' Products are fully displayed on Defendants' packaging, as set forth in this Complaint.

50. Defendants' misrepresentations and omissions wrongfully convey to consumers that Defendants' Products are of superior quality and have certain characteristics that the Products do not actually possess.

51. Defendants' misrepresentations and omissions have caused consumers, including the Plaintiffs here, to believe the Products do not contain any harmful substances, when in fact the Products contain or have a material risk of containing undisclosed levels of lead, which is material information to reasonable consumers, including Plaintiffs.

52. Defendants' misrepresentations and omissions make the Products' packaging deceptive based on the presence or risk of lead in the Products. Reasonable consumers, including Plaintiffs, would consider the presence or risk of lead in the Products to be a material fact when considering which applesauce or other pureed products to consume.

53. Defendants' misrepresentations were material and misleading due to Defendants' failure to sufficiently or adequately monitor, control, or test for and disclose the presence or material risk of lead in the Products.

54. Information regarding the true nature and/or presence of lead in the Products was and is in the exclusive possession of Defendants and not available to consumers. Defendants chose to not disclose such information to consumers and thus concealed the presence and risk of lead in the Products from Plaintiffs.

55. Although Defendants are in the best position to know what content it placed on their website(s), social media sites, and in marketing materials during the relevant timeframe; the knowledge Defendants had regarding presence of lead in their Products; and their failure to disclose the existence of lead in the Products to Plaintiffs and consumers both before and after the Products were recalled; Plaintiffs allege the following facts with particularity:

a. WHO: Defendants made false statements and material misrepresentations and/or omissions of fact on their Products, labeling, marketing materials and in public statements, which include express and/or implicit representation that their Products were and are free of lead and were safe for human consumption.

b. WHAT: Defendants falsely and misleadingly, and through misrepresentations and omissions, led consumers to believe that their Products were and are free of lead and failed to disclose that the Products contain these materials. Thus, Defendants' conduct deceived Plaintiffs into believing that the Products were created, manufactured, and sold with such qualities. Defendants knew or should have known this information is material to reasonable consumers, including Plaintiffs, in making their decisions about the food to feed to their children, yet Defendants continued to pervasively market the Products as possessing qualities they do not possess.

c. WHEN: Defendants made material misrepresentations, false statements and/or omissions both prior to and at the time Plaintiff L.G. consumed Defendants' Products.

d. WHERE: Defendants' marketing message was uniform and pervasive, carried through material misrepresentations, false statements and/or omissions on their Products labeling and packaging, websites, and social media accounts.

e. HOW: Defendants made material misrepresentations, false statements and/or omissions regarding the presence of lead in their Products by making express and/or implicit representations in the above-referenced materials that their Products were healthy, safe, and made of premium ingredients and by omitting any facts in their marketing, labeling, and/or other descriptions of their Products that would inform a consumer as to the presence of lead.

## CAUSES OF ACTION

## COUNT ONE – ALL DEFENDANTS – STRICT LIABILITY FAILURE TO WARN

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. At all pertinent times, the WanaBana Defendants were engaged in manufacturing, marketing, testing, promoting, selling and/or distributing Products in the regular course of business.

3. At all pertinent times, the WanaBana Defendants knew or should have known that the use of their Products which contained lead significantly increases the risk of causing catastrophic, life- altering lead poisoning in children.

4. At all pertinent times, Defendant Dollar Tree was engaged in the business of marketing, promoting and selling the Products in the regular course of business.

5. At all pertinent times, Defendant Dollar Tree knew or should have known that the use of their Products which contained lead significantly increases the risk of causing catastrophic, life- altering lead poisoning in children.

6. At all pertinent times, Plaintiffs ingested Defendants' Products, which is a reasonably foreseeable use and in a manner normally intended by the Defendants.

7. At all pertinent times, Defendants' Products were unreasonably dangerous and in a defective condition because, among other things, it failed to warn Plaintiffs of the presence of lead in the Products and the increased risk of lead poisoning and catastrophic injury as a result of their ingestion. Had Plaintiff received a warning that the Defendants' Products contained lead and that ingestion would result in lead poisoning, then Plaintiff, MARILYN GOMEZ would not have used Defendants' Products in that manner, if at all.

8. These defects in Defendants' Products substantially contributed to Plaintiff L.G.'s lead poisonings. As a result, L.G. suffered bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring loss of earnings, and loss of ability to earn money in the future. The losses are permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

9.As a further result, Plaintiff, MARILYN GOMEZ has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of her minor child and will continue to suffer such losses in the future.

**Wherefore**, Plaintiffs request a judgment against Defendants joint and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

## COUNT TWO – WANABANA DEFENDANTS - STRICT LIABILITY – DEFECTIVE DESIGN

1.All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. The WanaBana Defendants were in the business of designing, manufacturing, packaging, labeling, selling, and distributing the Products in the regular course of business.

3.The WanaBana Defendants had a duty of a reasonable manufacturer to foresee and appreciate risks of harm associated with the ordinary use of their Products.

4.At all pertinent times, the WanaBana Defendants knew or in the exercise of reasonable care should have known that children ingest their fruit Purée Products.

5.At all pertinent times, the WanaBana Defendants knew or in the exercise of reasonable care should have known that the use of their Products which contained lead significantly increases the risk of causing catastrophic, life-altering lead poisoning in children.

6.The Products are defective in design because the foreseeable risk of becoming poisoned by lead exceeds a reasonable consumer's expectations that when consumed by children the fruit Purée Products are safe, that the risk of being exposed to lead as a result of ingestion significantly outweighs any potential benefit, and that the Products contain lead.

7.At all pertinent times, the Products were substantially in the same condition as when it left the possession of the WanaBana Defendants.

8. At all pertinent times, Plaintiff L.G. used the Products for food, which was a reasonably foreseeable and normally intended use by the WanaBana Defendants, as they gave no warnings in opposition, but rather promoted use of the Products for consumption by children and adults alike.

9.The Products' defective design was a substantial contributing factor of Plaintiff L.G.'s lead poisonings. As a result, L.G. suffered bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring loss of earnings, and loss of ability to earn money in the future. The losses are permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

10.As a further result, Plaintiff, MARILYN GOMEZ has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of their minor child and will continue to suffer such losses in the future.

**Wherefore**, Plaintiffs request a judgment against Defendants joint and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

## COUNT THREE – WANABANA DEFENDANTS– GROSS NEGLIGENCE

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2.At all pertinent times, the WanaBana Defendants had a duty to reasonably and properly design, manufacture, test, inspect, package, label, distribute, market, examine, maintain, supply, provide proper warnings and prepare for use the Products, as a reasonably prudent and careful manufacturer. The WanaBana Defendants owed this duty to Plaintiffs.

3.The Products which contained lead posed a clear and present danger to all foreseeable consumers, including children and Plaintiffs.

29

4. At all pertinent times, the WanaBana Defendants' cinnamon supplier, upon information and belief, intentionally added lead to the cinnamon to increase the cinnamon's weight-per-unit economic value. This cinnamon was then added to the Products as part of the WanaBana Defendants' manufacturing process.

5. At all pertinent times, the WanaBana Defendants knew or in the exercise of reasonable care should have known that the Products were not properly designed, manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold, supplied, prepared and/or provided with the proper warnings, and was unreasonably likely to injure users and consumers, including Plaintiff L.G.. The WanaBana Defendants' conduct created a foreseeable risk of injury to Plaintiffs and all of its customers.

6. The WanaBana Defendants breached their duty by, among other things:

a. Failing to comply with state and federal regulations concerning the study, testing, design, development, manufacture, inspection, advertisement, marketing, promotion, distribution, and/or sale of the Products;

b. Allowing its exclusive supplier to contaminate the cinnamon in its Products with lead;

c. Failing to warn Plaintiffs of the hazards associated with the use of the Products, including the risk of ingesting lead and being lead poisoned after consuming the Products;

d. Failing to properly test the Products to determine the adequacy and effectiveness or safety measures, if any, prior to release for consumer use;

e. Failing to warn Plaintiffs that the Products contained lead;

f. Choosing a supplier that intentionally added lead to the product to increase the weight, and consequently, the value of the cinnamon;

g. Failing to properly test and/or conduct a quality control of the Products to determine the increased risk of children being lead poisoned from normal and/or intended use;

h. Failing to adequately test the Products to ensure the absence of lead contamination;

i. Failing to inform ultimate users, such as Plaintiffs as to the safe and proper consumption of the Products;

j. Failing to remove Products from the market or adding proper warnings when the WanaBana Defendants knew or in the exercise of reasonable care should have known the Products were defective;

k. Failing to instruct the ultimate user, such as Plaintiffs, as to the methods of reducing the type of exposure to Products which led to an increased risk of lead poisoning; and

l. Marketing and labeling the Products as safe for all uses despite knowledge to the contrary and/or lack of testing to support their marketing and labeling claims.

7. The WanaBana Defendants were grossly negligent in that they acted reckless and in conscious

disregard or indifference to the life, safety, or rights of persons exposed to their Products.

8. The WanaBana Defendants also conducted intentional misconduct through their actions of adding lead-contaminated cinnamon to its Products. These actions are imputed to the WanaBana Defendants through their exclusive Ecuadorian-based suppliers.

9. The WanaBana Defendants' foregoing conduct was grossly negligent and in breach of their duty to Plaintiffs, and a substantial contributing factor of Plaintiff L.G.'s lead poisonings. As a result, L.G. suffered bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring loss of earnings, and loss of ability to earn money in the future. The losses are permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

10. As a further result, Plaintiff, MARILYN GOMEZ has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of her minor child and will continue to suffer such losses in the future.

**Wherefore**, Plaintiffs request a judgment against Defendants jointly and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate, and demands trial by jury of all issues raised herein.

## COUNT FOUR – DEFENDANT DOLLAR TREE – GROSS NEGLIGENCE

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. Defendant Dollar Tree is engaged in the business of selling low-cost food products. Their business model is designed to maximize its profits as a retailer, and the Products are one such example of Defendant Dollar Tree's low-quality food products sold for a large financial return.

32

3. In so doing, Defendant Dollar Tree selected and provided for sale to consumers the WanaBana Defendants' Products that contained lead. The Products which contained lead posed a clear and present danger to all foreseeable consumers, including children and Plaintiffs.

4. At all pertinent times, Defendant Dollar Tree had a duty of a reasonably prudent and careful seller of the Products to take precautions and appreciate risks of harm associated with the ordinary use of the Products, in light of the risks associated with the Products and lead ingestion.

5. At all pertinent times, Defendant Dollar Tree had a duty to exercise reasonable care to consumers, including to Plaintiffs, to properly promote, market, distribute, and sell the Products.

6. At all pertinent times, Defendant Dollar Tree owed a duty of due care to consumers, including Plaintiffs, as a foreseeable user of the Products, that it would be reasonably safe for all intended uses and free from defects.

7. At all pertinent times, Defendant Dollar Tree knew or should have known in the exercise of reasonable care that use of the Products which contained lead significantly increases the risk of lead poisoning and the detrimental effects therefrom, especially to children.

8. At all pertinent times, Defendant Dollar Tree knew or in the exercise of reasonable care should have known that the WanaBana Defendants were not providing warnings to the consumers of the Products concerning the risk of lead ingestion and poisoning associated with the Products. Thus, Defendant Dollar Tree had a duty to warn its customers, including Plaintiffs, of a known and foreseeable risk.

9. Defendant Dollar Tree breached its duty to Plaintiffs by failing to include information in relation to the increased risk of lead ingestion and lead poisoning caused by the Products. Defendant Dollar Tree was grossly negligent in that they acted reckless and in conscious disregard or indifference to the life, safety, or rights of persons exposed to the WanaBana products they provided for sale.

10. Defendant Dollar Tree's gross negligence was a substantial contributing factor of Plaintiff L.G.'s lead poisoning. As a result, L.G. suffered bodily injuries and resulting pain and suffering, disability,

33

disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring loss of earnings, and loss of ability to earn money in the future. The losses are permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

11. As a further result, Plaintiff, MARILYN GOMEZ  has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of her minor child and will continue to suffer such losses in the future.

**Wherefore**, Plaintiffs request a judgment against Defendants jointly and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

### COUNT FIVE – WANABANA DEFENDANTS–NEGLIGENCE

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2.At all pertinent times, the WanaBana Defendants had a duty to reasonably and properly design, manufacture, test, inspect, package, label, distribute, market, examine, maintain, supply, provide proper warnings and prepare for use the Products, as a reasonably prudent and careful manufacturer. The WanaBana Defendants owed this duty to Plaintiffs.

3. At all pertinent times, the WanaBana Defendants knew or in the exercise of reasonable care should have known that the Products were not properly designed, manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold, supplied, prepared and/or provided with the proper warnings, and was unreasonably likely to injure users and consumers, including Plaintiff L.G.. The WanaBana Defendants' conduct created a foreseeable risk of injury to Plaintiffs and all of its customers.

4. The WanaBana Defendants breached their duty by, among other things:

        a. Failing to comply with state and federal regulations concerning the study,

34

testing, design, development, manufacture, inspection, advertisement, marketing, promotion, distribution, and/or sale of the Products;

b. Failing to warn Plaintiffs of the hazards associated with the use of the Products, including the risk of ingesting lead and being lead poisoned after consuming the Products;

c. Failing to properly test the Products to determine the adequacy and effectiveness or safety measures, if any, prior to release for consumer use;

d. Failing to warn Plaintiffs that the Products contained lead;

e. Choosing a supplier that intentionally added lead to the product to increase the weight, and consequently, the value of the cinnamon;

f. Failing to properly test and/or conduct a quality control of the Products to determine the increased risk of children being lead poisoned from normal and/or intended use;

g. Failing to adequately test the Products to ensure the absence of lead contamination;

h. Failing to inform ultimate users, such as Plaintiffs as to the safe and proper consumption of the Products;

i. Failing to remove Products from the market or adding proper warnings when the WanaBana Defendants knew or in the exercise of reasonable care should have known the Products were defective;

j. Failing to instruct the ultimate user, such as Plaintiffs, as to the methods of reducing the type of exposure to Products which led to an increased risk of

lead poisoning; and

k. Marketing and labeling the Products as safe for all uses despite knowledge to the contrary and/or lack of testing to support their marketing and labeling claims.

5. The WanaBana Defendants' foregoing conduct was negligent and in breach of their duty to Plaintiffs, and a substantial contributing factor of Plaintiff L.G.'s lead poisonings. As a result, L.G. suffered bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring loss of earnings, and loss of ability to earn money in the future. The losses are permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

6. As a further result, Plaintiff, MARILYN GOMEZ has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of their minor child and will continue to suffer such losses in the future.

**Wherefore**, Plaintiffs request a judgment against Defendants jointly and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

## COUNT SIX– DEFENDANT DOLLAR TREE –NEGLIGENCE

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. Defendant Dollar Tree is engaged in the business of selling low-cost food products. Their business model is designed to maximize its profits as a retailer, and the Products are one such example of Defendant Dollar Tree's low-quality food products sold for a large financial return.

3. In so doing, Defendant Dollar Tree selected and provided for sale to consumers Defendant WanaBana's

products that contained lead.

4.At all pertinent times, Defendant Dollar Tree had a duty of a reasonably prudent and careful seller of the Products to take precautions and appreciate risks of harm associated with the ordinary use of the Products, in light of the risks associated with the Products and lead ingestion.

5.At all pertinent times, Defendant Dollar Tree had a duty to exercise reasonable care to consumers, including to Plaintiffs, to properly promote, market, distribute, and sell the Products.

6.At all pertinent times, Defendant Dollar Tree owed a duty of due care to consumers, including Plaintiffs, as a foreseeable user of the Products, that it would be reasonably safe for all intended uses and free from defects.

7.At all pertinent times, Defendant Dollar Tree knew or should have known in the exercise of reasonable care that use of the Products which contained lead significantly increases the risk of lead poisoning and the detrimental effects therefrom, especially to children.

8.At all pertinent times, Defendant Dollar Tree knew or in the exercise of reasonable care should have known that the WanaBana Defendants were not providing warnings to the consumers of the Products concerning the risk of lead ingestion and poisoning associated with the Products.Thus, Defendant Dollar Tree had a duty to warn its customers, including Plaintiffs, of a known and foreseeable risk.

9.Defendant Dollar Tree breached its duty to Plaintiffs by failing to include information in relation to the increased risk of lead ingestion and lead poisoning caused by the Products.

10.Defendant Dollar Tree's negligence was a substantial contributing factor of Plaintiff L.G.'s lead poisoning. As a result, L.G. suffered bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring loss of earnings, and loss of ability to earn money in the future. The losses are permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

11. As a further result, Plaintiff, MARILYN GOMEZ has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of her minor child and will continue to suffer such losses in the future.

**Wherefore**, Plaintiffs request a judgment against Defendants jointly and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

## COUNT SEVEN – DOLLAR TREE DEFENDANT – STRICT SELLER LIABILITY

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. Defendant Dollar Tree, at all times pertinent, engaged in the business of selling and distributing the Products to consumers nationwide, including in the States of New Jersey and New York and Middlesex County and Staten Island County.

3. Defendant Dollar Tree, upon information and belief, did and continues to derive substantial revenue in the State of New Jersey and the State of New York for the sale of WanaBana Defendants' fruit Purée pouches, including the Products at issue here.

4. At all pertinent times, the Products were defective at the time of sale to the ultimate consumer, like Plaintiffs, as the Products were unreasonably dangerous due to their inclusion of lead.

5. At all pertinent times, the Products were defective as the foreseeable risk of ingesting lead and lead poisoning as a result exceeds a reasonable consumer's expectations when used by children as food and is defective in design because the risk of lead exposure significantly outweighs any potential benefit.

6. The Products are defective as the packaging failed to include an adequate warning regarding the risk of lead exposure. Upon information and belief, Defendant Dollar Tree advertised and continues to sell the Products, displaying the fruit Purée pouches' packaging which purports to be "just fruit" with no

38

additives. Defendant Dollar Tree's website offers no warnings or details as to the potential harm associated with ingesting lead-containing fruit Purée pouches.

7. Defendant Dollar Tree knew or should have known that the presence of lead in the Products significantly increases the risk of lead ingestion and lead poisoning based upon extensive scientific knowledge dating back to the 1970s.

8.At all times pertinent, the Products were expected to and did reach the consumers, including Plaintiffs, without substantial change from the condition in which they were sold. The condition in which the Products reach Plaintiffs was one that Plaintiffs did not contemplate, in that they did not expect that the use of the Products would result in lead exposure and lead poisoning. Thus, the Products failed Plaintiffs' expectations as consumers.

9.Defendant Dollar Tree's acts and omissions, as alleged herein, were a substantial contributing factor of Plaintiff L.G.'s lead poisonings. As a result, L.G. suffered bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring loss of earnings, and loss of ability to earn money in the future. The losses are permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

10.As a further result, Plaintiff, MARILYN GOMEZ has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of her minor child and will continue to suffer such losses in the future.

**Wherefore,** Plaintiffs request a judgment against Defendants joint and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

## COUNT EIGHT – DOLLAR TREE DEFENDANT – BREACH OF EXPRESS WARRANTY

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. Defendant Dollar Tree expressly warranted, through direct-to-consumer marketing, social media, advertising, packaging and labeling, that the Products were safe and effective for all reasonably anticipated uses, including for ingestion by children. Plaintiff L.G. was a person whom the Dollar Tree Defendant would reasonably have expected to use, consume, and/or be affected by the Products and who did use and consume it.

3. Plaintiffs saw these advertisements and packaging, including at a retail location owned and operated by Defendant Dollar Tree, and believed the Products were safe and effective for L.G. to consume, leading them to rely on the Products' advertisements and packaging.

4. Plaintiffs are in privity with Defendant Dollar Tree because it directly sold the Products to Plaintiffs.

5. The Products are good as defined by U.C.C. § 2-105 and Defendant Dollar Tree knew or had reason to know of the specific use for which the Products, as good, are purchased.

6. The Products were defective because it did not conform to these express representations as well as New Jersey and New York common law, because the Products were unsafe for the reasonably foreseeable use and consumption of L.G. due to the increased risk of lead ingestion and lead poisoning when consumed.

7. As detailed above, Defendant Dollar Tree, through the written packaging, labeling, and advertising related to the Products expressly warranted that its Products were safe and fit for the purposes intended, that they were merchantable quality, that they were healthy and safe for human consumption, and that they did not pose dangerous health risks.

8. Plaintiff, MARILYN GOMEZ read and relied on these express warranties provided by Defendant Dollar Tree, including that the Products contained only cinnamon and apples, no added sugar, no gluten, no BPAs, and no preservatives. Plaintiff believed, based on the Defendant Dollar Tree's representations, that the Products were safe and health for her Minor Child L.G..

9. Defendant Dollar Tree breached its express warranties because the Products were not reasonably safe for their ordinary and intended purpose of providing Plaintiffs and consumers with safe and health food for their children. Instead, the Products contained lead, which is harmful to children and adults, not fit for human consumption, and not conforming to the Products' packaging.

10. Defendant Dollar Tree breached its express warranties by selling Products that contain lead.

11.The presence of lead rendered the Products unfit for their intended use and purpose and substantially impaired the use and value of the Products.

12.Defendant Dollar Tree was on notice of this breach, as it was aware or should have been aware of the inclusion of lead in the Products.

13.Defendant Dollar Tree's actions, as complained of herein, breached the warranties that the Products were of merchantable quality and fit for such use.

14.Defendant Dollar Tree's intended beneficiaries of these express warranties were ultimately consumers such as Plaintiffs, not third-party retailers, resellers, or distributors who sold the Products. Moreover, the Dollar Tree Defendant exercises substantial control over which retail locations can carry and sell the Products, which are the same outlets that Plaintiffs purchased the Products. In addition, the Dollar Tree Defendant's warranties are in no way designed to apply to third-party retailers, resellers, or distributors who purchase the Products in bulk and then sell them on an individual basis to consumers. Individual consumers are the ones who ultimately review the Product labels prior to making any purchasing decisions. Accordingly, these warranties are specifically designed to benefit the individual consumers who purchased the Products.

15. Defendant Dollar Tree's breach of express warranty was a substantial contributing factor of Plaintiff L.G.'s lead poisonings. As a result, L.G. suffered bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring loss of earnings, and loss of ability to earn money in the future. The losses are

permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

16. As a further result, Plaintiff, MARILYN GOMEZ has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of her minor child and will continue to suffer such losses in the future.

**Wherefore,** Plaintiffs request a judgment against Defendants joint and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

## COUNT NINE – WANABANA DEFENDANTS – BREACH OF EXPRESS WARRANTY

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. The WanaBana Defendants expressly warranted, through direct-to-consumer marketing, social media, advertising, packaging and labeling, that the Products were safe and effective for all reasonably anticipated uses, including for ingestion by children. Plaintiff L.G. was a person whom the WanaBana Defendants would reasonably have expected to use, consume, and/or be affected by the Products and who did use and consume it.

3. Plaintiffs saw these advertisements and packaging, including at a Dollar Tree retail location, and believed the Products were safe and effective for L.G. to consume, leading them to rely on the WanaBana Defendants advertisements and packaging.

4. Plaintiffs are in privity with the WanaBana Defendants because the WanaBana Defendants directly sold the Products to Plaintiffs via authorized retailers.

5. The Products are good as defined by U.C.C. § 2-105 and Defendants know or have reason to know of the specific use for which the Products, as good, are purchased.

6. The Products were defective because it did not conform to these express representations, as well as New Jersey and New York common law, because the Products were unsafe for the reasonably foreseeable use and consumption of L.G., due to the increased risk of lead ingestion and lead poisoning when consumed.

7. As detailed above, the WanaBana Defendants, through its written packaging, labeling, and advertising expressly warranted that its Products were safe and fit for the purposes intended, that they were merchantable quality, that they were healthy and safe for human consumption, and that they did not pose dangerous health risks.

8. Plaintiff, MARILYN GOMEZ read and relied on these express warranties provided by the WanaBana Defendants, including that the Products contained only cinnamon and apples, no added sugar, no gluten, no BPAs, and no preservatives. Plaintiff believed, based on the WanaBana Defendants' representations, that the Products were safe and health for her Minor Child L.G..

9. The WanaBana Defendants breached their express warranties because the Products were not reasonably safe for their ordinary and intended purpose of providing Plaintiffs and consumers with safe and health food for their children. Instead, the Products contained lead, which is harmful to children and adults, not fit for human consumption, and not conforming to the Products' packaging.

10. The WanaBana Defendants breached their express warranties by selling Products that contain lead.

11. The presence of lead rendered the Products unfit for their intended use and purpose and substantially impaired the use and value of the Products.

43

12. The WanaBana Defendants were on notice of this breach, as they were aware or should have been aware of the inclusion of lead in the Products.

13. The WanaBana Defendants' actions, as complained of herein, breached the warranties that the Products were of merchantable quality and fit for such use.

14. The WanaBana Defendants' intended beneficiaries of these express warranties were ultimately consumers such as Plaintiffs, not third-party retailers, resellers, or distributors who sold the Products. Moreover, the WanaBana Defendants exercise substantial control over which outlets can carry and sell their Products, which are the same outlets that Plaintiffs purchased the Products. In addition, the WanaBana Defendants' warranties are in no way designed to apply to third-party retailers, resellers, or distributors who purchase the Products in bulk and then sell them on an individual basis to consumers. Individual consumers are the ones who ultimately review the Product labels prior to making any purchasing decisions. Accordingly, these warranties are specifically designed to benefit the individual consumers who purchased the Products.

15. The WanaBana Defendants' breach of express warranty was a substantial contributing factor of Plaintiff L.G.'s lead poisonings. As a result, L.G. suffered bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring loss of earnings, and loss of ability to earn money in the future. The losses are permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

16. As a further result, Plaintiff, MARILYN GOMEZ has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of her minor child and will continue to suffer such losses in the future.

**Wherefore,** Plaintiffs request a judgment against Defendants joint and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

**COUNT TEN – ALL DEFENDANTS – NEGLIGENT MISREPRESENTATION**

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. Defendants, as manufacturers and sellers of the Products at issue here, owed a duty to the consuming public in general, and to the Plaintiffs in particular, to exercise reasonable care to design, test, manufacture, inspect, label, advertise, market, and distribute a product free of unreasonable risk of harm to users, when such products are used in their intended manner and for their intended purpose.

3. Defendants' Products contained lead.

4. Exposure to lead has been linked with an increased risk of health problems, particularly for children.

5. Given the established and documented dangerous nature of lead, the presence of lead in Defendants' Products is a material fact about the safety of the Products.

6. Given the established and documented dangerous nature of lead, the presence of lead in Defendants' Products renders them unsafe, unhealthy, and unfit for human consumption.

7. As set forth fully above, Defendants made numerous misrepresentations and omissions about the health, safety, and nutrition of their Products on its advertising and labeling.

8. Defendants touted the health, safety, and nutrition of their products, including the limited ingredients and lack of preservatives or BPAs in their Products, with the intention of inducing confidence and driving consumers, including Plaintiffs, to purchase the Products.

9. Defendants knew that consumers, including Plaintiffs, would rely on these misrepresentations in making the decision to purchase their Products.

10. Such representations were materially false given the presence of lead in Defendants' Products.

45

11. Defendants knew that reliance on these representations could result in loss or injury.

12. Defendants omitted and/or concealed from its labeling, marketing, and advertising the material fact that lead was present in their Products.

13. Because of the false and misleading claims by Defendants, Plaintiff, MARILYN GOMEZ was unaware that Defendants' Products contained toxic lead. Plaintiff, MARILYN GOMEZ fed Defendants' Products to her Minor Child L.G. on the belief that Defendants' labeling and sale of Products was accurate and that the Products were unadulterated and safe for consumption.

14. Plaintiff relied on Defendants' misrepresentations and omissions on the Products' packaging, which was prepared, reviewed, and/or approved by Defendants and disseminated by Defendants throughout the United States.

15. Plaintiff did in fact justifiably rely on Defendants' representations in deciding to buy the products and feed the products to Minor Child L.G..

16. Plaintiff believed that she was allowing L.G. to consume a high-quality, additive-free, safe, and nutritious pureed fruit product from Defendants.

17. Plaintiff relied on the nutritional and safety claims on the packaging of the Products prior to allowing L.G. to consume the Products.

18. Plaintiff would not have fed L.G. the Defendants' Products had she known that there was a risk that the Products may contain lead.

19. As a result, Plaintiff Minor Child L.G. suffered bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring loss of earnings, and loss of ability to earn money in the future. The losses are permanent or

46

continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

20. As a further result, Plaintiff, MARILYN GOMEZ  has incurred the expenses of testing, treatment, and medical and nursing care of her Minor Child and will continue to suffer such losses in the future.

**Wherefore,** Plaintiffs request a judgment against Defendants joint and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

## COUNT ELEVEN – WANABANA DEFENDANTS – FRAUDULENT  MISREPRESENTATION

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. In the course of business, the WanaBana Defendants designed, manufactured and sold the Products, knowing it was reasonable and foreseeable that children and consumers would consume the Products.

3. At all relevant times, the WanaBana Defendants intentionally, willfully, and/or recklessly, with the intent to deceive, misrepresented and/or concealed material facts to consumers, including Plaintiffs.

4. At all relevant times, the WanaBana Defendants misrepresent and/or concealed material facts concerning the Products to consumers, including Plaintiffs, with knowledge of the falsity of their misrepresentations.

5. The WanaBana Defendants were aware of the dangerous and defective condition of the Products and intentionally withheld this information from Plaintiffs, the healthcare field, and the general public even though these significant dangers were not readily obvious to ordinary users.

6. At all pertinent times and upon information and belief, the misrepresentations and concealments made by the WanaBana Defendants concerning the Products include, but are not limited to the following:

      i.  Falsely labeling and advertising the Products: "I am fruit."

   ii.   Knowingly misrepresenting to Plaintiffs and the public, through the advertisements described above, that the Products is safe for consumption;

   iii.   Intentionally failing to disclose that the Products contain lead on its packaging;

   iv.   Intentionally failing to issue statements on its United States social media pages which inform consumers of the recall of its products.

   v.   Intentionally failing to include adequate warnings with the Products regarding the potential and actual risks of consuming the Products which contain lead;

   vi.   Despite the WanaBana Defendants' knowledge regarding the harmful effects of lead poisoning, particularly in children, the WanaBana Defendants falsely marketed, advertised, labeled and sold the Products as safe for public consumption and usage, including for ingestion by children.

7. Plaintiffs justifiably relied upon the aforementioned misrepresentations and concealments by the WanaBana Defendants and the Minor Child L.G. consumed the Products as described herein for several months.

8. The WanaBana Defendants' fraudulent misrepresentations directly and in natural and continuous sequence produced and contributed substantially to Plaintiffs' reliance on the WanaBana Defendants' fraudulent misrepresentations and concealments, Plaintiff L.G. was seriously and permanently injured.

9. The WanaBana Defendants' fraudulent misrepresentations directly and proximately produced and contributed substantially to Plaintiffs' reliance, from which Minor Child L.G. sustained damages including injuries and illnesses and was deprived of the opportunity of informed free choice in connection with the purchase, use of and exposure to the Products.

10. As a direct and proximate result of Plaintiff's L.G.'s ingestion of the Products, L.G. suffered bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring, loss of earnings, and loss of ability to earn money in the future. The losses are permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

11. As a further result, Plaintiff, MARILYN GOMEZ has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of her minor child and will continue to suffer such losses in the future.

12. The conduct of the WanaBana Defendants in continuing to market, promote, sell and distribute the Products while fraudulently concealing knowledge that the Products were failing and performing as represented and intended, shows a complete indifference to, or conscious disregard for the safety of consumers, including Plaintiffs.

**Wherefore,** Plaintiffs request a judgment against Defendants joint and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

## COUNT TWELVE –ALL DEFENDANTS – VIOLATION OF DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. At all pertinent times, Defendants engaged in deceptive trade practices, in violation of New Jersey and New York's Deceptive and Unfair Trade Practice Act.

3. New Jersey and New York have enacted statutes to protect consumers from deceptive, fraudulent, and unconscionable trade and business practices. Defendants violated these statutes by knowingly and falsely representing that the subject Products were fit to be used for the purpose for which it was intended, when Defendants knew it was defective and dangerous, in the manufacturing, distributing, marketing, promoting, and sale of the Products in the following ways:

49

i. Representing that the Products contained "only fruit;" and were nutritional foods for children to ingest when the purported benefits of such usage were disproportionately outweighed by the significant increase in the likelihood of lead poisoning when consumed.

ii. Representing that the Products are of a particular standard or quality, purportedly safe for consumers and children to ingest, when Defendants knew or in the exercise of reasonable care should have known that such use would lead to significant increased likelihood of lead poisoning;

iii. Continuing to advertise the Products as safe, when Defendants have known that lead exposure and poisoning, particularly in children, can pose significant health and developmental issues.

iv. Consistently engaging in advertising campaigns in print and on the web promoting the purported health and nutritional benefits of the Products when consumed, promoting confusion as Product testing and health agencies say otherwise.

v. Otherwise engaging in practices that are unfair and/or deceptive to consumers, including Plaintiffs.

4. As a direct and proximate result of Defendants' deceptive trade practices in the marketing, promoting, selling, distributing, advertising, and offering for sale the Products to consumers, Plaintiff was harmed. Had Plaintiff received a warning that the use of the Products would expose her Minor Child L.G. to lead, Plaintiff would not have purchased or used the Products. Plaintiff L.G.'s use of the Products proximately caused her lead poisoning.

5. As a direct and proximate result of Defendants' design, manufacture, marketing, sale and distribution of the Products, Plaintiff Minor Child L.G. suffered bodily injuries

and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring, loss of earnings, and loss of ability to earn money in the future. The losses are permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

6. As a further result, Plaintiff, MARILYN GOMEZ has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of her minor child and will continue to suffer such losses in the future.

**Wherefore,** Plaintiffs request a judgment against Defendants joint and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

## COUNT THIRTEEN –ALL DEFENDANTS – UNJUST ENRICHMENT

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. Plaintiff, MARILYN GOMEZ and other consumers conferred a monetary benefit on Defendants, and Defendants had knowledge of this benefit.

3. By its wrongful acts and omissions described herein, including selling the Products containing lead, Defendants were unjustly enriched at the expense of Plaintiffs and consumers.

4. Plaintiffs' detriment and Defendants' enrichment were related to and flowed from the wrongful conduct alleged herein.

5. Defendants have profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiffs under circumstances in which it would be inequitable for Defendants to

retain the profits, benefits, and other compensation obtained from its wrongful conduct as described herein in connection with selling the Products.

6. Plaintiffs have been damaged as a direct and proximate result of Defendants' unjust enrichment because they would not have purchased the Products had they known that the Products contained lead.

7. Defendants either knew or should have known that payments rendered by Plaintiffs and other consumers were given and received with the expectation that the Products were free of lead. It is inequitable for Defendants to retain the benefit of payments under these circumstances.

8. Plaintiffs are in privity with Defendants because Defendants either directly sold the Products to Plaintiffs via authorized retailers or directly sold to Plaintiffs as an authorized retailer.

9. As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiffs are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants for their inequitable and unlawful conduct.

10. As a result, Plaintiff Minor Child L.G. suffered bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring, loss of earnings, and loss of ability to earn money in the future. The losses are permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

11. As a further result, Plaintiff, MARILYN GOMEZ has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of her minor child and will continue to suffer such losses in the future.

**Wherefore,** Plaintiffs request a judgment against Defendants joint and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs demand judgment against the Defendants on each of the above-referenced claims and Causes of Action and as follows:

    a.  In favor of Plaintiff and against all Defendants, for damages in such amounts as may be proven at trial;

    b.  Compensation for compensatory damages in excess of the jurisdictional amount, including, but not limited to mental pain and suffering, emotional distress, and all other- noneconomic damages in an amount to be determined at trial of this action.

    c.  Awarding economic damages in the form of medical expenses, future medical expenses, chelation treatment, nutritional consulting, out of pocket expenses, lost earnings, and other economic damages in an amount to be determined at a trial of this action;

    d.  Awarding restitution and disgorgement of revenues as appropriate;

    e.  Attorney's fees and costs;

    f.  Pre-judgment interest;

    g.  Post-judgment interest;

    h.  Statutory damages as available'

    i.  Awarding Plaintiffs the cost of these proceedings; and

    j.  Such other and further relief as this Court deems just and proper.

    k.  Punitive damages

ANGLIN REA CAHALANE & PIEPER, P.A.
Attorney for Plaintiff(s)
By: Patrick H. Cahalane, Esq.

## JURY DEMAND

Pursuant to Rule 1:8-2(b), plaintiffs hereby demand that the issues herein be tried by a jury of six (6) persons.

ANGLIN REA CAHALANE & PIEPER, P.A.
Attorney for Plaintiff(s)
By: Patrick H. Cahalane, Esq.

## CERTIFICATION

I certify that to my knowledge the within action is the only action pending concerning the subject occurrence or transaction.

ANGLIN REA CAHALANE & PIEPER, P.A.
Attorney for Plaintiff(s)
By: Patrick H. Cahalane, Esq.

## DESIGNATION OF TRIAL COUNSEL

In accordance with R.4:25-4, Patrick H. Cahalane, Esq., is hereby designated as trial counsel for plaintiff.

ANGLIN REA CAHALANE & PIEPER, P.A.
Attorney for Plaintiff(s)
By: Patrick H. Cahalane, Esq.

1

# Exhibit 3

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JESSICA SMITH and JOSEPH SMITH, on behalf of JAEL SMITH, a minor, | Case No. |
| Plaintiffs, | **DECLARATION OF JONATHAN ELDER** |
| vs. | |
| WANABANA, LLC, WANABANA USA, LLC, DOLLAR TREE, INC., DOLLAR TREE STORES, INC., DOLLAR TREE DISTRIBUTION, INC. and DOLLAR TREE SOURCING COMPANY LLC, | |
| Defendants. | |

-1-

## DECLARATION OF JONATHAN ELDER

I, JONATHAN ELDER, declare as follows:

1. I am the Vice President of Tax for Dollar Tree Management, LLC, which is a subsidiary of Dollar Tree Stores, Inc. and provides management services to its parent, subsidiaries, and affiliates. I submit this declaration in support of Defendants' notice of removal in the above-referenced action.

2. In my capacity as Vice President of Tax, I am familiar with the organization and structure of Dollar Tree, Inc., Dollar Tree Stores, Inc., Dollar Tree Distribution, Inc., Dollar Tree Sourcing Company, LLC and their parents, subsidiaries, and affiliates. I have personal knowledge of the facts stated herein, and if called to testify as witness thereto, I could competently do so.

3. Dollar Tree, Inc. is a domestic corporation duly incorporated under the laws of the Commonwealth of Virginia, and is domiciled and has its principal place of business at 500 Volvo Parkway, Chesapeake, Virginia 23320. A true and accurate copy of Dollar Tree, Inc.'s 2023 Annual Report, filed with the Virginia State Corporation Commission, is attached as Exhibit A.

4. Dollar Tree Stores, Inc. is a domestic corporation duly incorporated under the laws of the Commonwealth of Virginia and is domiciled and has its principal place of business at 500 Volvo Parkway, Chesapeake, Virginia 23320. A true and accurate copy of Dollar Tree Stores, Inc.'s 2023 Annual Report, filed with the Virginia State Corporation Commission, is attached as Exhibit B.

5. Dollar Tree Distribution, Inc. is a domestic corporation duly incorporated under the laws of the Commonwealth of Virginia and is domiciled and has its principal place of business at 500 Volvo Parkway, Chesapeake, Virginia 23320. A true and accurate copy of Dollar Tree Distribution, Inc.'s 2023 Annual Report, filed with the Virginia State Corporation Commission, is attached as Exhibit C.

6. Dollar Tree Sourcing Company, LLC is a limited liability company organized under the laws of the Commonwealth of Virginia and is domiciled and has its principal place of business at 500 Volvo Parkway, Chesapeake, Virginia 23320. Dollar Tree Sourcing Company, LLC's sole member is Dollar Tree Stores, Inc., whose citizenship is set forth in Paragraph 4. True and

1  accurate copies of relevant portions of Dollar Tree Sourcing Company, LLC's Articles of

2  Incorporation and Operating Agreement are attached as Exhibit D.

3      I declare under penalty of perjury of the laws of the United States that the foregoing is true

4  and correct.

5      Executed on March 14, 2024.

6

7      ERICA PATRICIA LANTTO
       NOTARY PUBLIC                              Jonathan Elder
8      REGISTRATION # 7944393
       COMMONWEALTH OF VIRGINIA
9      Exp. 9/30/2025

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

Commonwealth of Virginia
State Corporation Commission
Office of the Clerk
Entity ID: 06905996
Filing Number: 2303305682796
Filing Date/Time: 03/30/2023 03:45 PM
Effective Date/Time: 03/30/2023 03:45 PM

## Stock Corporation - Annual Report

### Entity Information

| | | | |
|---|---|---|---|
| Entity Name: | DOLLAR TREE, INC. | Entity Type: | Stock Corporation |
| Entity ID: | 06905996 | Formation Date: | 02/22/2008 |
| Jurisdiction: | VA | | |
| Status: | Active | | |
| Total Shares: | 610000000 | | |

### Registered Agent Information

| | | | |
|---|---|---|---|
| RA Type: | Entity | RA Qualification: | BUSINESS ENTITY THAT IS AUTHORIZED TO TRANSACT BUSINESS IN VIRGINIA |
| Name: | CORPORATION SERVICE COMPANY | Registered Office Address: | 100 Shockoe Slip Fl 2, Richmond, VA, 23219 - 4100, USA |
| Locality: | RICHMOND CITY | | |

### Principal Office Address

Address:   500 VOLVO PKWY, CHESAPEAKE, VA, 23320 - 0000, USA

### Principal Information

☐ **No Officers:** If the corporation does not have officers because an organizational meeting has not been held.

☐ **No Directors:** If the corporation does not have directors because (i) initial directors were not named in the articles of incorporation and an organizational meeting of the corporation has not been held or (ii) the board of directors has been eliminated by a written agreement signed by all of the shareholders, or by the adoption of provision in the articles of incorporation or bylaws that was approved by all of the shareholders.

| Title | Director | Name | Address |
|---|---|---|---|
| Chief Executive Officer | Yes | RICK DREILING | 500 VOLVO PKWY, CHESAPEAKE, VA, 23320 - 0000, USA |
| Chief Information Officer | No | BOBBY AFLATOONI | 500 VOLVO PKWY, CHESAPEAKE, VA, 23320 - 0000, USA |
| Chief Operating Officer | No | MICHAEL CREEDON, JR. | 500 VOLVO PKWY, CHESAPEAKE, VA, 23320 - 0000, USA |
| Chief Financial Officer, Manager | No | JEFFREY A. DAVIS | 500 VOLVO PKWY, CHESAPEAKE, VA, 23320 - 0000, USA |
| Chief Human Resources Officer | No | JENNIFER HULETT | 500 VOLVO PKWY, CHESAPEAKE, VA, 23320 - 0000, USA |
| Chief Merchandising Officer - Dollar Tree | No | RICHARD MCNEELY | 500 VOLVO PKWY, CHESAPEAKE, VA, 23320 - 0000, USA |
| Interim Chief Legal Officer, General Counsel and Corporate Secretary | No | JOHN S. MITCHELL, JR. | 500 VOLVO PKWY, CHESAPEAKE, VA, 23320 - 0000, USA |
| Chief Supply Chain Officer | No | JOHN FLANIGAN | 500 VOLVO PKWY, CHESAPEAKE, VA, 23320 - 0000, USA |

| Title | Director | Name | Address |
|---|---|---|---|
| Chief Legal Officer, General Counsel, Corporate Secretary | No | JANET DHILLON | 500 VOLVO PKWY, CHESAPEAKE, VA, 23320 - 0000, USA |
| Senior Vice President, Chief Sustainability Officer | No | JENNIFER SILBERMAN | 500 VOLVO PKWY, CHESAPEAKE, VA, 23320 - 0000, USA |
| Senior Vice President, Chief Communications Officer | No | KRISTIN TETREAULT | 500 VOLVO PKWY, CHESAPEAKE, VA, 23320 - 0000, USA |
| Assistant Secretary | No | DEREK REDMOND | 500 VOLVO PKWY, CHESAPEAKE, VA, 23320 - 0000, USA |
| Senior Vice President, Chief Development Officer | No | PEDRO VOYER | 500 VOLVO PKWY, CHESAPEAKE, VA, 23320 - 0000, USA |

## Signature Information

Date Signed: 03/30/2023

| Printed Name | Signature | Title |
|---|---|---|
| DEREK REDMOND | DEREK REDMOND | Assistant Secretary |

# EXHIBIT B

Commonwealth of Virginia
State Corporation Commission
Office of the Clerk
Entity ID: 02938496
Filing Number: 2309296350667
Filing Date/Time: 09/29/2023 10:08 AM
Effective Date/Time: 09/29/2023 10:08 AM

## Stock Corporation - Annual Report

### Entity Information

| | | | |
|---|---|---|---|
| Entity Name: | DOLLAR TREE STORES, INC. | Entity Type: | Stock Corporation |
| Entity ID: | 02938496 | Formation Date: | 10/15/1986 |
| Jurisdiction: | Virginia | | |
| Status: | Active | | |
| Total Shares: | 5000 | | |

### Registered Agent Information

| | | | |
|---|---|---|---|
| RA Type: | Entity | RA Qualification: | BUSINESS ENTITY THAT IS AUTHORIZED TO TRANSACT BUSINESS IN VIRGINIA |
| Name: | CORPORATION SERVICE COMPANY | Registered Office Address: | 100 Shockoe Slip Fl 2, Richmond, VA, 23219 - 4100, USA |
| Locality: | RICHMOND CITY | | |

### Principal Office Address

Address:    500 VOLVO PKWY, CHESAPEAKE, VA, 23320 - 0000, USA

### Principal Information

☐ **No Officers:** If the corporation does not have officers because an organizational meeting has not been held.

☐ **No Directors:** If the corporation does not have directors because (i) initial directors were not named in the articles of incorporation and an organizational meeting of the corporation has not been held or (ii) the board of directors has been eliminated by a written agreement signed by all of the shareholders, or by the adoption of provision in the articles of incorporation or bylaws that was approved by all of the shareholders.

| Title | Director | Name | Address |
|---|---|---|---|
| President, Chief Executive Officer | No | RICHARD W. DREILING | 500 VOLVO PKWY, CHESAPEAKE, VA, 23320 - 0000, USA |
| Chief Information Officer | No | ROBERT A. AFLATOONI | 500 VOLVO PKWY, CHESAPEAKE, VA, 23320 - 0000, USA |
| Chief Operating Officer | No | MICHAEL C. CREEDON JR. | 500 VOLVO PKWY, CHESAPEAKE, VA, 23320 - 0000, USA |
| Chief Financial Officer | Yes | JEFFREY A. DAVIS | 500 VOLVO PKWY, CHESAPEAKE, VA, 23320 - 0000, USA |
| Chief Human Resources Officer | No | JENNIFER M. HULETT | 500 VOLVO PKWY, CHESAPEAKE, VA, 23320 - 0000, USA |
| Chief Merchandising Officer | No | RICHARD L. MCNEELY | 500 VOLVO PKWY, CHESAPEAKE, VA, 23320 - 0000, USA |
| Senior Vice President, Senior Deputy General Counsel, Corporate Secretary | Yes | JOHN S. MITCHELL JR. | 500 VOLVO PKWY, CHESAPEAKE, VA, 23320 - 0000, USA |
| Senior Vice President, Chief Development Officer | No | PEDRO VOYER | 500 VOLVO PKWY, CHESAPEAKE, VA, 23320 - |

| Title | Director | Name | Address |
|---|---|---|---|
| | | | 0000, USA |
| Senior Vice President | No | CHRISTOPHER H. WILLIAMS | 500 VOLVO PKWY, CHESAPEAKE, VA, 23320 - 0000, USA |
| Vice President of Tax | No | JONATHAN L. ELDER | 500 VOLVO PKWY, CHESAPEAKE, VA, 23320 - 0000, USA |
| Vice President, Corporate Counsel | No | DEBORAH E. MILLER | 500 VOLVO PKWY, CHESAPEAKE, VA, 23320 - 0000, USA |
| Vice President of Corporate Governance, Assistant Corporate Secretary | No | DEREK R. REDMOND | 500 VOLVO PKWY, CHESAPEAKE, VA, 23320 - 0000, USA |
| Assistant Secretary | No | HARRY R. SPENCER | 500 VOLVO PKWY, CHESAPEAKE, VA, 23320 - 0000, USA |
| Senior Vice President | No | TODD B. LITTLER | 500 VOLVO PKWY, CHESAPEAKE, VA, 23320 - 0000, USA |

| Signature Information | | |
|---|---|---|
| Date Signed: 09/29/2023 | | |

| Printed Name | Signature | Title |
|---|---|---|
| DEREK R. REDMOND | DEREK R. REDMOND | Assistant Corporate Secretary |

# EXHIBIT C

Commonwealth of Virginia
State Corporation Commission
Office of the Clerk
Entity ID: 04376604
Filing Number: 2312066583627
Filing Date/Time: 12/06/2023 11:54 AM
Effective Date/Time: 12/06/2023 11:54 AM

## Stock Corporation - Annual Report

### Entity Information

| | | | |
|---|---|---|---|
| Entity Name: | DOLLAR TREE DISTRIBUTION, INC. | Entity Type: | Stock Corporation |
| Entity ID: | 04376604 | Formation Date: | 12/06/1994 |
| Jurisdiction: | VA | | |
| Status: | Active | | |
| Total Shares: | 5000 | | |

### Registered Agent Information

| | | | |
|---|---|---|---|
| RA Type: | Entity | RA Qualification: | BUSINESS ENTITY THAT IS AUTHORIZED TO TRANSACT BUSINESS IN VIRGINIA |
| Name: | CORPORATION SERVICE COMPANY | Registered Office Address: | 100 Shockoe Slip Fl 2, Richmond, VA, 23219 - 4100, USA |
| Locality: | RICHMOND CITY | | |

### Principal Office Address

Address:   500 VOLVO PKWY, CHESAPEAKE, VA, 23320, USA

### Principal Information

☐ **No Officers:** If the corporation does not have officers because an organizational meeting has not been held.

☐ **No Directors:** If the corporation does not have directors because (i) initial directors were not named in the articles of incorporation and an organizational meeting of the corporation has not been held or (ii) the board of directors has been eliminated by a written agreement signed by all of the shareholders, or by the adoption of provision in the articles of incorporation or bylaws that was approved by all of the shareholders.

| Title | Director | Name | Address |
|---|---|---|---|
| President | No | MICHAEL J. KINDY | 500 VOLVO PKWY, CHESAPEAKE, VA, 23320, USA |
| Vice President, Chief Information Officer | No | ROBERT A. AFLATOONI | 500 VOLVO PKWY, CHESAPEAKE, VA, 23320, USA |
| Chief Operating Officer | No | MICHAEL C. CREEDON, JR. | 500 VOLVO PKWY, CHESAPEAKE, VA, 23320, USA |
| Chief Financial Officer | Yes | JEFFREY A. DAVIS | 500 VOLVO PKWY, CHESAPEAKE, VA, 23320, USA |
| Chief Human Resources Officer | No | JENNIFER M. HULETT | 500 VOLVO PKWY, CHESAPEAKE, VA, 23320, USA |
| Senior Vice President, General Counsel, Corporate Secretary | Yes | JOHN S. MITCHELL, JR. | 500 VOLVO PKWY, CHESAPEAKE, VA, 23320, USA |
| Senior Vice President, Chief Development Officer | No | PEDRO VOYER | 500 VOLVO PKWY, CHESAPEAKE, VA, 23320, USA |
| Senior Vice President | No | TODD B. LITTLER | 500 VOLVO PKWY, CHESAPEAKE, VA, 23320, |

| Title | Director | Name | Address |
|---|---|---|---|
| | | | USA |
| Senior Vice President | No | CHRISTOPHER H. WILLIAMS | 500 VOLVO PKWY, CHESAPEAKE, VA, 23320, USA |
| Vice President of Tax | No | JONATHAN L. ELDER | 500 VOLVO PKWY, CHESAPEAKE, VA, 23320, USA |
| Vice President, Corporate Counsel | No | DEBORAH E. MILLER | 500 VOLVO PKWY, CHESAPEAKE, VA, 23320, USA |
| Vice President of Corporate Governance, Assistant Secretary | No | DEREK R. REDMOND | 500 VOLVO PKWY, CHESAPEAKE, VA, 23320, USA |

### Signature Information

Date Signed: 12/06/2023

| Printed Name | Signature | Title |
|---|---|---|
| DEREK R. REDMOND | DEREK R. REDMOND | Assistant Secretary |

# EXHIBIT D

**COMMONWEALTH OF VIRGINIA**
**STATE CORPORATION COMMISSION**

AT RICHMOND, MAY 26, 2010

The State Corporation Commission has found the accompanying articles submitted on behalf of

## Dollar Tree Sourcing Company, LLC

to comply with the requirements of law, and confirms payment of all required fees. Therefore, it is ORDERED that this

## CERTIFICATE OF ORGANIZATION

be issued and admitted to record with the articles of organization in the Office of the Clerk of the Commission, effective May 26, 2010.

STATE CORPORATION COMMISSION

By

James C. Dimitri
Commissioner

DLLCACPT
CIS0354
10-05-25-0653

# ARTICLES OF ORGANIZATION
## OF
## DOLLAR TREE SOURCING COMPANY, LLC

Pursuant to Chapter 12 of Title 13.1 of the Code of Virginia, the undersigned states as follows:

## ARTICLE I
## NAME

The name of the limited liability company is **Dollar Tree Sourcing Company, LLC**.

## ARTICLE II
## REGISTERED OFFICE AND REGISTERED AGENT

The post-office address of the initial registered office in Virginia is 999 Waterside Drive, Suite 1700, Norfolk, Virginia 23510, located in the City of Norfolk, Virginia. The registered agent's name is William A. Old, Jr., whose business address is identical with the registered office. The registered agent is an individual who is a resident of Virginia and a member of the Virginia State Bar.

## ARTICLE III
## PRINCIPAL OFFICE

The post office address of the principal office where the records will be maintained pursuant to Virginia Code Section 13.1-1028 is 500 Volvo Parkway, Chesapeake, Virginia 23320, located in the City of Chesapeake, Virginia.

## ARTICLE IV
## MANAGEMENT

The limited liability company shall be managed by one or more managers.

IN WITNESS WHEREOF, the undersigned organizer has set forth his signature to these Articles of Organization on this 25th day of May, 2010.

ORGANIZER:

_Lamont D. Maddox_

Lamont D. Maddox

7544421_4 DOC



**OPERATING AGREEMENT**

**OF**

**DOLLAR TREE SOURCING COMPANY, LLC**

**May 26, 2010**

# OPERATING AGREEMENT
## OF
## DOLLAR TREE SOURCING COMPANY, LLC

THIS OPERATING AGREEMENT is made and entered into as of May 26, 2010 by Dollar Tree Stores, Inc., a Virginia corporation and the sole member of Dollar Tree Sourcing Company, LLC, a Virginia limited liability company, to set forth the terms and conditions on which the management, business and affairs of the Company shall be conducted.

## SECTION 1
## ORGANIZATIONAL MATTERS

**1.01    Formation.** The Company was formed as a Virginia limited liability company under the Act on May 26, 2010. The rights and obligations of the Member shall be as provided in the Act, except as otherwise expressly provided herein. In the event of any inconsistency between any terms and conditions contained in this Operating Agreement and any non-mandatory provisions of the Act, the terms and conditions contained in this Operating Agreement shall govern and in the event of any inconsistency between any items and conditions contained in this Operating Agreement and any mandatory provisions of the Act, the terms and conditions of the Act shall govern.

**1.02    Name.**  The name of the Company shall be "Dollar Tree Sourcing Company, LLC."

**1.03    Principal Office.**  The principal office of the Company is 500 Volvo Parkway, Chesapeake, Virginia 23320, or such other place as the Managers may from time to time designate.  The Company may have other offices at any place or places as may be determined by the Managers.

**1.04    Purpose.**  The Company may engage in any and all lawful activities as may be necessary, incidental or convenient to carrying out the business of the Company as contemplated by this Operating Agreement or deemed appropriate by the Managers or the Member.

**1.05    Certificate of Formation; Filings.**  The Company executed and filed Articles of Organization with the Virginia State Corporation Commission as required by the Act.  Any Manager may execute and file any amendments to the Articles of Organization authorized by the Member from time to time in a form prescribed by the Act.  Any Manager also shall cause to be made, on behalf of the Company, such additional filings and recordings as he shall deem necessary or advisable.

**1.06    Fictitious Business Name Statements; Qualification in Other States.** Following the execution of this Operating Agreement, fictitious business name statements and qualifications in various states may be filed and published as deemed necessary by the Managers.

The undersigned, being the sole Member of the Company, hereby agrees, acknowledges and certifies that the foregoing Operating Agreement constitutes the sole and entire Operating Agreement of Dollar Tree Sourcing Company, LLC, adopted as of the date first written above.

MEMBER:

Dollar Tree Stores, Inc.

By: _____
Gary Philbin, President

# Exhibit 4

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JESSICA SMITH AND JOSEPH SMITH, *on behalf of* JAEL SMITH, *a minor* <br><br> Plaintiffs, <br><br> v. <br><br> WANABANA LLC, WANABANA USA LLC, DOLLAR TREE, INC., DOLLAR TREE STORES, INC., and DOLLAR TREE SOURCING COMPANY LLC, <br><br> Defendants. | |

## DECLARATION OF FRANCISCO PEÑA CORDOVEZ

I, Francisco Peña Cordovez, declare as follows:

1. I am the President of Wanabana USA, LLC ("Wanabana USA"). I make this declaration in support of the Notice of Removal in the captioned action filed by Wanabana LLC ("Wanabana") and Wanabana USA. I have reviewed Wanabana and Wanabana USA's business records, kept in the ordinary course of business, and also have personal knowledge of the facts contained in this declaration. If called upon as a witness, I could and would competently testify thereto.

2. Wanabana LLC is a limited liability company organized under the laws of Florida. Wanabana LLC holds certain membership interests in Wanabana USA and neither manufactures nor distributes products.

3. Wanabana USA is a limited liability company organized under the laws of Delaware. Wanabana USA is an importer and distributor. Wanabana USA receives Wanabana-

135388624.1

branded products from Ecuador, including the fruit puree products at issue in the Complaint (the "Products"), via a facility in Miami, Florida.

4. Limited liability companies are owned by "members."

5. Wanabana is owned by two members: myself (Francisco Peña Cordovez) and Santiago Peña Cordovez. Both Santiago Peña Cordovez and I are citizens of the Republic of Ecuador.

6. Wanabana USA is owned by two members: Wanabana and Grupo Navis LLC ("Grupo Navis"). Grupo Navis is a limited liability company organized under the laws of Puerto Rico. Grupo Navis is owned by two members: Angel Santiago Colon, who is a United States citizen and a citizen and resident of Puerto Rico, and Vástago L.L.C.: CPE-SERIES, a series of Vástago LLC (which is the sole member of Vástago L.L.C.: CPE-SERIES). Vástago LLC, in turn, has a single member: the Rodriguez Mowzoun Family Trust, of which Gualberto Rodriguez Feliciano and Neda Mowzoun are the sole beneficiaries, and Carlos Díaz Vivó is the sole trustee. The trustee and beneficiaries are all citizens and residents of Puerto Rico, and the trust and Vástago LLC and its series are all organized under the laws of Puerto Rico.[1]

7. I understand that electronic articles of organization for another entity named Wanabana USA LLC were filed in Florida on October 25, 2023 (this LLC is referred to herein as "Florida-Organized Wanabana"). This filing was inadvertent. The filing papers indicate there is one member of Florida-Organized Wanabana—Gualberto Rodriguez Feliciano—who, as noted above, is a citizen and resident of Puerto Rico.

8. Florida-Organized Wanabana has no assets or revenue. It has never played any

---

[1] In a prior declaration, I stated that the members of Grupo Navis were Angel Santiago Colon and Gualberto Rodriguez Feliciano. My statement at that time was based on the facts as I understood them, but I subsequently discovered additional details concerning the nature of Gualberto Rodriguez Feliciano's interest in Grupo Navis, which are described in the body of the declaration.

role in the manufacture, marketing, importation, distribution or sale of the Products.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 15 March 2024

_____
Francisco Peña Cordovez
President, Wanabana USA LLC

# Exhibit 5

ANGLIN REA CAHALANE & PIEPER, P.A.
Patrick H. Cahalane, Esq., ID #02152-1992
Attorney for Plaintiff(s)
1005 Eastpark Boulevard
Cranbury, New Jersey 08512
(609)409-0444

| | |
|---|---|
| L.G., a minor through : <br> her mother and natural guardian, MARILYN : <br> GONZALEZ, and, MARILYN GONZALEZ,: <br> individually, : <br>       *Plaintiff(s)* : <br>    vs. : <br> WANABANA LLC; WANABANA USA : <br> LLC; DOLLAR TREE STORES, INC.; : <br> JOHN DOE CORPS. 1-10 : <br>       *Defendant(s)* : | SUPERIOR COURT OF NEW JERSEY <br> LAW DIVISION <br><br> MIDDLESEX COUNTY <br><br> Docket No. <br><br>    Civil Action <br> **COMPLAINT** |

L.G., a minor through her mother and natural guardian, MARILYN GONZALEZ, and, MARILYN GONZALEZ individually,   (hereinafter collectively referred to as "Plaintiffs"), file this complaint against WanaBana LLC, WanaBana USA LLC (hereinafter referred to as "WanaBana Defendants"), John Doe Corporations 1-10 (hereinafter referred to as "John Doe Parties"), and Dollar Tree Stores, Inc. (hereinafter referred to as "Dollar Tree") all collectively referred to as "Defendants" for personal injuries and damages sustained as a result of plaintiff, L.G., a minor through her mother and natural guardian, MARILYN GONZALEZ, ingestion of lead contained in WanaBana Defendant's product, WanaBana Apple Cinnamon Fruit Purée (hereinafter referred to as "Products"), and sold by Dollar Tree. Plaintiffs' allegations are made upon their personal knowledge, acts and experiences and, as to all other matters, upon information and belief.

### NATURE OF THE ACTION

1. Plaintiff MARILYN GONZALEZ is the natural mother of L.G., a minor.

2. Plaintiff L.G. consumed Defendants' Products and suffered catastrophic life-long injuries, including lead poisoning that will require continued medical monitoring, as a result of her consumption of Defendants' lead-contaminated Products.

3. The WanaBana Defendants design, manufacture, distribute, test, package, label, promote, market, advertise, distribute, and provide for sale fruit Purée "pouches," including the lead-contaminated apple cinnamon Products at issue here, throughout the United States.

4. The Dollar Tree Defendant is a retailer and seller of the WanaBana Defendants' fruit Purée pouches, including the lead-contaminated cinnamon apple Products.

5. Defendants are each liable to Plaintiffs for the injuries Plaintiffs have suffered by virtue of the doctrine of joint and several liability. Further, as alleged herein, Defendants worked and work in tandem to sell the Products.

## **THE PARTIES**
### **Plaintiffs**

1. Plaintiffs MARILYN GONZALEZ who, along with her Minor Child, L.G., are citizens and residents of Parlin, Middlesex County, New Jersey.

2. Minor child L.G. consumed Defendants' products from approximately August 2022 to August 2023, when L.G. was approximately 2 years old and during her developmental stages. During this time period, L.G. consumed several pouches of Defendants' Products.

3. As a result of her ingestion of Defendants' Products, L.G. has suffered catastrophic, life-long injuries including lead poisoning.

### ***Defendants***

1. Defendant WanaBana LLC is a Florida Limited Liability Corporation with its principal place of business

2

at 9405 N. Miami Ave., Miami Shores, FL 33150.

2.Defendant WanaBana LLC contracts for ingredients for, manufactures, tests, packages, labels, promotes, markets, advertises, and/or distributes, and sells the Products throughout the United States, including in Central New Jersey and Staten Island, New York.

3.Defendant WanaBana LLC registered as a Florida Limited Liability Corporation on January 11, 2018.

4.Defendant WanaBana USA LLC is a Florida Limited Liability Corporation with its principal place of business at 1413 Ponce De Leon Ave., Ste. 301 San Juan, Puerto Rico 00907.

5.Defendant WanaBana USA LLC contracts for ingredients for, manufactures, tests, packages, labels, promotes, markets, advertises, and/or distributes, and sells the Products throughout the United States, including in Middlesex County, State of New Jersey and Staten Island County, New York.

6.The WanaBana Defendants produce, manufacture, market, distribute, and/or sell pureed fruit and vegetable products comprised of various flavorings. These products are manufactured, produced, marketed, and distributed out of Florida. At all times relevant to this Complaint, Defendant WanaBana's products were sold throughout USA the including in State of New Jersey and State of New York.

7.Defendant Dollar Tree Stores, Inc. is a Virginia Limited Liability Corporation with is principal place of business at 500 Volvo Parkway, Chesapeake, Virginia 23320.

8.At all times relevant to this Complaint, Defendant Dollar Tree Stores, Inc., marketed, advertised, sold and/or distributed the WanaBana Defendants' products to Plaintiffs and across the United States, including throughout the State of New Jersey and State of New York.

9.Defendants John Doe Corporations 1-10 are the fictitious names of corporations, partnerships, or other business entities or organizations whose identities are not presently known, and who are the alter egos of or are otherwise responsible for the conduct or liability of those who developed, manufactured, packaged, sold, supplied purchased, marketed, promoted, advertised, distributed, labeled, sold, and/or retained

profits from the Products to which Plaintiff L.G. was exposed.

10. Defendants as used in this Complaint collectively refers to and means Defendants WanaBana LLC, WanaBana USA LLC, Dollar Tree Stores, Inc., and the John Doe parties, either or both in its own right or as a corporate successor to an entity or person whose acts, omissions, undertakings, or activities are attributed to it by contract or operation of law.

## JURISDICTION AND VENUE

1.This is an action for damages in excess of fifty-thousand dollars.

2. This Court has original jurisdiction, as Defendants committed tortious acts within the State of New Jersey and State of New York.

3.Plaintiffs are entitled to bring this action before this Court as the WanaBana Defendants maintain a corporate residence in the State of New Jersey and State of New York.

4. The WanaBana Defendants contract with suppliers and import their Products from Ecuador for distribution throughout the United States via a large shipping and warehouse facility in Jacksonville, Florida. From this Florida location, the WanaBana Defendants then distribute the Products throughout the United States, making them available at numerous online and retail outlets including through Defendant Dollar Tree stores.

5.The WanaBana Defendants regularly and systematically conduct business, including importing, contracting, distributing, and selling its products—including the Products at issue here— in the State of New Jersey and the State of New York and the United States.

6.During all relevant times, the WanaBana Defendants controlled the sourcing of ingredients, quality control, testing, manufacturing, design, packaging, labeling, marketing, promotion, advertising, distribution, and sales of their Products. Therefore, the WanaBana Defendants had control over the contents, packaging and labeling of their Products.

4

7. The WanaBana Defendants have also been involved in the manufacture, design, testing, packaging, labeling, marketing, advertising, promotion, distribution, and sales of the Products under the WanaBana name throughout the United States, including in the State of New Jersey and the State of New York. The WanaBana Defendants have done so continuously throughout the relevant time period.

8. The Defendant Dollar Tree regularly and systematically conducts business, including selling WanaBana Defendants' products—including the Products at issue here—in Middlesex County and Staten Island County, to consumers in Middlesex County and State Island County, and throughout New Jersey, New York and the United States.

9. The Dollar Tree Defendant has sold the Products to consumers continuously throughout the relevant time period here, including in New Jersey, New York and in Middlesex County, New Jersey and Staten Island County, New York.

10. Accordingly, all Defendants are subject to the jurisdiction of this Court.

11. Venue is likewise proper in Middlesex County because all Defendants are subject to personal jurisdiction in Middlesex County and regularly conduct substantial business in Middlesex County. Moreover, a substantial part of the events, acts and transactions giving rise to the action—including distribution, marketing, promotion, and manufacturing of the Products—occurred in Middlesex County, New Jersey.

## **FACTUAL ALLEGATIONS: Plaintiffs' Facts**

1. In or around August 2022, Plaintiff MARILYN GONZALEZ began purchasing WanaBana Apple Cinnamon Fruit Purée pouches, from a store owned and operated by Defendant Dollar Tree, for her Minor Child L.G..

2. Plaintiff MARILYN GONZALEZ, as the parent of the Minor Child, seeks to provide a diet that is both nutritious and healthy for her young and developing Minor Child.

3.As a result of these concerns, Plaintiff MARILYN GONZALEZ relied heavily on the Products' labeling which indicated it was "kosher," "additive-free," and "USDA Organic" when purchasing the Defendants' WanaBana Apple Cinnamon Fruit Purée pouches for her Minor Child.

4. Minor Child L.G. began consuming Defendants' WanaBana Apple Cinnamon Fruit Purée pouches in or around March 2022 to March 2023, when L.G. was approximately two years old.

5.Minor Child L.G. consumed the "pouches" of Defendants' Products until approximately August 2023.

6.In August of 2023, as part of her medical exam, L.G.'s physician tested her blood. The physician subsequently discovered that L.G. had an elevated level of lead in her system, with a blood lead level of 6.8 μg/dL.

7.L.G.'s elevated blood lead level caused, Plaintiff MARILYN GONZALEZ worry and concern for her Minor Child's health.

8. Plaintiff MARILYN GONZALEZ also had her and her 10 year old son's blood collected for lead testing; the results of both collections showed normal blood lead levels. Plaintiff MARILYN GONZALEZ also had her property tested for lead; the results showed normal lead levels.

9.In response to this new development, the Middlesex County Environmental Health Department conducted a lead investigation into L.G.'s home — no sources of lead were found at the Minor Child's home.

10. As extensive lead investigations exhausted plausible other sources of lead to explain the cause of the Minor Child's elevated blood lead level, the Minor Child's physician recommended that Plaintiff MARILYN GONZALEZ conduct an "elimination diet" – a process-of-elimination audit of the food consumed in Plaintiffs' household.

11.Through doing an elimination diet during approximately July of 2023, Plaintiffs realized that the only food consumed by the Minor Child that was not consumed by Plaintiffs MARILYN GONZALEZ and her 10 year old son, were the Defendants' WanaBana Fruit Purée Products.

11.Immediately following the elimination diet, the Minor Child stopped consuming Defendants' Products.

12.Accordingly, other blood lead tests were conducted on L.G.. These subsequent tests revealed that the Minor Child's blood lead levels had declined.

13.Since eliminating Defendants' Products from her diet, L.G.'s blood lead level declined from 6.8 μg/dL to 1.6 μg/dL. Following the Minor Child's exposure, Plaintiff, MARILYN GONZALEZ, began treatments for the Minor Child for lead extraction, and developmental and medical monitoring.

14.Continued treatment is necessary for childhood lead poisoning victims, such as L.G., because lead poisoning can manifest itself throughout an individual's life through developmental delays, learning difficulties, irritability, loss of appetite, sluggishness and fatigue, abdominal pain, vomiting, constipation, hearing loss, and seizures. As a result, regular monitoring is required for early detection of lead poisoning manifestations.

15.As a result of consuming Defendants' Products, L.G. is subject to continued treatment and monitoring, requiring routine appointments with physicians, chelation treatment, blood lead level testing, developmental testing, and regular appointments with a nutritionist.

16. Recent physician testing for L.G. reports that her elevated blood lead levels have decreased less and less from August 2023 to September 2023 to  October 2023 since L.G. stopped consuming Defendants' Products and Plaintiff, MARILYN GONZALEZ prepared all food for L.G.'s intake.

### *North Carolina Public Health Authorities' Investigation of Plaintiffs' Lead Exposure Leads to FDA Action and Recall*

1. Upon North Carolina public health authorities' discovery of lead contained in Defendants' Products purchased and consumed by Plaintiffs, as well as the Products simultaneously being linked to many childhood lead poisoning cases in North Carolina, North Carolina public health authorities issued a statement ("NCDHHS Statement") regarding four children in the North Carolina who were found to have high levels of lead in their blood linked to the WanaBana Defendants' Purée products.[1]

2. On or about October 30, 2023, the FDA issued a public health alert, based on the NCDHHS Statement and coordinated investigations among North Carolina public health authorities, that the Products contained "extremely high levels" of the lead (hereinafter referred to as "FDA Alert"). [2]

3. The FDA Alert stated that the NCDHHS "analyzed multiple lots of WanaBana apple cinnamon fruit puree, detecting extremely high concentrations of lead."[3]

---

[1] North Carolina Department of Health and Human Services ("NCDHHS"), *NCDHHS Urges Caution After Reportable Lead Found in WanaBana Brand Apple Cinnamon Puree*, https://www.ncdhhs.gov/news/press-releases/2023/10/28/ncdhhs-urges-caution-after-reportable- lead-found-WanaBana-brand-apple-cinnamon-puree, Oct. 28, 2023 (last accessed Jan. 18, 2023) ("NCDHHS Statement").

[2] Food and Drug Administration ("FDA"), *FDA Advises Parents and Caregivers Not to Buy or Feed WanaBana Apple Cinnamon Fruit Purée Pouches to Toddlers and Young Children Because of Elevated Lead Levels,* https://www.fda.gov/food/alerts-advisories-safety-information/fda- advises-parents-and-caregivers-not-buy-or-feed-WanaBana-apple-cinnamon-fruit-puree-pouches, Nov. 3, 2023 (last accessed Jan. 18, 2023) ("FDA Alert").

[3] *Id.*

4.The FDA Alert also stated that "The FDA has reviewed and supports NCDHHS's analytical findings and found that analytical results at this level could result in acute toxicity" and that it "has shared the results with [WanaBana Defendants] whose representatives are cooperating with the FDA and have agreed to voluntarily recall all WanaBana apple cinnamon fruit purée pouches regardless of expiration." [4]

5.The FDA identified and confirmed the serious health implications arising from lead exposure and its toxicity.[5]

6.On November 3, 2023, the investigation into WanaBana Defendants' Products was transferred to the FDA's Coordinated Outbreak Response & Evaluation (CORE) Network for continued investigation "in collaboration with the Centers for Disease Control and Prevention (CDC) and state and local partners."[6]

7.On November 09, 2023, the FDA announced that the recall of WanaBana Apple Cinnamon Fruit Purée pouches was expanded to include Schnucks Apple Sauce 90g pouches with cinnamon, and Weis Cinnamon Apple Sauce 90g, both of which are independently distributed private label brands of the WanaBana Defendants.[7]

8.The FDA also made a statement that "FDA is aware that, as of December 13 [2023], recalled WanaBana Apple Cinnamon Purée products (including recalled three packs) were still on the shelves at several Dollar Tree stores in multiple states. As of December 19 [2023], FDA also

---

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] FDA, *Company Announcement: WanaBana Recalls WanaBana, Weis, and Schnucks Apple Cinnamon Fruit Purée Pouches & Cinnamon Apple Sauce Due to Elevated Lead* Levels, Nov. 9, 2023, https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/WanaBana-recalls-WanaBana-weis-and-schnucks-apple-cinnamon-fruit-puree-pouches-cinnamon-apple-sauce (last accessed Jan. 18, 2024)

received a report that recalled WanaBana Apple Cinnamon Purée product (including recalled three packs) may still be on shelves at Family Dollar/Dollar Tree combination stores. This product should not be available for sale and consumers should not purchase this product."[8]

9.FDA officials investigating Defendants' Products have raised the possibility that the lead contamination in the cinnamon used by Defendants may have been intentionally added for economic reasons.[9]

10.The FDA's Department of Health and Human Services conducted an inspection of the facility where the Products were processed, the facility which mixes the ingredients which are put into the final products, including the Products at issue here. The inspection was conducted from December 4th to December 14th 2023.[10]

11.The FDA inspection report found that the WanaBana Defendants did not include cinnamon in its hazard analysis which required a preventative control for heavy metals, including lead.[11]

12.The FDA inspection report further reported that the WanaBana Defendants did not sample and test raw materials or the finished products for heavy metals, including lead.[12]

---

[8] FDA, *Investigation of Elevated Lead & Chromium Levels: Cinnamon Applesauce Pouches (November 2023)*, https://www.fda.gov/food/outbreaks-foodborne-illness/investigation-elevated- lead-chromium-levels-cinnamon-applesauce-pouches-november-2023 (last accessed Jan. 18, 2024).

[9] Associated Press, *Parents of Children Sickened by Lead Linked to Tainted Food Pouches Fear for Kids' Future*, https://apnews.com/article/WanaBana-apple-cinnamon-lead-poisoning-fruit- pouch-86c32266e010843d0e9ad3340ecae319 (last accessed Jan. 22, 2024).

[10] FDA Health and Human Services, *Austrofood S.A.S. Inspection*, FEI No. 3013416401, Dec. 14, 2023, 2024-01-24_fda_foia-2023-11285-ocr.pdf (tinalexander.github.io) (last accessed Jan. 24, 2024).

[11] *Id.*

[12] *Id.*

13. Additionally, the FDA inspection report concluded that the WanaBana Defendants did not have an appropriate preventative control and monitoring procedure in place to significantly minimize or prevent hazards. In particular, the report cited the food safety plan for apple cinnamon Purée to be not sufficient to prevent hazards.[13]

14. The FDA Inspection report identified that the WanaBana Defendants' Products processing facility had no controls in place to account for metal contamination from the rough edges, chips, and pitted areas that are present on the conveyer belt which processes the Purée in the Products.[14]

15. This food safety misconduct and the failed preventative controls, as identified in the FDA inspection report, resulted in the lead poisoning of dozens of children and consumers, including Plaintiff L.G..

16. As of January 3, 2024, the FDA has received 89 total complaints/Adverse Event Reports.[15]

17. The median age of the individuals affected by lead poisoning caused by Defendants' Products is one year old.[16]

18. The CDC's investigation identifies links between blood lead levels of 3.5 μg/dL or higher in children within three months of the consumption of Defendants' Products. The CDC reports that, as of January 19, 2024, it has received reports from state and local health departments that

---

[13] *Id.*

[14] *Id.*

[15] FDA, *Investigation of Elevated Lead & Chromium Levels: Cinnamon Applesauce Pouches (November 2023)*, https://www.fda.gov/food/outbreaks-foodborne-illness/investigation-elevated- lead-chromium-levels-cinnamon-applesauce-pouches-november-2023 (last accessed Jan. 23, 2024).

[16] *Id.*

implicate over 385 total cases of lead poisoning resulting from exposure to WanaBana Defendants' Products.[17]

19.Additional laboratory testing by the FDA of Defendants' Products found that the Products also contained chromium.[18]

20.On January 5, 2024, the FDA announced that WanaBana's cinnamon and recalled products also contained elevated levels of chromium contamination as high as 1201 ppm in the cinnamon. At high levels chromium can cause toxicity and the more toxic form of chromium is "chromium (VI)." The quantity of chromium detected by the FDA and the lead to-chromium ratio is consistent with lead chromate $(PbCrO_4)$.[19]

21.Lead chromate typically appears as a yellow, orange, and red power and is often used as a pigment in a powder or paint. It is carcinogenic, a neurotoxin, and a nephrotoxin.

22.Lead chromate primarily affects the lungs, but it can also affect the gastrointestinal tract, liver, kidneys, and immune system. Lead chromate also contains the most toxic form of chromium (chromium (VI)).

### ***The Longstanding Knowledge of the Dangers of Lead***

1.Defendants' Products contained lead and chromium.

2.Lead is a toxic heavy metal, upon which exposure and ingestion can lead to lead poisoning.

3.Lead poisoning can result in serious, life-long adverse health effects especially in children.

---

[17] Center for Disease Control and Prevention, *Lead and Chromium Poisoning Outbreak Linked to Cinnamon Applesauce Pouches*, Dec. 20, 2023, https://www.cdc.gov/nceh/lead/news/lead- poisoning-outbreak-linked-to-cinnamon-applesauce-pouches.html (last accessed Jan. 23, 2024)

[18] *Id.*

[19] *Id.*

4.The harmful effects of lead poisoning in children can include, but are not limited to: behavior and learning problems, lower IQ and hyperactivity, slowed growth, hearing problems, and anemia.[20]

5.The harm that lead poisoning inflicts on children has been well-known for decades.

6.Lead is dangerous to children, in particular, "because their growing bodies absorb more lead than adults do and their brains and nervous systems are more sensitive to the damaging effects of lead."[21]

7.Indeed, children absorb ingested lead from a given source 4-5 times more than adults. [22]

8."The neurological and behavioral effects of lead are believed to be irreversible."[23]

9.Moreover, there is no known safe blood level concentration in children.[24]

10.The World Health Organization reports that even "blood lead concentrations as low as 3.5 µg/dL may be associated with decreased intelligence in children, behavioral difficulties and learning problems.[25]

11.The World Health Organization has also identified lead as one of its 10 chemicals that constitute a major public health concern.[26]

─────────────────────

[20] EPA, Learn About Lead https://www.epa.gov/lead/learn-about-lead#effects (last accessed Jan. 14, 2024).

[21] *Id.*

[22] World Health Organization, Lead Poisoning https://www.who.int/news-room/fact- sheets/detail/lead-poisoning-and- health#:~:text=Exposure%20to%20lead%20can%20affect,%2C%20liver%2C%20kidney%20and%20bones. (last accessed Jan. 14, 2024).

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.*

12.Lead in the body is known to distribute throughout a child's brain, liver, kidney, and bones. It is also stored in a child's teeth and bones, where it can accumulate over time.[27]

13.The FDA and the World Health Organization have declared lead to be dangerous to human health. [28]

14.In addition to the lead, the chromium in defendants' contaminated products represents a significant health risk. Although chromium is naturally occurring and may be normally found within a diet, at high levels it is toxic. Moreover, there is a significant difference between trivalent chromium (chromium (III)) and the significantly more toxic hexavalent chromium (chromium (VI)). Chromium (VI) is a known carcinogen and has been associated with other health effects when ingested including irritation, ulcers, and anemia. Although the health effects of eating food contaminated with chromium (VI) are not well understood, there is also no antidote to treat chromium exposure.[29]

15.The more toxic and dangerous form of chromium (chromium (VI)) is found in lead chromate. Lead chromate has been used to adulterate spices, such as turmeric, and is toxic. The FDA's reported laboratory ratios of lead and chromium found in Defendants' Products are consistent with the Products being contaminated with lead chromate.

---

[27] *Id.*

[28] *See, e.g.*, U.S. House of Representatives Committee on Oversight and Reform, *Staff Report: Baby Foods are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury* at 2, Feb. 4, 2021, https://oversightdemocrats.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (last accessed Jan. 18, 2024).

[29] CDC, *Lead and Chromium Poisoning Outbreak Linked to Cinnamon Applesauce Pouches*, https://www.cdc.gov/nceh/lead/news/lead-poisoning-outbreak-linked-to-cinnamon-applesauce- pouches.html (last accessed Jan. 24, 2024).

16. Adulteration of spices using lead chromate compounds has been documented globally as a growing public health concern. It has contributed to lead poisoning of children and adults around the world.[30]

17. Lead chromate is considered a hazardous substance in the United States for several reasons, including its carcinogenic nature, its risk of causing lead poisoning, and its risk of causing kidney and brain damage, among other major health concerns.[31]

18. Given the negative effects of lead on child development and adult health, the presence of these substances in food is material to reasonable consumers, including Plaintiffs, as it relates to their purchasing and consumption decisions.

19. Defendants' Products included undisclosed levels of lead, due to Defendants' failure to sufficiently monitor for their presence in the ingredients and finished products. Defendants were or should have been aware of this risk.

20. Concerns over exposure to lead, and the knowledge of such risks associated with exposure, are not a new phenomenon, and Defendants knew or should have known of the risks associated with the presence of lead in foods they sell to consumers.

21. Defendants knew or should have known that it owed consumers, including Plaintiffs, a duty of care to prevent, or at the very least, minimize the presence of lead in the Products to the extent reasonably possible.

22. Defendants knew or should have known that it owed consumers, including Plaintiffs, a duty of care to adequately test for lead in the Products and the contributing ingredients.

---

[30] Lopez, Alandra et al., *Assessing Analytical Methods for the Rapid Detection of Lead in the Global Spice Market*, Environ. Sci. Technol. 2022, 56, 23, 16996–17006, Nov. 7 2022, https://pubs.acs.org/doi/epdf/10.1021/acs.est.2c03241 (last accessed Jan. 24, 2024).

[31] National Center for Biotechnology Information (2024), *Lead Chromate Compound Summary*, https://pubchem.ncbi.nlm.nih.gov/compound/Lead-chromate (last accessed Jan. 24, 2024).

23.Defendants also had a duty to ensure the Products were not deceptively, misleadingly, unfairly, and falsely marketed and that all material information was properly and fully disclosed.

24.Defendants knew or should have known that proper and sufficient testing and/or monitoring the Products for lead in both the ingredients and finished products was critical.

25.Defendants knew, yet failed to disclose, that they were not sufficiently or adequately monitoring or testing the Products or ingredients used in the Products for lead.

26.Defendants knew or should have known they could control the levels of lead in the Products by properly monitoring and testing for lead at ingredient sourcing, manufacturing, and packaging stages, and effecting changes when needed.

27.In addition, Defendants knew or should have known that a reasonable consumer would consume the Products regularly, leading to repeated exposure to and accumulation of lead.

### *Defendants Made Material Misrepresentations and Omissions*

1.Upon information and belief, the WanaBana Defendants' exclusive packager is Ecuadorian-based company Austrofoods, which ships the WanaBana Products to the United States.[32]

2.Upon information and belief, the WanaBana Defendants' exclusive cinnamon supplier is the Ecuadorian-based company Negasmart, which provided the contaminated cinnamon which was added to the Products.[33]

---

[32] FDA, *Investigation of Elevated Lead & Chromium Levels: Cinnamon Applesauce Pouches (November 2023)*, https://www.fda.gov/food/outbreaks-foodborne-illness/investigation-elevated-lead-chromium-levels-cinnamon-applesauce-pouches-november-2023 (last accessed Jan. 24, 2024).

[33] *Id.*

3.Ecuadorian authorities have reported that Negasmart's cinnamon, which was added to the Products here, had higher levels of lead than allowed by Ecuador.[34]

4.Upon information and belief, WanaBana Defendants' agents vetted Negasmart and its cinnamon. These vetting procedures were either inadequate or the WanaBana Defendants deliberately disregarded in that the procedures failed to identify the presence of harmful lead and chromium in the Products.

5.Upon information and belief, neither the WanaBana Defendants nor its supplier agents tested the cinnamon before incorporating it into the Products.

6.Upon information and belief, the WanaBana Defendants selected and used ingredients from an exclusive supplier that they knew or should have known was intentionally adding lead to its cinnamon spice product to increase the weight, and therefore the value, of the cinnamon.[35]

7.The WanaBana Defendants have a duty to ensure that their products, including the Products at issue here, were not contaminated with lead or other harmful substances. This duty derives, in part, from the WanaBana Defendants' control and oversight of its agents, including its exclusive suppliers, that contribute to the manufacture of the end Products to which Plaintiff L.G. was exposed.

8.The WanaBana Defendants' duty to ensure their products, including the Products at issue here, are safe and free of harmful substances, such as lead, is of even greater significance because of the WanaBana Defendants' knowledge that their products will be consumed by children and their marketing efforts consistent with that knowledge.

---

[34] *Id.*

[35] *Id.*

9.Meanwhile, WanaBana Defendants make specific representations to consumers that their fruit pouches, including the Products at issue in this litigation, are high- quality, healthy, and safe products for consumers, including Plaintiffs, to choose for their children, including that they are the "ideal snack for the whole family."[36]

10.The product's selected slogan, "I AM ONLY FRUIT," is used by WanaBana Defendants to imply to parents that they are purchasing for their children a premium, healthy fruit Purée pouch.[37]

11.Defendants used the same slogan "I AM FRUIT" on the "apple cinnamon" flavor Products ingested by L.G.. The front packaging of the Products also reads: "No preservatives," "Gluten free," "NO SUGAR ADDED," and "KOSHER."[38]

12.The back of the apple cinnamon Products ingested by L.G. lists three ingredients: "apple puree, cinnamon powder, acidulant: citric acid."[39]

13.The back of the apple cinnamon Products ingested by L.G. also states that the Products are "Gluten Free" and contain no BPA in its packaging.[40]

14.Defendant Dollar Tree sells three-packs of the WanaBana Defendants' products in brick- and-mortar retail locations as well as through its website.[41]

---

[36] WanaBana, *Homepage*, https://WanaBana.com/ (last accessed Jan. 15, 2024)

[37] WanaBana, *Fruit Pouch*, https://WanaBana.com/fruit-pouch/ (last accessed Jan. 15, 2024).

[38] See USA Today, *All WanaBana apple cinnamon pouches recalled for potentially elevated levels of lead: FDA*, image provided by FDA therein, https://www.usatoday.com/story/money/2023/10/30/WanaBana-fruit-pouch-recall- lead/71378400007/ (last accessed Jan. 15, 2024).

[39] *See id.*

[40] *See id.*

[41] See, e.g., Dollar Tree, *WanaBana Fruit Purée Pineapple Banana Fruit Pouches, 3-ct. 7.5 oz.*, https://www.dollartree.com/WanaBana-fruit-puree-pineapple-banana-fruit-pouches-3-ct-75- oz/370158 (last accessed Jan. 15, 2024).

15. The boxing encasing the "3-pack" of fruit Purée pouches also states that the products are Kosher, contain no preservatives, are gluten free, "[r]eady to eat," and are in "BPA Free Packaging."

16. The WanaBana Defendants also tout the purported safety and quality of their products on their website. As an example, the WanaBana Defendants list six certification seals followed by the statement: "We have certifications that guarantee the excellence of our food processes. Ensuring a product with worldwide safety and quality."[42]

17. The WanaBana Defendants also displayed logos of other certifications, but the WanaBana Defendants have since removed those logos since the FDA's Alert.

18. The WanaBana Defendants' "Our Story" website page features language which tours their purported commitment to their consumers by "exceeding the expectations of our customers through the elaboration of products derived from fresh fruits that meet quality, safety, legality and authenticity parameters focused on continuous improvement in our BPM management systems, HACCP, BRC, SGCS BASC and nationally and internationally recognized quality standards."[43]

19. In order to achieve this purported commitment, the WanaBana Defendants state: "we have a team of highly qualified people, controlled processes and a food safety management system, which allows us to guarantee the safety of our products and a continuous improvement of our processes, as well as the prevention of illegal activities, corruption and bribe."[44]

---

[42] WanaBana, *Homepage*, https://WanaBana.com/ (last accessed Jan. 15, 2024). From left: certified Kosher; the Business Alliance for Secure Commerce, certified compliant; Good Manufacturing Practice certified; and certified organic by the European Union; certified organic by the U.S. Department of Agriculture; and certified organic by Quality Certification Services – Ecuador.

[43] WanaBana, Our Story, WanaBana.com/about-us (last accessed Jan. 15, 2024).
[44] *Id.*

20. The WanaBana Defendants make repeated statements on their website that their products are safe and high-quality, using their certifications as an endorsement of their purported quality: "[o]ur products not only maintain the fruit's organoleptic and nutritional characteristics, but also carry a production line with the highest standards in the market, evidenced in the certifications obtained year after year."[45]

21. The WanaBana Defendants have yet to make a post on its official English Facebook or Instagram pages warning consumers about the recall of its Products.

22. In fact, the WanaBana Defendants' Instagram postdated October 17, 2023 shows an image of its apple cinnamon pouch Products with a "Your Brand Here" affixed on the rendering of the pouch. The purpose of the post was to announce the WanaBana Defendants' attendance at the Private Label Manufacturers Association, further stating: "It's a #Wanafantastic opportunity to find out more about our innovative packaging, products, and all that we can do with #realfruit and #newblends."[46]

23. The WanaBana Defendants' Instagram Page states the following about its products in its bio/page description:[47]

    a.    "Purees, pulps & smoothies 100% Fruit;"

    b.    "No sugar added;"

    c.    "Practical package, easy to carry and enjoy;"

    d.    "Quality certification;"

---

[45] *Id.*

[46] WanaBana USA & Canada Instagram Page, *Oct. 17th 2023 Instagram Post*, Instagram.com/WanaBanausa (last accessed Jan. 15, 2024).

[47] WanaBana USA & Canada Instagram Page, Instagram.com/WanaBanausa (last accessed Jan. 15, 2024).

24.The WanaBana Defendants' Instagram Page also contains posts which explicitly markets its products to children, including with one post featuring a child painting beside an interposed graphic of a WanaBana fruit Purée pouch, with the caption stating: "Encourage your children's imagination  with a snack that will give them the vitamins and minerals they need for their growth. WanaBana is real fruit! Give WanaBana a try in its many delicious flavors."[48]

25.Another post on WanaBana Defendants' Instagram page purports that its products give energy and nutrition to children: "The energy and nutrition that WanaBana gives children is incredible. Have you tried the WanaBana Purée and pulp yet? The little ones in your home will love it."[49]

26.The WanaBana Defendants also reassert their claims about the purported safety and health benefits of their products on their Facebook page bio:[50]

> a."A convenient and versatile way to enjoy real fruit. Made out of 100% natural fruit.No added sugar, no preservatives, no additives. BPA free package[.] Quality recognized internationally. We help develop agriculture & agroindustry with innovative solutions."

27.When advertising their products on Facebook, the WanaBana Defendants regularly use the hashtags such as "#onlyfruit," "#realfruit," "#organicfruit" to market their Purée products. [51]

---

[48] WanaBana USA & Canada Instagram Page, *Jan. 28, 2022 Instagram Post*, https://www.instagram.com/p/CZSiugRroxk/ (last accessed Jan. 15, 2024).

[49] WanaBana USA & Canada Instagram Page, *Jan. 22, 2022 Instagram Post*, https://www.instagram.com/p/CZDF9a-trCj/ (last accessed Jan. 15, 2024).

[50] WanaBana USA Facebook Page, https://www.facebook.com/WanaBanausa/ (last accessed Jan. 15, 2024).

[51] *See id.* at *Feb. 18, 2022 Post*.

28. The WanaBana Defendants also state on their Facebook page, under the privacy and legal info tab:[52]

> a. "JUST OPEN AND ENJOY – Convenient and versatile way to enjoy a real fruit wherever you go and does not need to be refrigerated."

> b. "I AM ONLY FRUIT – Made of only 100 percent natural fruit. We are dedicated to the production, and processing of fresh fruit to guarantee a healthy option for the whole family."

> c. "NATURAL - No added sugar, no preservatives, no additives, and comes in a BPA- free package giving you and your loved ones a high-quality addition to your diet."

> d. "EXTRAORDINARY STANDARDS – Recognized both at the national and international level, while also striving for innovation and contributing to the development of agriculture and agroindustry. "

29. These statements are demonstrably false, as Plaintiff Minor Child L.G. and other consumers have suffered from lead poisoning due to ingesting Defendants' Products.

30. Contrary to Defendants' representations and assurances that its Products are safe, healthy, certified, and manufactured under strict quality standards, Defendants' Products contain detectable levels of lead, which is known to pose life-long human health risks—particularly in children.

31. Defendants failed to disclose to consumers that the Products contain or have a material risk of containing lead.

---

[52] WanaBana USA Facebook Page, *About*, https://www.facebook.com/WanaBanausa/about (last accessed Jan. 15, 2024).

32.Consumers, including Plaintiffs, trusted manufacturers like the WanaBana Defendants and retailers like Defendant Dollar Tree to sell only fruit Purée products that are safe for themselves and their children, not to sell products that contain or have a material risk of containing lead.

33.Reasonable consumers, including the Plaintiffs, expect the fruit Purée products they purchase for their children will not be contaminated or have a material risk of being contaminated with lead — a substance that is known to accumulate in the body and pose significant and dangerous health consequences.

34.The quality of a product's contents, particularly as it relates to toxic contents such as lead, are material to a reasonable consumer's purchasing and consumption decision, including Plaintiffs' decisions.

35.Consumers, including Plaintiffs, lack the scientific knowledge or ability to conduct their own testing to determine whether Defendants' products do in fact contain lead, or to ascertain the true nature of the ingredients and quality of Products. Accordingly, reasonable consumers must and do rely on each Defendant to: (1) know what their Products contain; (2) regularly rest the Products to confirm their quality and compositions; and (3) properly and fully disclose these contents to consumers prior to sale and consumption.

36.Defendants knew or should have known that their Products contained lead and wrongfully failed to disclose that the Products contain or have a material risk of containing lead on its packaging.

37.Defendants knew or should have known that their Products contained lead yet chose to not disclose such information to consumers and thus actively concealed the presence and risk of lead in the Products.

38.No reasonable consumer would expect, suspect, or understand that the Products contain or have a material risk of containing lead.

39.Defendants failed to disclose on the Products' packaging that the Products contain or have a material risk of containing lead. It was only through the FDA and NCDHHS' testing, and subsequent advisories that the general public became aware of the lead content in Defendants' Products.

23

40.Based on Defendants' misrepresentations and omissions, no reasonable consumer, including Plaintiffs, had any reason to know, suspect, or expect that the Products contained lead.

41.Defendants are aware that their customers trust the quality of their Products and would not expect the Products to contain or have a material risk of containing lead.

42.As evidenced by Defendants' marketing, Defendants also know that reasonable consumers, especially parents, seek out products with ingredients free of toxins or contaminants, and that these consumers will pay more for products they believe meet these standards.

43.Defendants also know that reasonable consumers would not knowingly consumer, or feed to their families and children, products that contain lead.

44.Defendants knew that the consumers to whom it markets the Products would find their misrepresentations and omissions to be material and that Defendants were in a special position of public trust to those consumers.

45.In light of Defendants' representations regarding the health and quality standards of Defendants' operations and Products, Defendants knew or should have known the Products contained or had a material risk of containing lead.

46.Defendants' misrepresentations and omissions are deceptive, misleading, unfair, and/or false because the Products contain undisclosed lead.

47. Defendants' misrepresentations and omissions allowed Defendants to capitalize on, and reap enormous profits from, reasonable consumers like Plaintiffs that omitted material information as to the Products' true quality and value and, in fact, poisoned their children.

48.The popularity of pureed products in "pouch" form, including the Products at issue in this litigation, is increasing across the world, as parent-consumers, including Plaintiffs, seek nutritious and convenient

foods for their children.

49.The purported safety and health benefits of Defendants' Products are fully displayed on Defendants' packaging, as set forth in this Complaint.

50.Defendants' misrepresentations and omissions wrongfully convey to consumers that Defendants' Products are of superior quality and have certain characteristics that the Products do not actually possess.

51.Defendants' misrepresentations and omissions have caused consumers, including the Plaintiffs here, to believe the Products do not contain any harmful substances, when in fact the Products contain or have a material risk of containing undisclosed levels of lead, which is material information to reasonable consumers, including Plaintiffs.

52.Defendants' misrepresentations and omissions make the Products' packaging deceptive based on the presence or risk of lead in the Products. Reasonable consumers, including Plaintiffs, would consider the presence or risk of lead in the Products to be a material fact when considering which applesauce or other pureed products to consume.

53.Defendants' misrepresentations were material and misleading due to Defendants' failure to sufficiently or adequately monitor, control, or test for and disclose the presence or material risk of lead in the Products.

54.Information regarding the true nature and/or presence of lead in the Products was and is in the exclusive possession of Defendants and not available to consumers. Defendants chose to not disclose such information to consumers and thus concealed the presence and risk of lead in the Products from Plaintiffs.

55.Although Defendants are in the best position to know what content it placed on their website(s), social media sites, and in marketing materials during the relevant timeframe; the knowledge Defendants had regarding presence of lead in their Products; and their failure to disclose the existence of lead in the Products to Plaintiffs and consumers both before and after the Products were recalled; Plaintiffs allege the following facts with particularity:

a. WHO: Defendants made false statements and material misrepresentations and/or omissions of fact on their Products, labeling, marketing materials and in public statements, which include express and/or implicit representation that their Products were and are free of lead and were safe for human consumption.

b. WHAT: Defendants falsely and misleadingly, and through misrepresentations and omissions, led consumers to believe that their Products were and are free of lead and failed to disclose that the Products contain these materials. Thus, Defendants' conduct deceived Plaintiffs into believing that the Products were created, manufactured, and sold with such qualities. Defendants knew or should have known this information is material to reasonable consumers, including Plaintiffs, in making their decisions about the food to feed to their children, yet Defendants continued to pervasively market the Products as possessing qualities they do not possess.

c. WHEN: Defendants made material misrepresentations, false statements and/or omissions both prior to and at the time Plaintiff L.G. consumed Defendants' Products.

d. WHERE: Defendants' marketing message was uniform and pervasive, carried through material misrepresentations, false statements and/or omissions on their Products labeling and packaging, websites, and social media accounts.

e. HOW: Defendants made material misrepresentations, false statements and/or omissions regarding the presence of lead in their Products by making express and/or implicit representations in the above-referenced materials that their Products were healthy, safe, and made of premium ingredients and by omitting any facts in their marketing, labeling, and/or other descriptions of their Products that would inform a consumer as to the presence of lead.

## CAUSES OF ACTION

## COUNT ONE – ALL DEFENDANTS – STRICT LIABILITY FAILURE TO WARN

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2.At all pertinent times, the WanaBana Defendants were engaged in manufacturing, marketing, testing, promoting, selling and/or distributing Products in the regular course of business.

3.At all pertinent times, the WanaBana Defendants knew or should have known that the use of their Products which contained lead significantly increases the risk of causing catastrophic, life- altering lead poisoning in children.

4.At all pertinent times, Defendant Dollar Tree was engaged in the business of marketing, promoting and selling the Products in the regular course of business.

5.At all pertinent times, Defendant Dollar Tree knew or should have known that the use of their Products which contained lead significantly increases the risk of causing catastrophic, life- altering lead poisoning in children.

6.At all pertinent times, Plaintiffs ingested Defendants' Products, which is a reasonably foreseeable use and in a manner normally intended by the Defendants.

7.At all pertinent times, Defendants' Products were unreasonably dangerous and in a defective condition because, among other things, it failed to warn Plaintiffs of the presence of lead in the Products and the increased risk of lead poisoning and catastrophic injury as a result of their ingestion. Had Plaintiff received a warning that the Defendants' Products contained lead and that ingestion would result in lead poisoning, then Plaintiff, MARILYN GOMEZ  would not have used Defendants' Products in that manner, if at all.

8.These defects in Defendants' Products substantially contributed to Plaintiff L.G.'s lead poisonings. As a result, L.G. suffered bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring loss of earnings, and loss of ability to earn money in the future. The losses are permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

9.As a further result, Plaintiff, MARILYN GOMEZ  has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of her minor child and will continue to suffer such losses in the future.

   **Wherefore**, Plaintiffs request a judgment against Defendants joint and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

### COUNT TWO – WANABANA DEFENDANTS - STRICT LIABILITY – DEFECTIVE DESIGN

1.All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. The WanaBana Defendants were in the business of designing, manufacturing, packaging, labeling, selling, and distributing the Products in the regular course of business.

3.The WanaBana Defendants had a duty of a reasonable manufacturer to foresee and appreciate risks of harm associated with the ordinary use of their Products.

4.At all pertinent times, the WanaBana Defendants knew or in the exercise of reasonable care should have known that children ingest their fruit Purée Products.

5.At all pertinent times, the WanaBana Defendants knew or in the exercise of reasonable care should have known that the use of their Products which contained lead significantly increases the risk of causing catastrophic, life-altering lead poisoning in children.

6.The Products are defective in design because the foreseeable risk of becoming poisoned by lead exceeds a reasonable consumer's expectations that when consumed by children the fruit Purée Products are safe, that the risk of being exposed to lead as a result of ingestion significantly outweighs any potential benefit, and that the Products contain lead.

7.At all pertinent times, the Products were substantially in the same condition as when it left the possession of the WanaBana Defendants.

8. At all pertinent times, Plaintiff L.G. used the Products for food, which was a reasonably foreseeable and normally intended use by the WanaBana Defendants, as they gave no warnings in opposition, but rather promoted use of the Products for consumption by children and adults alike.

9. The Products' defective design was a substantial contributing factor of Plaintiff L.G.'s lead poisonings. As a result, L.G. suffered bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring loss of earnings, and loss of ability to earn money in the future. The losses are permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

10. As a further result, Plaintiff, MARILYN GOMEZ  has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of their minor child and will continue to suffer such losses in the future.

**Wherefore**, Plaintiffs request a judgment against Defendants joint and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

### COUNT THREE – WANABANA DEFENDANTS– GROSS NEGLIGENCE

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. At all pertinent times, the WanaBana Defendants had a duty to reasonably and properly design, manufacture, test, inspect, package, label, distribute, market, examine, maintain, supply, provide proper warnings and prepare for use the Products, as a reasonably prudent and careful manufacturer. The WanaBana Defendants owed this duty to Plaintiffs.

3. The Products which contained lead posed a clear and present danger to all foreseeable consumers, including children and Plaintiffs.

29

4.At all pertinent times, the WanaBana Defendants' cinnamon supplier, upon information and belief, intentionally added lead to the cinnamon to increase the cinnamon's weight-per-unit economic value. This cinnamon was then added to the Products as part of the WanaBana Defendants' manufacturing process.

5.At all pertinent times, the WanaBana Defendants knew or in the exercise of reasonable care should have known that the Products were not properly designed, manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold, supplied, prepared and/or provided with the proper warnings, and was unreasonably likely to injure users and consumers, including Plaintiff L.G.. The WanaBana Defendants' conduct created a foreseeable risk of injury to Plaintiffs and all of its customers.

6.The WanaBana Defendants breached their duty by, among other things:

> a. Failing to comply with state and federal regulations concerning the study, testing, design, development, manufacture, inspection, advertisement, marketing, promotion, distribution, and/or sale of the Products;

> b. Allowing its exclusive supplier to contaminate the cinnamon in its Products with lead;

> c. Failing to warn Plaintiffs of the hazards associated with the use of the Products, including the risk of ingesting lead and being lead poisoned after consuming the Products;

d. Failing to properly test the Products to determine the adequacy and effectiveness or safety measures, if any, prior to release for consumer use;

e. Failing to warn Plaintiffs that the Products contained lead;

f. Choosing a supplier that intentionally added lead to the product to increase the weight, and consequently, the value of the cinnamon;

g. Failing to properly test and/or conduct a quality control of the Products to determine the increased risk of children being lead poisoned from normal and/or intended use;

h. Failing to adequately test the Products to ensure the absence of lead contamination;

i. Failing to inform ultimate users, such as Plaintiffs as to the safe and proper consumption of the Products;

j. Failing to remove Products from the market or adding proper warnings when the WanaBana Defendants knew or in the exercise of reasonable care should have known the Products were defective;

k. Failing to instruct the ultimate user, such as Plaintiffs, as to the methods of reducing the type of exposure to Products which led to an increased risk of lead poisoning; and

l. Marketing and labeling the Products as safe for all uses despite knowledge to the contrary and/or lack of testing to support their marketing and labeling claims.

7. The WanaBana Defendants were grossly negligent in that they acted reckless and in conscious

disregard or indifference to the life, safety, or rights of persons exposed to their Products.

8. The WanaBana Defendants also conducted intentional misconduct through their actions of adding lead-contaminated cinnamon to its Products. These actions are imputed to the WanaBana Defendants through their exclusive Ecuadorian-based suppliers.

9. The WanaBana Defendants' foregoing conduct was grossly negligent and in breach of their duty to Plaintiffs, and a substantial contributing factor of Plaintiff L.G.'s lead poisonings. As a result, L.G. suffered bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring loss of earnings, and loss of ability to earn money in the future. The losses are permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

10. As a further result, Plaintiff, MARILYN GOMEZ has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of her minor child and will continue to suffer such losses in the future.

   **Wherefore**, Plaintiffs request a judgment against Defendants jointly and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate, and demands trial by jury of all issues raised herein.

### COUNT FOUR – DEFENDANT DOLLAR TREE – GROSS NEGLIGENCE

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. Defendant Dollar Tree is engaged in the business of selling low-cost food products. Their business model is designed to maximize its profits as a retailer, and the Products are one such example of Defendant Dollar Tree's low-quality food products sold for a large financial return.

3. In so doing, Defendant Dollar Tree selected and provided for sale to consumers the WanaBana Defendants' Products that contained lead. The Products which contained lead posed a clear and present danger to all foreseeable consumers, including children and Plaintiffs.

4. At all pertinent times, Defendant Dollar Tree had a duty of a reasonably prudent and careful seller of the Products to take precautions and appreciate risks of harm associated with the ordinary use of the Products, in light of the risks associated with the Products and lead ingestion.

5. At all pertinent times, Defendant Dollar Tree had a duty to exercise reasonable care to consumers, including to Plaintiffs, to properly promote, market, distribute, and sell the Products.

6. At all pertinent times, Defendant Dollar Tree owed a duty of due care to consumers, including Plaintiffs, as a foreseeable user of the Products, that it would be reasonably safe for all intended uses and free from defects.

7. At all pertinent times, Defendant Dollar Tree knew or should have known in the exercise of reasonable care that use of the Products which contained lead significantly increases the risk of lead poisoning and the detrimental effects therefrom, especially to children.

8. At all pertinent times, Defendant Dollar Tree knew or in the exercise of reasonable care should have known that the WanaBana Defendants were not providing warnings to the consumers of the Products concerning the risk of lead ingestion and poisoning associated with the Products. Thus, Defendant Dollar Tree had a duty to warn its customers, including Plaintiffs, of a known and foreseeable risk.

9.Defendant Dollar Tree breached its duty to Plaintiffs by failing to include information in relation to the increased risk of lead ingestion and lead poisoning caused by the Products. Defendant Dollar Tree was grossly negligent in that they acted reckless and in conscious disregard or indifference to the life, safety, or rights of persons exposed to the WanaBana products they provided for sale.

10. Defendant Dollar Tree's gross negligence was a substantial contributing factor of Plaintiff L.G.'s lead poisoning. As a result, L.G. suffered bodily injuries and resulting pain and suffering, disability,

disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring loss of earnings, and loss of ability to earn money in the future. The losses are permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

11. As a further result, Plaintiff, MARILYN GOMEZ  has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of her minor child and will continue to suffer such losses in the future.

**Wherefore**, Plaintiffs request a judgment against Defendants jointly and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

## COUNT FIVE – WANABANA DEFENDANTS–NEGLIGENCE

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. At all pertinent times, the WanaBana Defendants had a duty to reasonably and properly design, manufacture, test, inspect, package, label, distribute, market, examine, maintain, supply, provide proper warnings and prepare for use the Products, as a reasonably prudent and careful manufacturer. The WanaBana Defendants owed this duty to Plaintiffs.

3. At all pertinent times, the WanaBana Defendants knew or in the exercise of reasonable care should have known that the Products were not properly designed, manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold, supplied, prepared and/or provided with the proper warnings, and was unreasonably likely to injure users and consumers, including Plaintiff L.G.. The WanaBana Defendants' conduct created a foreseeable risk of injury to Plaintiffs and all of its customers.

4. The WanaBana Defendants breached their duty by, among other things:

    a. Failing to comply with state and federal regulations concerning the study,

testing, design, development, manufacture, inspection, advertisement, marketing, promotion, distribution, and/or sale of the Products;

b. Failing to warn Plaintiffs of the hazards associated with the use of the Products, including the risk of ingesting lead and being lead poisoned after consuming the Products;

c. Failing to properly test the Products to determine the adequacy and effectiveness or safety measures, if any, prior to release for consumer use;

d. Failing to warn Plaintiffs that the Products contained lead;

e. Choosing a supplier that intentionally added lead to the product to increase the weight, and consequently, the value of the cinnamon;

f. Failing to properly test and/or conduct a quality control of the Products to determine the increased risk of children being lead poisoned from normal and/or intended use;

g. Failing to adequately test the Products to ensure the absence of lead contamination;

h. Failing to inform ultimate users, such as Plaintiffs as to the safe and proper consumption of the Products;

i. Failing to remove Products from the market or adding proper warnings when the WanaBana Defendants knew or in the exercise of reasonable care should have known the Products were defective;

j. Failing to instruct the ultimate user, such as Plaintiffs, as to the methods of reducing the type of exposure to Products which led to an increased risk of

35

lead poisoning; and

k. Marketing and labeling the Products as safe for all uses despite knowledge to the contrary and/or lack of testing to support their marketing and labeling claims.

5.The WanaBana Defendants' foregoing conduct was negligent and in breach of their duty to Plaintiffs, and a substantial contributing factor of Plaintiff L.G.'s lead poisonings. As a result, L.G. suffered bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring loss of earnings, and loss of ability to earn money in the future. The losses are permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

6. As a further result, Plaintiff, MARILYN GOMEZ  has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of their minor child and will continue to suffer such losses in the future.

**Wherefore**, Plaintiffs request a judgment against Defendants jointly and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

## COUNT SIX– DEFENDANT DOLLAR TREE –NEGLIGENCE

1.All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2.Defendant Dollar Tree is engaged in the business of selling low-cost food products. Their business model is designed to maximize its profits as a retailer, and the Products are one such example of Defendant Dollar Tree's low-quality food products sold for a large financial return.

3.In so doing, Defendant Dollar Tree selected and provided for sale to consumers Defendant WanaBana's

products that contained lead.

4.At all pertinent times, Defendant Dollar Tree had a duty of a reasonably prudent and careful seller of the Products to take precautions and appreciate risks of harm associated with the ordinary use of the Products, in light of the risks associated with the Products and lead ingestion.

5.At all pertinent times, Defendant Dollar Tree had a duty to exercise reasonable care to consumers, including to Plaintiffs, to properly promote, market, distribute, and sell the Products.

6.At all pertinent times, Defendant Dollar Tree owed a duty of due care to consumers, including Plaintiffs, as a foreseeable user of the Products, that it would be reasonably safe for all intended uses and free from defects.

7.At all pertinent times, Defendant Dollar Tree knew or should have known in the exercise of reasonable care that use of the Products which contained lead significantly increases the risk of lead poisoning and the detrimental effects therefrom, especially to children.

8.At all pertinent times, Defendant Dollar Tree knew or in the exercise of reasonable care should have known that the WanaBana Defendants were not providing warnings to the consumers of the Products concerning the risk of lead ingestion and poisoning associated with the Products.Thus, Defendant Dollar Tree had a duty to warn its customers, including Plaintiffs, of a known and foreseeable risk.

9.Defendant Dollar Tree breached its duty to Plaintiffs by failing to include information in relation to the increased risk of lead ingestion and lead poisoning caused by the Products.

10.Defendant Dollar Tree's negligence was a substantial contributing factor of Plaintiff L.G.'s lead poisoning. As a result, L.G. suffered bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring loss of earnings, and loss of ability to earn money in the future. The losses are permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

11. As a further result, Plaintiff, MARILYN GOMEZ has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of her minor child and will continue to suffer such losses in the future.

**Wherefore**, Plaintiffs request a judgment against Defendants jointly and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

### COUNT SEVEN – DOLLAR TREE DEFENDANT – STRICT SELLER LIABILITY

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. Defendant Dollar Tree, at all times pertinent, engaged in the business of selling and distributing the Products to consumers nationwide, including in the States of New Jersey and New York and Middlesex County and Staten Island County.

3. Defendant Dollar Tree, upon information and belief, did and continues to derive substantial revenue in the State of New Jersey and the State of New York for the sale of WanaBana Defendants' fruit Purée pouches, including the Products at issue here.

4. At all pertinent times, the Products were defective at the time of sale to the ultimate consumer, like Plaintiffs, as the Products were unreasonably dangerous due to their inclusion of lead.

5. At all pertinent times, the Products were defective as the foreseeable risk of ingesting lead and lead poisoning as a result exceeds a reasonable consumer's expectations when used by children as food and is defective in design because the risk of lead exposure significantly outweighs any potential benefit.

6. The Products are defective as the packaging failed to include an adequate warning regarding the risk of lead exposure. Upon information and belief, Defendant Dollar Tree advertised and continues to sell the Products, displaying the fruit Purée pouches' packaging which purports to be "just fruit" with no

additives. Defendant Dollar Tree's website offers no warnings or details as to the potential harm associated with ingesting lead-containing fruit Purée pouches.

7. Defendant Dollar Tree knew or should have known that the presence of lead in the Products significantly increases the risk of lead ingestion and lead poisoning based upon extensive scientific knowledge dating back to the 1970s.

8.At all times pertinent, the Products were expected to and did reach the consumers, including Plaintiffs, without substantial change from the condition in which they were sold. The condition in which the Products reach Plaintiffs was one that Plaintiffs did not contemplate, in that they did not expect that the use of the Products would result in lead exposure and lead poisoning. Thus, the Products failed Plaintiffs' expectations as consumers.

9.Defendant Dollar Tree's acts and omissions, as alleged herein, were a substantial contributing factor of Plaintiff L.G.'s lead poisonings. As a result, L.G. suffered bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring loss of earnings, and loss of ability to earn money in the future. The losses are permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

10.As a further result, Plaintiff, MARILYN GOMEZ  has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of her minor child and will continue to suffer such losses in the future.

   **Wherefore,** Plaintiffs request a judgment against Defendants joint and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

## COUNT EIGHT – DOLLAR TREE DEFENDANT – BREACH OF EXPRESS WARRANTY

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. Defendant Dollar Tree expressly warranted, through direct-to-consumer marketing, social media, advertising, packaging and labeling, that the Products were safe and effective for all reasonably anticipated uses, including for ingestion by children. Plaintiff L.G. was a person whom the Dollar Tree Defendant would reasonably have expected to use, consume, and/or be affected by the Products and who did use and consume it.

3. Plaintiffs saw these advertisements and packaging, including at a retail location owned and operated by Defendant Dollar Tree, and believed the Products were safe and effective for L.G. to consume, leading them to rely on the Products' advertisements and packaging.

4.Plaintiffs are in privity with Defendant Dollar Tree because it directly sold the Products to Plaintiffs.

5. The Products are good as defined by U.C.C. § 2-105 and Defendant Dollar Tree knew or had reason to know of the specific use for which the Products, as good, are purchased.

6. The Products were defective because it did not conform to these express representations as well as New Jersey and New York common law, because the Products were unsafe for the reasonably foreseeable use and consumption of L.G. due to the increased risk of lead ingestion and lead poisoning when consumed.

7.As detailed above, Defendant Dollar Tree, through the written packaging, labeling, and advertising related to the Products expressly warranted that its Products were safe and fit for the purposes intended, that they were merchantable quality, that they were healthy and safe for human consumption, and that they did not pose dangerous health risks.

8. Plaintiff, MARILYN GOMEZ read and relied on these express warranties provided by Defendant Dollar Tree, including that the Products contained only cinnamon and apples, no added sugar, no gluten, no BPAs, and no preservatives. Plaintiff believed, based on the Defendant Dollar Tree's representations, that the Products were safe and health for her Minor Child L.G..

9. Defendant Dollar Tree breached its express warranties because the Products were not reasonably safe for their ordinary and intended purpose of providing Plaintiffs and consumers with safe and health food for their children. Instead, the Products contained lead, which is harmful to children and adults, not fit for human consumption, and not conforming to the Products' packaging.

10. Defendant Dollar Tree breached its express warranties by selling Products that contain lead.

11. The presence of lead rendered the Products unfit for their intended use and purpose and substantially impaired the use and value of the Products.

12. Defendant Dollar Tree was on notice of this breach, as it was aware or should have been aware of the inclusion of lead in the Products.

13. Defendant Dollar Tree's actions, as complained of herein, breached the warranties that the Products were of merchantable quality and fit for such use.

14. Defendant Dollar Tree's intended beneficiaries of these express warranties were ultimately consumers such as Plaintiffs, not third-party retailers, resellers, or distributors who sold the Products. Moreover, the Dollar Tree Defendant exercises substantial control over which retail locations can carry and sell the Products, which are the same outlets that Plaintiffs purchased the Products. In addition, the Dollar Tree Defendant's warranties are in no way designed to apply to third-party retailers, resellers, or distributors who purchase the Products in bulk and then sell them on an individual basis to consumers. Individual consumers are the ones who ultimately review the Product labels prior to making any purchasing decisions. Accordingly, these warranties are specifically designed to benefit the individual consumers who purchased the Products.

15. Defendant Dollar Tree's breach of express warranty was a substantial contributing factor of Plaintiff L.G.'s lead poisonings. As a result, L.G. suffered bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring loss of earnings, and loss of ability to earn money in the future. The losses are

41

permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

16. As a further result, Plaintiff, MARILYN GOMEZ  has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of her minor child and will continue to suffer such losses in the future.

   **Wherefore,** Plaintiffs request a judgment against Defendants joint and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

## COUNT NINE – WANABANA DEFENDANTS – BREACH OF EXPRESS WARRANTY

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. The WanaBana Defendants expressly warranted, through direct-to-consumer marketing, social media, advertising, packaging and labeling, that the Products were safe and effective for all reasonably anticipated uses, including for ingestion by children. Plaintiff L.G. was a person whom the WanaBana Defendants would reasonably have expected to use, consume, and/or be affected by the Products and who did use and consume it.

3. Plaintiffs saw these advertisements and packaging, including at a Dollar Tree retail location, and believed the Products were safe and effective for L.G. to consume, leading them to rely on the WanaBana Defendants advertisements and packaging.

4. Plaintiffs are in privity with the WanaBana Defendants because the WanaBana Defendants directly sold the Products to Plaintiffs via authorized retailers.

5. The Products are good as defined by U.C.C. § 2-105 and Defendants know or have reason to know of the specific use for which the Products, as good, are purchased.

6.The Products were defective because it did not conform to these express representations, as well as New Jersey and New York common law, because the Products were unsafe for the reasonably foreseeable use and consumption of L.G., due to the increased risk of lead ingestion and lead poisoning when consumed.

7. As detailed above, the WanaBana Defendants, through its written packaging, labeling, and advertising expressly warranted that its Products were safe and fit for the purposes intended, that they were merchantable quality, that they were healthy and safe for human consumption, and that they did not pose dangerous health risks.

8. Plaintiff, MARILYN GOMEZ  read and relied on these express warranties provided by the WanaBana Defendants, including that the Products contained only cinnamon and apples, no added sugar, no gluten, no BPAs, and no preservatives. Plaintiff believed, based on the WanaBana Defendants' representations, that the Products were safe and health for her Minor Child L.G..

9. The WanaBana Defendants breached their express warranties because the Products were not reasonably safe for their ordinary and intended purpose of providing Plaintiffs and consumers with safe and health food for their children. Instead, the Products contained lead, which is harmful to children and adults, not fit for human consumption, and not conforming to the Products' packaging.

10. The WanaBana Defendants breached their express warranties by selling Products that contain lead.

11. The presence of lead rendered the Products unfit for their intended use and purpose and substantially impaired the use and value of the Products.

12. The WanaBana Defendants were on notice of this breach, as they were aware or should have been aware of the inclusion of lead in the Products.

13. The WanaBana Defendants' actions, as complained of herein, breached the warranties that the Products were of merchantable quality and fit for such use.

14. The WanaBana Defendants' intended beneficiaries of these express warranties were ultimately consumers such as Plaintiffs, not third-party retailers, resellers, or distributors who sold the Products. Moreover, the WanaBana Defendants exercise substantial control over which outlets can carry and sell their Products, which are the same outlets that Plaintiffs purchased the Products. In addition, the WanaBana Defendants' warranties are in no way designed to apply to third-party retailers, resellers, or distributors who purchase the Products in bulk and then sell them on an individual basis to consumers. Individual consumers are the ones who ultimately review the Product labels prior to making any purchasing decisions. Accordingly, these warranties are specifically designed to benefit the individual consumers who purchased the Products.

15. The WanaBana Defendants' breach of express warranty was a substantial contributing factor of Plaintiff L.G.'s lead poisonings. As a result, L.G. suffered bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring loss of earnings, and loss of ability to earn money in the future. The losses are permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

16. As a further result, Plaintiff, MARILYN GOMEZ has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of her minor child and will continue to suffer such losses in the future.

   **Wherefore,** Plaintiffs request a judgment against Defendants joint and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

## COUNT TEN – ALL DEFENDANTS – NEGLIGENT MISREPRESENTATION

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. Defendants, as manufacturers and sellers of the Products at issue here, owed a duty to the consuming public in general, and to the Plaintiffs in particular, to exercise reasonable care to design, test, manufacture, inspect, label, advertise, market, and distribute a product free of unreasonable risk of harm to users, when such products are used in their intended manner and for their intended purpose.

3. Defendants' Products contained lead.

4. Exposure to lead has been linked with an increased risk of health problems, particularly for children.

5. Given the established and documented dangerous nature of lead, the presence of lead in Defendants' Products is a material fact about the safety of the Products.

6. Given the established and documented dangerous nature of lead, the presence of lead in Defendants' Products renders them unsafe, unhealthy, and unfit for human consumption.

7. As set forth fully above, Defendants made numerous misrepresentations and omissions about the health, safety, and nutrition of their Products on its advertising and labeling.

8. Defendants touted the health, safety, and nutrition of their products, including the limited ingredients and lack of preservatives or BPAs in their Products, with the intention of inducing confidence and driving consumers, including Plaintiffs, to purchase the Products.

9. Defendants knew that consumers, including Plaintiffs, would rely on these misrepresentations in making the decision to purchase their Products.

10. Such representations were materially false given the presence of lead in Defendants' Products.

11.Defendants knew that reliance on these representations could result in loss or injury.

12. Defendants omitted and/or concealed from its labeling, marketing, and advertising the material fact that lead was present in their Products.

13. Because of the false and misleading claims by Defendants, Plaintiff, MARILYN GOMEZ was unaware that Defendants' Products contained toxic lead. Plaintiff, MARILYN GOMEZ fed Defendants' Products to her Minor Child L.G. on the belief that Defendants' labeling and sale of Products was accurate and that the Products were unadulterated and safe for consumption.

14. Plaintiff relied on Defendants' misrepresentations and omissions on the Products' packaging, which was prepared, reviewed, and/or approved by Defendants and disseminated by Defendants throughout the United States.

15. Plaintiff did in fact justifiably rely on Defendants' representations in deciding to buy the products and feed the products to Minor Child L.G..

16. Plaintiff believed that she was allowing L.G. to consume a high-quality, additive-free, safe, and nutritious pureed fruit product from Defendants.

17. Plaintiff relied on the nutritional and safety claims on the packaging of the Products prior to allowing L.G. to consume the Products.

18.Plaintiff would not have fed L.G. the Defendants' Products had she known that there was a risk that the Products may contain lead.

19.As a result, Plaintiff Minor Child L.G. suffered bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring loss of earnings, and loss of ability to earn money in the future. The losses are permanent or

continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

20. As a further result, Plaintiff, MARILYN GOMEZ has incurred the expenses of testing, treatment, and medical and nursing care of her Minor Child and will continue to suffer such losses in the future.

**Wherefore,** Plaintiffs request a judgment against Defendants joint and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

### COUNT ELEVEN – WANABANA DEFENDANTS – FRAUDULENT MISREPRESENTATION

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. In the course of business, the WanaBana Defendants designed, manufactured and sold the Products, knowing it was reasonable and foreseeable that children and consumers would consume the Products.

3. At all relevant times, the WanaBana Defendants intentionally, willfully, and/or recklessly, with the intent to deceive, misrepresented and/or concealed material facts to consumers, including Plaintiffs.

4. At all relevant times, the WanaBana Defendants misrepresent and/or concealed material facts concerning the Products to consumers, including Plaintiffs, with knowledge of the falsity of their misrepresentations.

5. The WanaBana Defendants were aware of the dangerous and defective condition of the Products and intentionally withheld this information from Plaintiffs, the healthcare field, and the general public even though these significant dangers were not readily obvious to ordinary users.

6. At all pertinent times and upon information and belief, the misrepresentations and concealments made by the WanaBana Defendants concerning the Products include, but are not limited to the following:

      i.  Falsely labeling and advertising the Products: "I am fruit."

    ii.  Knowingly misrepresenting to Plaintiffs and the public, through the advertisements described above, that the Products is safe for consumption;

    iii.  Intentionally failing to disclose that the Products contain lead on its packaging;

    iv.  Intentionally failing to issue statements on its United States social media pages which inform consumers of the recall of its products.

    v.  Intentionally failing to include adequate warnings with the Products regarding the potential and actual risks of consuming the Products which contain lead;

    vi.  Despite the WanaBana Defendants' knowledge regarding the harmful effects of lead poisoning, particularly in children, the WanaBana Defendants falsely marketed, advertised, labeled and sold the Products as safe for public consumption and usage, including for ingestion by children.

7. Plaintiffs justifiably relied upon the aforementioned misrepresentations and concealments by the WanaBana Defendants and the Minor Child L.G. consumed the Products as described herein for several months.

8. The WanaBana Defendants' fraudulent misrepresentations directly and in natural and continuous sequence produced and contributed substantially to Plaintiffs' reliance on the WanaBana Defendants' fraudulent misrepresentations and concealments, Plaintiff L.G. was seriously and permanently injured.

9. The WanaBana Defendants' fraudulent misrepresentations directly and proximately produced and contributed substantially to Plaintiffs' reliance, from which Minor Child L.G. sustained damages including injuries and illnesses and was deprived of the opportunity of informed free choice in connection with the purchase, use of and exposure to the Products.

10. As a direct and proximate result of Plaintiff's L.G.'s ingestion of the Products, L.G. suffered bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring, loss of earnings, and loss of ability to earn money in the future. The losses are permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

11. As a further result, Plaintiff, MARILYN GOMEZ has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of her minor child and will continue to suffer such losses in the future.

12. The conduct of the WanaBana Defendants in continuing to market, promote, sell and distribute the Products while fraudulently concealing knowledge that the Products were failing and performing as represented and intended, shows a complete indifference to, or conscious disregard for the safety of consumers, including Plaintiffs.

   **Wherefore,** Plaintiffs request a judgment against Defendants joint and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

## COUNT TWELVE – ALL DEFENDANTS – VIOLATION OF DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. At all pertinent times, Defendants engaged in deceptive trade practices, in violation of New Jersey and New York's Deceptive and Unfair Trade Practice Act.

3. New Jersey and New York have enacted statutes to protect consumers from deceptive, fraudulent, and unconscionable trade and business practices. Defendants violated these statutes by knowingly and falsely representing that the subject Products were fit to be used for the purpose for which it was intended, when Defendants knew it was defective and dangerous, in the manufacturing, distributing, marketing, promoting, and sale of the Products in the following ways:

      i. Representing that the Products contained "only fruit;" and were nutritional foods for children to ingest when the purported benefits of such usage were disproportionately outweighed by the significant increase in the likelihood of lead poisoning when consumed.

      ii. Representing that the Products are of a particular standard or quality, purportedly safe for consumers and children to ingest, when Defendants knew or in the exercise of reasonable care should have known that such use would lead to significant increased likelihood of lead poisoning;

      iii. Continuing to advertise the Products as safe, when Defendants have known that lead exposure and poisoning, particularly in children, can pose significant health and developmental issues.

      iv. Consistently engaging in advertising campaigns in print and on the web promoting the purported health and nutritional benefits of the Products when consumed, promoting confusion as Product testing and health agencies say otherwise.

      v. Otherwise engaging in practices that are unfair and/or deceptive to consumers, including Plaintiffs.

4. As a direct and proximate result of Defendants' deceptive trade practices in the marketing, promoting, selling, distributing, advertising, and offering for sale the Products to consumers, Plaintiff was harmed. Had Plaintiff received a warning that the use of the Products would expose her Minor Child L.G. to lead, Plaintiff would not have purchased or used the Products. Plaintiff L.G.'s use of the Products proximately caused her lead poisoning.

5. As a direct and proximate result of Defendants' design, manufacture, marketing, sale and distribution of the Products, Plaintiff Minor Child L.G. suffered bodily injuries

and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring, loss of earnings, and loss of ability to earn money in the future. The losses are permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

6. As a further result, Plaintiff, MARILYN GOMEZ  has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of her minor child and will continue to suffer such losses in the future.

   **Wherefore,** Plaintiffs request a judgment against Defendants joint and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

### COUNT THIRTEEN –ALL DEFENDANTS – UNJUST ENRICHMENT

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. Plaintiff, MARILYN GOMEZ  and other consumers conferred a monetary benefit on Defendants, and Defendants had knowledge of this benefit.

3. By its wrongful acts and omissions described herein, including selling the Products containing lead, Defendants were unjustly enriched at the expense of Plaintiffs and consumers.

4. Plaintiffs' detriment and Defendants' enrichment were related to and flowed from the wrongful conduct alleged herein.

5. Defendants have profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiffs under circumstances in which it would be inequitable for Defendants to

retain the profits, benefits, and other compensation obtained from its wrongful conduct as described herein in connection with selling the Products.

6. Plaintiffs have been damaged as a direct and proximate result of Defendants' unjust enrichment because they would not have purchased the Products had they known that the Products contained lead.

7. Defendants either knew or should have known that payments rendered by Plaintiffs and other consumers were given and received with the expectation that the Products were free of lead. It is inequitable for Defendants to retain the benefit of payments under these circumstances.

8. Plaintiffs are in privity with Defendants because Defendants either directly sold the Products to Plaintiffs via authorized retailers or directly sold to Plaintiffs as an authorized retailer.

9. As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiffs are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants for their inequitable and unlawful conduct.

10. As a result, Plaintiff Minor Child L.G. suffered bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring, loss of earnings, and loss of ability to earn money in the future. The losses are permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

11. As a further result, Plaintiff, MARILYN GOMEZ has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of her minor child and will continue to suffer such losses in the future.

**Wherefore,** Plaintiffs request a judgment against Defendants joint and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against the Defendants on each of the above-referenced claims and Causes of Action and as follows:

      a. In favor of Plaintiff and against all Defendants, for damages in such amounts as may be proven at trial;

      b. Compensation for compensatory damages in excess of the jurisdictional amount, including, but not limited to mental pain and suffering, emotional distress, and all other- noneconomic damages in an amount to be determined at trial of this action.

      c. Awarding economic damages in the form of medical expenses, future medical expenses, chelation treatment, nutritional consulting, out of pocket expenses, lost earnings, and other economic damages in an amount to be determined at a trial of this action;

      d. Awarding restitution and disgorgement of revenues as appropriate;

      e. Attorney's fees and costs;

      f. Pre-judgment interest;

      g. Post-judgment interest;

      h. Statutory damages as available'

      i. Awarding Plaintiffs the cost of these proceedings; and

      j. Such other and further relief as this Court deems just and proper.

      k. Punitive damages

_____
ANGLIN REA CAHALANE & PIEPER, P.A.
Attorney for Plaintiff(s)
By: Patrick H. Cahalane, Esq.

## JURY DEMAND

Pursuant to Rule 1:8-2(b), plaintiffs hereby demand that the issues herein be tried by a jury of six (6) persons.

_____
ANGLIN REA CAHALANE & PIEPER, P.A.
Attorney for Plaintiff(s)
By: Patrick H. Cahalane, Esq.

## CERTIFICATION

I certify that to my knowledge the within action is the only action pending concerning the subject occurrence or transaction.

_____
ANGLIN REA CAHALANE & PIEPER, P.A.
Attorney for Plaintiff(s)
By: Patrick H. Cahalane, Esq.

## DESIGNATION OF TRIAL COUNSEL

In accordance with R.4:25-4, Patrick H. Cahalane, Esq., is hereby designated as trial counsel for plaintiff.

_____
ANGLIN REA CAHALANE & PIEPER, P.A.
Attorney for Plaintiff(s)
By: Patrick H. Cahalane, Esq.

# Civil Case Information Statement

## Case Details: MIDDLESEX | Civil Part Docket# L-003463-25

**Case Caption:** GONZALEZ LESANDRA  VS WANABANA LLC

**Case Initiation Date:** 06/09/2025

**Attorney Name:** PATRICK H CAHALANE

**Firm Name:** ANGLIN REA & CAHALANE, PA

**Address:** 1005 EASTPARK BOULEVARD CRANBURY NJ 08512

**Phone:** 6094090444

**Name of Party:** PLAINTIFF : GONZALEZ, LESANDRA

**Name of Defendant's Primary Insurance Company (if known):** Unknown

**Case Type:** PERSONAL INJURY

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: LESANDRA GONZALEZ?** NO

**Are sexual abuse claims alleged by: MARILYN GONZALEZ?** NO

**Are sexual abuse claims alleged by: MARILYN GONZALEZ?** NO

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE

### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
        **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
        **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO
**Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

06/09/2025                                              /s/ PATRICK H CAHALANE
Dated                                                  Signed

MIDDLESEX VICINAGE CIVIL DIVISION
P O BOX 2633
56 PATERSON STREET
NEW BRUNSWICK    NJ 08903-2633

                                        TRACK ASSIGNMENT NOTICE

COURT TELEPHONE NO. (732) 645-4300
COURT HOURS  8:30 AM - 4:30 PM

                        DATE:   JUNE 09, 2025
                        RE:     GONZALEZ LESANDRA  VS WANABANA LLC
                        DOCKET: MID L -003463 25

     THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 2.

     DISCOVERY IS   300 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

     THE PRETRIAL JUDGE ASSIGNED IS:  HON JOSEPH REA

      IF YOU HAVE ANY QUESTIONS, CONTACT TEAM     004
AT:  (732) 645-4300 EXT 88905.

      IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
      PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                        ATTENTION:
                                ATT: PATRICK H. CAHALANE
                                ANGLIN REA & CAHALANE, PA
                                1005 EASTPARK BOULEVARD
                                CRANBURY         NJ 08512

ECOURTS

ANGLIN REA CAHALANE & PIEPER, P.A.
Patrick H. Cahalane, Esq., ID #02152-1992
Attorney for Plaintiff(s)
1005 Eastpark Boulevard
Cranbury, New Jersey 08512
(609)409-0444

|  |  |  |
|---|---|---|
| L.G., a minor through her mother and natural guardian, MARILYN GONZALEZ, and, MARILYN GONZALEZ, individually, | : : : : | SUPERIOR COURT OF NEW JERSEY LAW DIVISION |
| *Plaintiff(s)* | : | MIDDLESEX COUNTY |
| vs. | : |  |
| WANABANA LLC; WANABANA USA LLC; DOLLAR TREE STORES, INC.; JOHN DOE CORPS. 1-10 | : : : | Docket No. MID-L-3463-25 |
|  | : | Civil Action |
| *Defendant(s)* | : | **AMENDED COMPLAINT** |

L.G., a minor through her mother and natural guardian, MARILYN GONZALEZ, and, MARILYN GONZALEZ individually,    (hereinafter collectively referred to as "Plaintiffs"), file this complaint against WanaBana LLC, WanaBana USA LLC (hereinafter referred to as "WanaBana Defendants"), John Doe Corporations 1-10 (hereinafter referred to as "John Doe Parties"), and Dollar Tree Stores, Inc. (hereinafter referred to as "Dollar Tree") all collectively referred to as "Defendants" for personal injuries and damages sustained as a result of plaintiff, L.G., a minor through her mother and natural guardian, MARILYN GONZALEZ, ingestion of lead contained in WanaBana Defendant's product, WanaBana Apple Cinnamon Fruit Purée (hereinafter referred to as "Products"), and sold by Dollar Tree. Plaintiffs' allegations are made upon their personal knowledge, acts and experiences and, as to all other matters, upon information and belief.

## <u>NATURE OF THE ACTION</u>

1. Plaintiff MARILYN GONZALEZ is the natural mother of L.G., a minor.

2. Plaintiff L.G. consumed Defendants' Products and suffered catastrophic life-long injuries, including lead poisoning that will require continued medical monitoring, as a result of her consumption of Defendants' lead-contaminated Products.

3. The WanaBana Defendants design, manufacture, distribute, test, package, label, promote, market, advertise, distribute, and provide for sale fruit Purée "pouches," including the lead-contaminated apple cinnamon Products at issue here, throughout the United States.

4. The Dollar Tree Defendant is a retailer and seller of the WanaBana Defendants' fruit Purée pouches, including the lead-contaminated cinnamon apple Products.

5. Defendants are each liable to Plaintiffs for the injuries Plaintiffs have suffered by virtue of the doctrine of joint and several liability. Further, as alleged herein, Defendants worked and work in tandem to sell the Products.

## **THE PARTIES**
### **Plaintiffs**

1. Plaintiffs MARILYN GONZALEZ who, along with her Minor Child, L.G., are citizens and residents of Parlin, Middlesex County, New Jersey.

2. Minor child L.G. consumed Defendants' products from approximately August 2022 to August 2023, when L.G. was approximately 2 years old and during her developmental stages. During this time period, L.G. consumed several pouches of Defendants' Products.

3. As a result of her ingestion of Defendants' Products, L.G. has suffered catastrophic, life-long injuries including lead poisoning.

### ***Defendants***

1. Defendant WanaBana LLC is a Florida Limited Liability Corporation with its principal place of business

2

at 9405 N. Miami Ave., Miami Shores, FL 33150.

2.Defendant WanaBana LLC contracts for ingredients for, manufactures, tests, packages, labels, promotes, markets, advertises, and/or distributes, and sells the Products throughout the United States, including in Central New Jersey and Staten Island, New York.

3.Defendant WanaBana LLC registered as a Florida Limited Liability Corporation on January 11, 2018.

4.Defendant WanaBana USA LLC is a Florida Limited Liability Corporation with its principal place of business at 1413 Ponce De Leon Ave., Ste. 301 San Juan, Puerto Rico 00907.

5.Defendant WanaBana USA LLC contracts for ingredients for, manufactures, tests, packages, labels, promotes, markets, advertises, and/or distributes, and sells the Products throughout the United States, including in Middlesex County, State of New Jersey and Staten Island County, New York.

6.The WanaBana Defendants produce, manufacture, market, distribute, and/or sell pureed fruit and vegetable products comprised of various flavorings. These products are manufactured, produced, marketed, and distributed out of Florida. At all times relevant to this Complaint, Defendant WanaBana's products were sold throughout USA the including in State of New Jersey and State of New York.

7.Defendant Dollar Tree Stores, Inc. is a Virginia Limited Liability Corporation with is principal place of business at 500 Volvo Parkway, Chesapeake, Virginia 23320.

8.At all times relevant to this Complaint, Defendant Dollar Tree Stores, Inc., marketed, advertised, sold and/or distributed the WanaBana Defendants' products to Plaintiffs and across the United States, including throughout the State of New Jersey and State of New York.

9.Defendants John Doe Corporations 1-10 are the fictitious names of corporations, partnerships, or other business entities or organizations whose identities are not presently known, and who are the alter egos of or are otherwise responsible for the conduct or liability of those who developed, manufactured, packaged, sold, supplied purchased, marketed, promoted, advertised, distributed, labeled, sold, and/or retained

3

profits from the Products to which Plaintiff L.G. was exposed.

10. Defendants as used in this Complaint collectively refers to and means Defendants WanaBana LLC, WanaBana USA LLC, Dollar Tree Stores, Inc., and the John Doe parties, either or both in its own right or as a corporate successor to an entity or person whose acts, omissions, undertakings, or activities are attributed to it by contract or operation of law.

## JURISDICTION AND VENUE

1.This is an action for damages in excess of fifty-thousand dollars.

2. This Court has original jurisdiction, as Defendants committed tortious acts within the State of New Jersey and State of New York.

3.Plaintiffs are entitled to bring this action before this Court as the WanaBana Defendants maintain a corporate residence in the State of New Jersey and State of New York.

4. The WanaBana Defendants contract with suppliers and import their Products from Ecuador for distribution throughout the United States via a large shipping and warehouse facility in Jacksonville, Florida. From this Florida location, the WanaBana Defendants then distribute the Products throughout the United States, making them available at numerous online and retail outlets including through Defendant Dollar Tree stores.

5.The WanaBana Defendants regularly and systematically conduct business, including importing, contracting, distributing, and selling its products—including the Products at issue here— in the State of New Jersey and the State of New York and the United States.

6.During all relevant times, the WanaBana Defendants controlled the sourcing of ingredients, quality control, testing, manufacturing, design, packaging, labeling, marketing, promotion, advertising, distribution, and sales of their Products. Therefore, the WanaBana Defendants had control over the contents, packaging and labeling of their Products.

4

7. The WanaBana Defendants have also been involved in the manufacture, design, testing, packaging, labeling, marketing, advertising, promotion, distribution, and sales of the Products under the WanaBana name throughout the United States, including in the State of New Jersey and the State of New York. The WanaBana Defendants have done so continuously throughout the relevant time period.

8. The Defendant Dollar Tree regularly and systematically conducts business, including selling WanaBana Defendants' products—including the Products at issue here—in Middlesex County and Staten Island County, to consumers in Middlesex County and State Island County, and throughout New Jersey, New York and the United States.

9. The Dollar Tree Defendant has sold the Products to consumers continuously throughout the relevant time period here, including in New Jersey, New York and in Middlesex County, New Jersey and Staten Island County, New York.

10. Accordingly, all Defendants are subject to the jurisdiction of this Court.

11. Venue is likewise proper in Middlesex County because all Defendants are subject to personal jurisdiction in Middlesex County and regularly conduct substantial business in Middlesex County. Moreover, a substantial part of the events, acts and transactions giving rise to the action—including distribution, marketing, promotion, and manufacturing of the Products—occurred in Middlesex County, New Jersey.

## FACTUAL ALLEGATIONS: Plaintiffs' Facts

1. In or around August 2022, Plaintiff MARILYN GONZALEZ began purchasing WanaBana Apple Cinnamon Fruit Purée pouches, from a store owned and operated by Defendant Dollar Tree, for her Minor Child L.G..

2. Plaintiff MARILYN GONZALEZ, as the parent of the Minor Child, seeks to provide a diet that is both nutritious and healthy for her young and developing Minor Child.

5

3.As a result of these concerns, Plaintiff MARILYN GONZALEZ relied heavily on the Products' labeling which indicated it was "kosher," "additive-free," and "USDA Organic" when purchasing the Defendants' WanaBana Apple Cinnamon Fruit Purée pouches for her Minor Child.

4. Minor Child L.G. began consuming Defendants' WanaBana Apple Cinnamon Fruit Purée pouches in or around March 2022 to March 2023, when L.G. was approximately two years old.

5.Minor Child L.G. consumed the "pouches" of Defendants' Products until approximately August 2023.

6.In August of 2023, as part of her medical exam, L.G.'s physician tested her blood. The physician subsequently discovered that L.G. had an elevated level of lead in her system, with a blood lead level of 6.8 µg/dL.

7.L.G.'s elevated blood lead level caused, Plaintiff MARILYN GONZALEZ worry and concern for her Minor Child's health.

8. Plaintiff MARILYN GONZALEZ also had her and her 10 year old son's blood collected for lead testing; the results of both collections showed normal blood lead levels. Plaintiff MARILYN GONZALEZ also had her property tested for lead; the results showed normal lead levels.

9.In response to this new development, the Middlesex County Environmental Health Department conducted a lead investigation into L.G.'s home — no sources of lead were found at the Minor Child's home.

10. As extensive lead investigations exhausted plausible other sources of lead to explain the cause of the Minor Child's elevated blood lead level, the Minor Child's physician recommended that Plaintiff MARILYN GONZALEZ conduct an "elimination diet" – a process-of-elimination audit of the food consumed in Plaintiffs' household.

6

11. Through doing an elimination diet during approximately July of 2023, Plaintiffs realized that the only food consumed by the Minor Child that was not consumed by Plaintiffs MARILYN GONZALEZ and her 10 year old son, were the Defendants' WanaBana Fruit Purée Products.

11. Immediately following the elimination diet, the Minor Child stopped consuming Defendants' Products.

12. Accordingly, other blood lead tests were conducted on L.G.. These subsequent tests revealed that the Minor Child's blood lead levels had declined.

13. Since eliminating Defendants' Products from her diet, L.G.'s blood lead level declined from 6.8 μg/dL to 1.6 μg/dL. Following the Minor Child's exposure, Plaintiff, MARILYN GONZALEZ, began treatments for the Minor Child for lead extraction, and developmental and medical monitoring.

14. Continued treatment is necessary for childhood lead poisoning victims, such as L.G., because lead poisoning can manifest itself throughout an individual's life through developmental delays, learning difficulties, irritability, loss of appetite, sluggishness and fatigue, abdominal pain, vomiting, constipation, hearing loss, and seizures. As a result, regular monitoring is required for early detection of lead poisoning manifestations.

15. As a result of consuming Defendants' Products, L.G. is subject to continued treatment and monitoring, requiring routine appointments with physicians, chelation treatment, blood lead level testing, developmental testing, and regular appointments with a nutritionist.

16. Recent physician testing for L.G. reports that her elevated blood lead levels have decreased less and less from August 2023 to September 2023 to October 2023 since L.G. stopped consuming Defendants' Products and Plaintiff, MARILYN GONZALEZ prepared all food for L.G.'s intake.

## *North Carolina Public Health Authorities' Investigation of Plaintiffs' Lead Exposure Leads to FDA Action and Recall*

1.Upon North Carolina public health authorities' discovery of lead contained in Defendants' Products purchased and consumed by Plaintiffs, as well as the Products simultaneously being linked to many childhood lead poisoning cases in North Carolina, North Carolina public health authorities issued a statement ("NCDHHS Statement") regarding four children in the North Carolina who were found to have high levels of lead in their blood linked to the WanaBana Defendants' Purée products.[1]

2. On or about October 30, 2023, the FDA issued a public health alert, based on the NCDHHS Statement and coordinated investigations among North Carolina public health authorities, that the Products contained "extremely high levels" of the lead (hereinafter referred to as "FDA Alert"). [2]

3. The FDA Alert stated that the NCDHHS "analyzed multiple lots of WanaBana apple cinnamon fruit puree, detecting extremely high concentrations of lead."[3]

------------------------

[1] North Carolina Department of Health and Human Services ("NCDHHS"), *NCDHHS Urges Caution After Reportable Lead Found in WanaBana Brand Apple Cinnamon Puree*, https://www.ncdhhs.gov/news/press-releases/2023/10/28/ncdhhs-urges-caution-after-reportable- lead-found-WanaBana-brand-apple-cinnamon-puree, Oct. 28, 2023 (last accessed Jan. 18, 2023) ("NCDHHS Statement").

[2] Food and Drug Administration ("FDA"), *FDA Advises Parents and Caregivers Not to Buy or*

*Feed WanaBana Apple Cinnamon Fruit Purée Pouches to Toddlers and Young Children Because of Elevated Lead Levels*, https://www.fda.gov/food/alerts-advisories-safety-information/fda- advises-parents-and-caregivers-not-buy-or-feed-WanaBana-apple-cinnamon-fruit-puree-pouches, Nov. 3, 2023 (last accessed Jan. 18, 2023) ("FDA Alert").

[3] *Id.*

4.The FDA Alert also stated that "The FDA has reviewed and supports NCDHHS's analytical findings and found that analytical results at this level could result in acute toxicity" and that it "has shared the results with [WanaBana Defendants] whose representatives are cooperating with the FDA and have agreed to voluntarily recall all WanaBana apple cinnamon fruit purée pouches regardless of expiration." [4]

5.The FDA identified and confirmed the serious health implications arising from lead exposure and its toxicity.[5]

6.On November 3, 2023, the investigation into WanaBana Defendants' Products was transferred to the FDA's Coordinated Outbreak Response & Evaluation (CORE) Network for continued investigation "in collaboration with the Centers for Disease Control and Prevention (CDC) and state and local partners."[6]

7.On November 09, 2023, the FDA announced that the recall of WanaBana Apple Cinnamon Fruit Purée pouches was expanded to include Schnucks Apple Sauce 90g pouches with cinnamon, and Weis Cinnamon Apple Sauce 90g, both of which are independently distributed private label brands of the WanaBana Defendants.[7]

8.The FDA also made a statement that "FDA is aware that, as of December 13 [2023], recalled WanaBana Apple Cinnamon Purée products (including recalled three packs) were still on the shelves at several Dollar Tree stores in multiple states. As of December 19 [2023], FDA also

---

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] FDA, *Company Announcement: WanaBana Recalls WanaBana, Weis, and Schnucks Apple Cinnamon Fruit Purée Pouches & Cinnamon Apple Sauce Due to Elevated Lead* Levels, Nov. 9, 2023, https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/WanaBana-recalls-WanaBana-weis-and-schnucks-apple-cinnamon-fruit-puree-pouches-cinnamon-apple-sauce (last accessed Jan. 18, 2024)

received a report that recalled WanaBana Apple Cinnamon Purée product (including recalled three packs) may still be on shelves at Family Dollar/Dollar Tree combination stores. This product should not be available for sale and consumers should not purchase this product."[8]

9.FDA officials investigating Defendants' Products have raised the possibility that the lead contamination in the cinnamon used by Defendants may have been intentionally added for economic reasons.[9]

10.The FDA's Department of Health and Human Services conducted an inspection of the facility where the Products were processed, the facility which mixes the ingredients which are put into the final products, including the Products at issue here. The inspection was conducted from December 4th to December 14th 2023.[10]

11.The FDA inspection report found that the WanaBana Defendants did not include cinnamon in its hazard analysis which required a preventative control for heavy metals, including lead.[11]

12.The FDA inspection report further reported that the WanaBana Defendants did not sample and test raw materials or the finished products for heavy metals, including lead.[12]

---

[8] FDA, *Investigation of Elevated Lead & Chromium Levels: Cinnamon Applesauce Pouches (November 2023)*, https://www.fda.gov/food/outbreaks-foodborne-illness/investigation-elevated- lead-chromium-levels-cinnamon-applesauce-pouches-november-2023 (last accessed Jan. 18, 2024).

[9] Associated Press, *Parents of Children Sickened by Lead Linked to Tainted Food Pouches Fear for Kids' Future*, https://apnews.com/article/WanaBana-apple-cinnamon-lead-poisoning-fruit- pouch-86c32266e010843d0c9ad3340ccae319 (last accessed Jan. 22, 2024).

[10] FDA Health and Human Services, *Austrofood S.A.S. Inspection*, FEI No. 3013416401, Dec. 14, 2023, 2024-01-24_fda_foia-2023-11285-ocr.pdf (tinalexander.github.io) (last accessed Jan. 24, 2024).

[11] *Id.*

[12] *Id.*

13. Additionally, the FDA inspection report concluded that the WanaBana Defendants did not have an appropriate preventative control and monitoring procedure in place to significantly minimize or prevent hazards. In particular, the report cited the food safety plan for apple cinnamon Purée to be not sufficient to prevent hazards.[13]

14. The FDA Inspection report identified that the WanaBana Defendants' Products processing facility had no controls in place to account for metal contamination from the rough edges, chips, and pitted areas that are present on the conveyer belt which processes the Purée in the Products.[14]

15. This food safety misconduct and the failed preventative controls, as identified in the FDA inspection report, resulted in the lead poisoning of dozens of children and consumers, including Plaintiff L.G..

16. As of January 3, 2024, the FDA has received 89 total complaints/Adverse Event Reports.[15]

17. The median age of the individuals affected by lead poisoning caused by Defendants' Products is one year old.[16]

18. The CDC's investigation identifies links between blood lead levels of 3.5 μg/dL or higher in children within three months of the consumption of Defendants' Products. The CDC reports that, as of January 19, 2024, it has received reports from state and local health departments that

---

[13] *Id.*

[14] *Id.*

[15] FDA, *Investigation of Elevated Lead & Chromium Levels: Cinnamon Applesauce Pouches (November 2023)*, https://www.fda.gov/food/outbreaks-foodborne-illness/investigation-elevated- lead-chromium-levels-cinnamon-applesauce-pouches-november-2023 (last accessed Jan. 23, 2024).

[16] *Id.*

implicate over 385 total cases of lead poisoning resulting from exposure to WanaBana Defendants' Products.[17]

19.Additional laboratory testing by the FDA of Defendants' Products found that the Products also contained chromium.[18]

20.On January 5, 2024, the FDA announced that WanaBana's cinnamon and recalled products also contained elevated levels of chromium contamination as high as 1201 ppm in the cinnamon. At high levels chromium can cause toxicity and the more toxic form of chromium is "chromium (VI)." The quantity of chromium detected by the FDA and the lead to-chromium ratio is consistent with lead chromate ($PbCrO_4$).[19]

21.Lead chromate typically appears as a yellow, orange, and red power and is often used as a pigment in a powder or paint. It is carcinogenic, a neurotoxin, and a nephrotoxin.

22.Lead chromate primarily affects the lungs, but it can also affect the gastrointestinal tract, liver, kidneys, and immune system. Lead chromate also contains the most toxic form of chromium (chromium (VI)).

### *The Longstanding Knowledge of the Dangers of Lead*

1.Defendants' Products contained lead and chromium.

2.Lead is a toxic heavy metal, upon which exposure and ingestion can lead to lead poisoning.

3.Lead poisoning can result in serious, life-long adverse health effects especially in children.

---

[17] Center for Disease Control and Prevention, *Lead and Chromium Poisoning Outbreak Linked to Cinnamon Applesauce Pouches*, Dec. 20, 2023, https://www.cdc.gov/nceh/lead/news/lead- poisoning-outbreak-linked-to-cinnamon-applesauce-pouches.html (last accessed Jan. 23, 2024)

[18] *Id.*

[19] *Id.*

4.The harmful effects of lead poisoning in children can include, but are not limited to: behavior and learning problems, lower IQ and hyperactivity, slowed growth, hearing problems, and anemia.[20]

5.The harm that lead poisoning inflicts on children has been well-known for decades.

6.Lead is dangerous to children, in particular, "because their growing bodies absorb more lead than adults do and their brains and nervous systems are more sensitive to the damaging effects of lead."[21]

7.Indeed, children absorb ingested lead from a given source 4-5 times more than adults. [22]

8."The neurological and behavioral effects of lead are believed to be irreversible."[23]

9.Moreover, there is no known safe blood level concentration in children.[24]

10.The World Health Organization reports that even "blood lead concentrations as low as 3.5 µg/dL may be associated with decreased intelligence in children, behavioral difficulties and learning problems.[25]

11.The World Health Organization has also identified lead as one of its 10 chemicals that constitute a major public health concern.[26]

---

[20] EPA, Learn About Lead https://www.epa.gov/lead/learn-about-lead#effects (last accessed Jan. 14, 2024).

[21] *Id.*

[22] World Health Organization, Lead Poisoning https://www.who.int/news-room/fact- sheets/detail/lead-poisoning-and- health#:~:text=Exposure%20to%20lead%20can%20affect,%2C%20liver%2C%20kidney%20and%20bones. (last accessed Jan. 14, 2024).

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.*

12.Lead in the body is known to distribute throughout a child's brain, liver, kidney, and bones. It is also stored in a child's teeth and bones, where it can accumulate over time.[27]

13.The FDA and the World Health Organization have declared lead to be dangerous to human health. [28]

14.In addition to the lead, the chromium in defendants' contaminated products represents a significant health risk. Although chromium is naturally occurring and may be normally found within a diet, at high levels it is toxic. Moreover, there is a significant difference between trivalent chromium (chromium (III)) and the significantly more toxic hexavalent chromium (chromium (VI)). Chromium (VI) is a known carcinogen and has been associated with other health effects when ingested including irritation, ulcers, and anemia. Although the health effects of eating food contaminated with chromium (VI) are not well understood, there is also no antidote to treat chromium exposure.[29]

15.The more toxic and dangerous form of chromium (chromium (VI)) is found in lead chromate. Lead chromate has been used to adulterate spices, such as turmeric, and is toxic. The FDA's reported laboratory ratios of lead and chromium found in Defendants' Products are consistent with the Products being contaminated with lead chromate.

_____

[27] *Id.*

[28] *See, e.g.*, U.S. House of Representatives Committee on Oversight and Reform, *Staff Report: Baby Foods are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury* at 2, Feb. 4, 2021, https://oversightdemocrats.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (last accessed Jan. 18, 2024).

[29] CDC, *Lead and Chromium Poisoning Outbreak Linked to Cinnamon Applesauce Pouches*,        https://www.cdc.gov/nceh/lead/news/lead-poisoning-outbreak-linked-to-cinnamon-applesauce- pouches.html (last accessed Jan. 24, 2024).

16. Adulteration of spices using lead chromate compounds has been documented globally as a growing public health concern. It has contributed to lead poisoning of children and adults around the world.[30]

17. Lead chromate is considered a hazardous substance in the United States for several reasons, including its carcinogenic nature, its risk of causing lead poisoning, and its risk of causing kidney and brain damage, among other major health concerns.[31]

18. Given the negative effects of lead on child development and adult health, the presence of these substances in food is material to reasonable consumers, including Plaintiffs, as it relates to their purchasing and consumption decisions.

19. Defendants' Products included undisclosed levels of lead, due to Defendants' failure to sufficiently monitor for their presence in the ingredients and finished products. Defendants were or should have been aware of this risk.

20. Concerns over exposure to lead, and the knowledge of such risks associated with exposure, are not a new phenomenon, and Defendants knew or should have known of the risks associated with the presence of lead in foods they sell to consumers.

21. Defendants knew or should have known that it owed consumers, including Plaintiffs, a duty of care to prevent, or at the very least, minimize the presence of lead in the Products to the extent reasonably possible.

22. Defendants knew or should have known that it owed consumers, including Plaintiffs, a duty of care to adequately test for lead in the Products and the contributing ingredients.

---

[30] Lopez, Alandra et al., *Assessing Analytical Methods for the Rapid Detection of Lead in the Global Spice Market, Environ. Sci. Technol.* 2022, 56, 23. 16996–17006, Nov. 7 2022, https://pubs.acs.org/doi/epdf/10.1021/acs.est.2c03241 (last accessed Jan. 24, 2024).

[31] National Center for Biotechnology Information (2024), *Lead Chromate Compound Summary,* https://pubchem.ncbi.nlm.nih.gov/compound/Lead-chromate (last accessed Jan. 24, 2024).

23. Defendants also had a duty to ensure the Products were not deceptively, misleadingly, unfairly, and falsely marketed and that all material information was properly and fully disclosed.

24. Defendants knew or should have known that proper and sufficient testing and/or monitoring the Products for lead in both the ingredients and finished products was critical.

25. Defendants knew, yet failed to disclose, that they were not sufficiently or adequately monitoring or testing the Products or ingredients used in the Products for lead.

26. Defendants knew or should have known they could control the levels of lead in the Products by properly monitoring and testing for lead at ingredient sourcing, manufacturing, and packaging stages, and effecting changes when needed.

27. In addition, Defendants knew or should have known that a reasonable consumer would consume the Products regularly, leading to repeated exposure to and accumulation of lead.

### *Defendants Made Material Misrepresentations and Omissions*

1. Upon information and belief, the WanaBana Defendants' exclusive packager is Ecuadorian-based company Austrofoods, which ships the WanaBana Products to the United States.[32]

2. Upon information and belief, the WanaBana Defendants' exclusive cinnamon supplier is the Ecuadorian-based company Negasmart, which provided the contaminated cinnamon which was added to the Products.[33]

---

[32] FDA, *Investigation of Elevated Lead & Chromium Levels: Cinnamon Applesauce Pouches (November 2023)*, https://www.fda.gov/food/outbreaks-foodborne-illness/investigation-elevated-lead-chromium-levels-cinnamon-applesauce-pouches-november-2023 (last accessed Jan. 24, 2024).

[33] *Id.*

16

3. Ecuadorian authorities have reported that Negasmart's cinnamon, which was added to the Products here, had higher levels of lead than allowed by Ecuador.[34]

4. Upon information and belief, WanaBana Defendants' agents vetted Negasmart and its cinnamon. These vetting procedures were either inadequate or the WanaBana Defendants deliberately disregarded in that the procedures failed to identify the presence of harmful lead and chromium in the Products.

5. Upon information and belief, neither the WanaBana Defendants nor its supplier agents tested the cinnamon before incorporating it into the Products.

6. Upon information and belief, the WanaBana Defendants selected and used ingredients from an exclusive supplier that they knew or should have known was intentionally adding lead to its cinnamon spice product to increase the weight, and therefore the value, of the cinnamon.[35]

7. The WanaBana Defendants have a duty to ensure that their products, including the Products at issue here, were not contaminated with lead or other harmful substances. This duty derives, in part, from the WanaBana Defendants' control and oversight of its agents, including its exclusive suppliers, that contribute to the manufacture of the end Products to which Plaintiff L.G. was exposed.

8. The WanaBana Defendants' duty to ensure their products, including the Products at issue here, are safe and free of harmful substances, such as lead, is of even greater significance because of the WanaBana Defendants' knowledge that their products will be consumed by children and their marketing efforts consistent with that knowledge.

---

[34] *Id.*

[35] *Id.*

9. Meanwhile, WanaBana Defendants make specific representations to consumers that their fruit pouches, including the Products at issue in this litigation, are high- quality, healthy, and safe products for consumers, including Plaintiffs, to choose for their children, including that they are the "ideal snack for the whole family."[36]

10. The product's selected slogan, "I AM ONLY FRUIT," is used by WanaBana Defendants to imply to parents that they are purchasing for their children a premium, healthy fruit Purée pouch.[37]

11. Defendants used the same slogan "I AM FRUIT" on the "apple cinnamon" flavor Products ingested by L.G.. The front packaging of the Products also reads: "No preservatives," "Gluten free," "NO SUGAR ADDED," and "KOSHER."[38]

12. The back of the apple cinnamon Products ingested by L.G. lists three ingredients: "apple puree, cinnamon powder, acidulant: citric acid."[39]

13. The back of the apple cinnamon Products ingested by L.G. also states that the Products are "Gluten Free" and contain no BPA in its packaging.[40]

14. Defendant Dollar Tree sells three-packs of the WanaBana Defendants' products in brick- and-mortar retail locations as well as through its website.[41]

---

[36] WanaBana, *Homepage*, https://WanaBana.com/ (last accessed Jan. 15, 2024)

[37] WanaBana, *Fruit Pouch*, https://WanaBana.com/fruit-pouch/ (last accessed Jan. 15, 2024).

[38] See USA Today, *All WanaBana apple cinnamon pouches recalled for potentially elevated levels of lead: FDA, image provided by FDA therein*, https://www.usatoday.com/story/money/2023/10/30/WanaBana-fruit-pouch-recall- lead/71378400007/ (last accessed Jan. 15, 2024).

[39] *See id.*

[40] *See id.*

[41] See, e.g., Dollar Tree, *WanaBana Fruit Purée Pineapple Banana Fruit Pouches, 3-ct. 7.5 oz.*, https://www.dollartree.com/WanaBana-fruit-puree-pineapple-banana-fruit-pouches-3-ct-75- oz/370158 (last accessed Jan. 15, 2024).

15. The boxing encasing the "3-pack" of fruit Purée pouches also states that the products are Kosher, contain no preservatives, are gluten free, "[r]eady to eat," and are in "BPA Free Packaging."

16. The WanaBana Defendants also tout the purported safety and quality of their products on their website. As an example, the WanaBana Defendants list six certification seals followed by the statement: "We have certifications that guarantee the excellence of our food processes. Ensuring a product with worldwide safety and quality."[42]

17. The WanaBana Defendants also displayed logos of other certifications, but the WanaBana Defendants have since removed those logos since the FDA's Alert.

18. The WanaBana Defendants' "Our Story" website page features language which tours their purported commitment to their consumers by "exceeding the expectations of our customers through the elaboration of products derived from fresh fruits that meet quality, safety, legality and authenticity parameters focused on continuous improvement in our BPM management systems, HACCP, BRC, SGCS BASC and nationally and internationally recognized quality standards."[43]

19. In order to achieve this purported commitment, the WanaBana Defendants state: "we have a team of highly qualified people, controlled processes and a food safety management system, which allows us to guarantee the safety of our products and a continuous improvement of our processes, as well as the prevention of illegal activities, corruption and bribe."[44]

---

[42] WanaBana, *Homepage*, https://WanaBana.com/ (last accessed Jan. 15, 2024). From left: certified Kosher; the Business Alliance for Secure Commerce, certified compliant; Good Manufacturing Practice certified; and certified organic by the European Union; certified organic by the U.S. Department of Agriculture; and certified organic by Quality Certification Services – Ecuador.

[43] WanaBana, Our Story, WanaBana.com/about-us (last accessed Jan. 15, 2024).

[44] *Id.*

20. The WanaBana Defendants make repeated statements on their website that their products are safe and high-quality, using their certifications as an endorsement of their purported quality: "[o]ur products not only maintain the fruit's organoleptic and nutritional characteristics, but also carry a production line with the highest standards in the market, evidenced in the certifications obtained year after year."[45]

21. The WanaBana Defendants have yet to make a post on its official English Facebook or Instagram pages warning consumers about the recall of its Products.

22. In fact, the WanaBana Defendants' Instagram postdated October 17, 2023 shows an image of its apple cinnamon pouch Products with a "Your Brand Here" affixed on the rendering of the pouch. The purpose of the post was to announce the WanaBana Defendants' attendance at the Private Label Manufacturers Association, further stating: "It's a #Wanafantastic opportunity to find out more about our innovative packaging, products, and all that we can do with #realfruit and #newblends."[46]

23. The WanaBana Defendants' Instagram Page states the following about its products in its bio/page description:[47]

    a.   "Purees, pulps & smoothies 100% Fruit;"

    b.   "No sugar added;"

    c.   "Practical package, easy to carry and enjoy;"

    d.   "Quality certification;"

---

[45] *Id.*

[46] WanaBana USA & Canada Instagram Page, *Oct. 17th 2023 Instagram Post*, Instagram.com/WanaBanausa (last accessed Jan. 15, 2024).

[47] WanaBana USA & Canada Instagram Page, Instagram.com/WanaBanausa (last accessed Jan. 15, 2024).

24. The WanaBana Defendants' Instagram Page also contains posts which explicitly markets its products to children, including with one post featuring a child painting beside an interposed graphic of a WanaBana fruit Purée pouch, with the caption stating: "Encourage your children's imagination  with a snack that will give them the vitamins and minerals they need for their growth. WanaBana is real fruit! Give WanaBana a try in its many delicious flavors."[48]

25. Another post on WanaBana Defendants' Instagram page purports that its products give energy and nutrition to children: "The energy and nutrition that WanaBana gives children is incredible. Have you tried the WanaBana Purée and pulp yet? The little ones in your home will love it."[49]

26. The WanaBana Defendants also reassert their claims about the purported safety and health benefits of their products on their Facebook page bio:[50]

> a. "A convenient and versatile way to enjoy real fruit. Made out of 100% natural fruit.No added sugar, no preservatives, no additives. BPA free package[.] Quality recognized internationally. We help develop agriculture & agroindustry with innovative solutions."

27. When advertising their products on Facebook, the WanaBana Defendants regularly use the hashtags such as "#onlyfruit," "#realfruit," "#organicfruit" to market their Purée products. [51]

------

[48] WanaBana USA & Canada Instagram Page, *Jan. 28, 2022 Instagram Post*, https://www.instagram.com/p/CZSiugRroxk/ (last accessed Jan. 15, 2024).

[49] WanaBana USA & Canada Instagram Page, *Jan. 22, 2022 Instagram Post*, https://www.instagram.com/p/CZDF9a-trCj/ (last accessed Jan. 15, 2024).

[50] WanaBana USA Facebook Page, https://www.facebook.com/WanaBanausa/ (last accessed Jan. 15, 2024).

[51] *See id.* at *Feb. 18, 2022 Post.*

28. The WanaBana Defendants also state on their Facebook page, under the privacy and legal info tab:[52]

  a. "JUST OPEN AND ENJOY – Convenient and versatile way to enjoy a real fruit wherever you go and does not need to be refrigerated."

  b. "I AM ONLY FRUIT – Made of only 100 percent natural fruit. We are dedicated to the production, and processing of fresh fruit to guarantee a healthy option for the whole family."

  c. "NATURAL - No added sugar, no preservatives, no additives, and comes in a BPA- free package giving you and your loved ones a high-quality addition to your diet."

  d. "EXTRAORDINARY STANDARDS – Recognized both at the national and international level, while also striving for innovation and contributing to the development of agriculture and agroindustry. "

29. These statements are demonstrably false, as Plaintiff Minor Child L.G. and other consumers have suffered from lead poisoning due to ingesting Defendants' Products.

30. Contrary to Defendants' representations and assurances that its Products are safe, healthy, certified, and manufactured under strict quality standards, Defendants' Products contain detectable levels of lead, which is known to pose life-long human health risks—particularly in children.

31. Defendants failed to disclose to consumers that the Products contain or have a material risk of containing lead.

---

[52] WanaBana USA Facebook Page, *About*, https://www.facebook.com/WanaBanausa/about (last accessed Jan. 15, 2024).

32.Consumers, including Plaintiffs, trusted manufacturers like the WanaBana Defendants and retailers like Defendant Dollar Tree to sell only fruit Purée products that are safe for themselves and their children, not to sell products that contain or have a material risk of containing lead.

33.Reasonable consumers, including the Plaintiffs, expect the fruit Purée products they purchase for their children will not be contaminated or have a material risk of being contaminated with lead — a substance that is known to accumulate in the body and pose significant and dangerous health consequences.

34.The quality of a product's contents, particularly as it relates to toxic contents such as lead, are material to a reasonable consumer's purchasing and consumption decision, including Plaintiffs' decisions.

35.Consumers, including Plaintiffs, lack the scientific knowledge or ability to conduct their own testing to determine whether Defendants' products do in fact contain lead, or to ascertain the true nature of the ingredients and quality of Products. Accordingly, reasonable consumers must and do rely on each Defendant to: (1) know what their Products contain; (2) regularly rest the Products to confirm their quality and compositions; and (3) properly and fully disclose these contents to consumers prior to sale and consumption.

36.Defendants knew or should have known that their Products contained lead and wrongfully failed to disclose that the Products contain or have a material risk of containing lead on its packaging.

37.Defendants knew or should have known that their Products contained lead yet chose to not disclose such information to consumers and thus actively concealed the presence and risk of lead in the Products.

38.No reasonable consumer would expect, suspect, or understand that the Products contain or have a material risk of containing lead.

39.Defendants failed to disclose on the Products' packaging that the Products contain or have a material risk of containing lead. It was only through the FDA and NCDHHS' testing, and subsequent advisories that the general public became aware of the lead content in Defendants' Products.

40. Based on Defendants' misrepresentations and omissions, no reasonable consumer, including Plaintiffs, had any reason to know, suspect, or expect that the Products contained lead.

41. Defendants are aware that their customers trust the quality of their Products and would not expect the Products to contain or have a material risk of containing lead.

42. As evidenced by Defendants' marketing, Defendants also know that reasonable consumers, especially parents, seek out products with ingredients free of toxins or contaminants, and that these consumers will pay more for products they believe meet these standards.

43. Defendants also know that reasonable consumers would not knowingly consumer, or feed to their families and children, products that contain lead.

44. Defendants knew that the consumers to whom it markets the Products would find their misrepresentations and omissions to be material and that Defendants were in a special position of public trust to those consumers.

45. In light of Defendants' representations regarding the health and quality standards of Defendants' operations and Products, Defendants knew or should have known the Products contained or had a material risk of containing lead.

46. Defendants' misrepresentations and omissions are deceptive, misleading, unfair, and/or false because the Products contain undisclosed lead.

47. Defendants' misrepresentations and omissions allowed Defendants to capitalize on, and reap enormous profits from, reasonable consumers like Plaintiffs that omitted material information as to the Products' true quality and value and, in fact, poisoned their children.

48. The popularity of pureed products in "pouch" form, including the Products at issue in this litigation, is increasing across the world, as parent-consumers, including Plaintiffs, seek nutritious and convenient

24

foods for their children.

49. The purported safety and health benefits of Defendants' Products are fully displayed on Defendants' packaging, as set forth in this Complaint.

50. Defendants' misrepresentations and omissions wrongfully convey to consumers that Defendants' Products are of superior quality and have certain characteristics that the Products do not actually possess.

51. Defendants' misrepresentations and omissions have caused consumers, including the Plaintiffs here, to believe the Products do not contain any harmful substances, when in fact the Products contain or have a material risk of containing undisclosed levels of lead, which is material information to reasonable consumers, including Plaintiffs.

52. Defendants' misrepresentations and omissions make the Products' packaging deceptive based on the presence or risk of lead in the Products. Reasonable consumers, including Plaintiffs, would consider the presence or risk of lead in the Products to be a material fact when considering which applesauce or other pureed products to consume.

53. Defendants' misrepresentations were material and misleading due to Defendants' failure to sufficiently or adequately monitor, control, or test for and disclose the presence or material risk of lead in the Products.

54. Information regarding the true nature and/or presence of lead in the Products was and is in the exclusive possession of Defendants and not available to consumers. Defendants chose to not disclose such information to consumers and thus concealed the presence and risk of lead in the Products from Plaintiffs.

55. Although Defendants are in the best position to know what content it placed on their website(s), social media sites, and in marketing materials during the relevant timeframe; the knowledge Defendants had regarding presence of lead in their Products; and their failure to disclose the existence of lead in the Products to Plaintiffs and consumers both before and after the Products were recalled; Plaintiffs allege the following facts with particularity:

25

a. WHO: Defendants made false statements and material misrepresentations and/or omissions of fact on their Products, labeling, marketing materials and in public statements, which include express and/or implicit representation that their Products were and are free of lead and were safe for human consumption.

b. WHAT: Defendants falsely and misleadingly, and through misrepresentations and omissions, led consumers to believe that their Products were and are free of lead and failed to disclose that the Products contain these materials. Thus, Defendants' conduct deceived Plaintiffs into believing that the Products were created, manufactured, and sold with such qualities. Defendants knew or should have known this information is material to reasonable consumers, including Plaintiffs, in making their decisions about the food to feed to their children, yet Defendants continued to pervasively market the Products as possessing qualities they do not possess.

c. WHEN: Defendants made material misrepresentations, false statements and/or omissions both prior to and at the time Plaintiff L.G. consumed Defendants' Products.

d. WHERE: Defendants' marketing message was uniform and pervasive, carried through material misrepresentations, false statements and/or omissions on their Products labeling and packaging, websites, and social media accounts.

e. HOW: Defendants made material misrepresentations, false statements and/or omissions regarding the presence of lead in their Products by making express and/or implicit representations in the above-referenced materials that their Products were healthy, safe, and made of premium ingredients and by omitting any facts in their marketing, labeling, and/or other descriptions of their Products that would inform a consumer as to the presence of lead.

## CAUSES OF ACTION

## COUNT ONE – ALL DEFENDANTS – STRICT LIABILITY FAILURE TO WARN

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2.At all pertinent times, the WanaBana Defendants were engaged in manufacturing, marketing, testing, promoting, selling and/or distributing Products in the regular course of business.

3.At all pertinent times, the WanaBana Defendants knew or should have known that the use of their Products which contained lead significantly increases the risk of causing catastrophic, life- altering lead poisoning in children.

4.At all pertinent times, Defendant Dollar Tree was engaged in the business of marketing, promoting and selling the Products in the regular course of business.

5.At all pertinent times, Defendant Dollar Tree knew or should have known that the use of their Products which contained lead significantly increases the risk of causing catastrophic, life- altering lead poisoning in children.

6.At all pertinent times, Plaintiffs ingested Defendants' Products, which is a reasonably foreseeable use and in a manner normally intended by the Defendants.

7.At all pertinent times, Defendants' Products were unreasonably dangerous and in a defective condition because, among other things, it failed to warn Plaintiffs of the presence of lead in the Products and the increased risk of lead poisoning and catastrophic injury as a result of their ingestion. Had Plaintiff received a warning that the Defendants' Products contained lead and that ingestion would result in lead poisoning, then Plaintiff, MARILYN GOMEZ  would not have used Defendants' Products in that manner, if at all.

8.These defects in Defendants' Products substantially contributed to Plaintiff L.G.'s lead poisonings. As a result, L.G. suffered bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring loss of earnings, and loss of ability to earn money in the future. The losses are permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

9.As a further result, Plaintiff, MARILYN GOMEZ has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of her minor child and will continue to suffer such losses in the future.

**Wherefore**, Plaintiffs request a judgment against Defendants joint and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

## COUNT TWO – WANABANA DEFENDANTS - STRICT LIABILITY – DEFECTIVE DESIGN

1.All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. The WanaBana Defendants were in the business of designing, manufacturing, packaging, labeling, selling, and distributing the Products in the regular course of business.

3.The WanaBana Defendants had a duty of a reasonable manufacturer to foresee and appreciate risks of harm associated with the ordinary use of their Products.

4.At all pertinent times, the WanaBana Defendants knew or in the exercise of reasonable care should have known that children ingest their fruit Purée Products.

5.At all pertinent times, the WanaBana Defendants knew or in the exercise of reasonable care should have known that the use of their Products which contained lead significantly increases the risk of causing catastrophic, life-altering lead poisoning in children.

6.The Products are defective in design because the foreseeable risk of becoming poisoned by lead exceeds a reasonable consumer's expectations that when consumed by children the fruit Purée Products are safe, that the risk of being exposed to lead as a result of ingestion significantly outweighs any potential benefit, and that the Products contain lead.

7.At all pertinent times, the Products were substantially in the same condition as when it left the possession of the WanaBana Defendants.

28

8. At all pertinent times, Plaintiff L.G. used the Products for food, which was a reasonably foreseeable and normally intended use by the WanaBana Defendants, as they gave no warnings in opposition, but rather promoted use of the Products for consumption by children and adults alike.

9. The Products' defective design was a substantial contributing factor of Plaintiff L.G.'s lead poisonings. As a result, L.G. suffered bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring loss of earnings, and loss of ability to earn money in the future. The losses are permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

10. As a further result, Plaintiff, MARILYN GOMEZ has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of their minor child and will continue to suffer such losses in the future.

**Wherefore**, Plaintiffs request a judgment against Defendants joint and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

## COUNT THREE – WANABANA DEFENDANTS– GROSS NEGLIGENCE

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. At all pertinent times, the WanaBana Defendants had a duty to reasonably and properly design, manufacture, test, inspect, package, label, distribute, market, examine, maintain, supply, provide proper warnings and prepare for use the Products, as a reasonably prudent and careful manufacturer. The WanaBana Defendants owed this duty to Plaintiffs.

3. The Products which contained lead posed a clear and present danger to all foreseeable consumers, including children and Plaintiffs.

29

4.At all pertinent times, the WanaBana Defendants' cinnamon supplier, upon information and belief, intentionally added lead to the cinnamon to increase the cinnamon's weight-per-unit economic value. This cinnamon was then added to the Products as part of the WanaBana Defendants' manufacturing process.

5.At all pertinent times, the WanaBana Defendants knew or in the exercise of reasonable care should have known that the Products were not properly designed, manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold, supplied, prepared and/or provided with the proper warnings, and was unreasonably likely to injure users and consumers, including Plaintiff L.G.. The WanaBana Defendants' conduct created a foreseeable risk of injury to Plaintiffs and all of its customers.

6.The WanaBana Defendants breached their duty by, among other things:

> a. Failing to comply with state and federal regulations concerning the study, testing, design, development, manufacture, inspection, advertisement, marketing, promotion, distribution, and/or sale of the Products;

> b. Allowing its exclusive supplier to contaminate the cinnamon in its Products with lead;

> c. Failing to warn Plaintiffs of the hazards associated with the use of the Products, including the risk of ingesting lead and being lead poisoned after consuming the Products;

d. Failing to properly test the Products to determine the adequacy and effectiveness or safety measures, if any, prior to release for consumer use;

e. Failing to warn Plaintiffs that the Products contained lead;

f. Choosing a supplier that intentionally added lead to the product to increase the weight, and consequently, the value of the cinnamon;

g. Failing to properly test and/or conduct a quality control of the Products to determine the increased risk of children being lead poisoned from normal and/or intended use;

h. Failing to adequately test the Products to ensure the absence of lead contamination;

i. Failing to inform ultimate users, such as Plaintiffs as to the safe and proper consumption of the Products;

j. Failing to remove Products from the market or adding proper warnings when the WanaBana Defendants knew or in the exercise of reasonable care should have known the Products were defective;

k. Failing to instruct the ultimate user, such as Plaintiffs, as to the methods of reducing the type of exposure to Products which led to an increased risk of lead poisoning; and

l. Marketing and labeling the Products as safe for all uses despite knowledge to the contrary and/or lack of testing to support their marketing and labeling claims.

7. The WanaBana Defendants were grossly negligent in that they acted reckless and in conscious

31

disregard or indifference to the life, safety, or rights of persons exposed to their Products.

8. The WanaBana Defendants also conducted intentional misconduct through their actions of adding lead-contaminated cinnamon to its Products. These actions are imputed to the WanaBana Defendants through their exclusive Ecuadorian-based suppliers.

9. The WanaBana Defendants' foregoing conduct was grossly negligent and in breach of their duty to Plaintiffs, and a substantial contributing factor of Plaintiff L.G.'s lead poisonings. As a result, L.G. suffered bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring loss of earnings, and loss of ability to earn money in the future. The losses are permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

10. As a further result, Plaintiff, MARILYN GOMEZ has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of her minor child and will continue to suffer such losses in the future.

**Wherefore**, Plaintiffs request a judgment against Defendants jointly and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate, and demands trial by jury of all issues raised herein.

## COUNT FOUR – DEFENDANT DOLLAR TREE – GROSS NEGLIGENCE

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. Defendant Dollar Tree is engaged in the business of selling low-cost food products. Their business model is designed to maximize its profits as a retailer, and the Products are one such example of Defendant Dollar Tree's low-quality food products sold for a large financial return.

3. In so doing, Defendant Dollar Tree selected and provided for sale to consumers the WanaBana Defendants' Products that contained lead. The Products which contained lead posed a clear and present danger to all foreseeable consumers, including children and Plaintiffs.

4. At all pertinent times, Defendant Dollar Tree had a duty of a reasonably prudent and careful seller of the Products to take precautions and appreciate risks of harm associated with the ordinary use of the Products, in light of the risks associated with the Products and lead ingestion.

5. At all pertinent times, Defendant Dollar Tree had a duty to exercise reasonable care to consumers, including to Plaintiffs, to properly promote, market, distribute, and sell the Products.

6. At all pertinent times, Defendant Dollar Tree owed a duty of due care to consumers, including Plaintiffs, as a foreseeable user of the Products, that it would be reasonably safe for all intended uses and free from defects.

7. At all pertinent times, Defendant Dollar Tree knew or should have known in the exercise of reasonable care that use of the Products which contained lead significantly increases the risk of lead poisoning and the detrimental effects therefrom, especially to children.

8. At all pertinent times, Defendant Dollar Tree knew or in the exercise of reasonable care should have known that the WanaBana Defendants were not providing warnings to the consumers of the Products concerning the risk of lead ingestion and poisoning associated with the Products. Thus, Defendant Dollar Tree had a duty to warn its customers, including Plaintiffs, of a known and foreseeable risk.

9.Defendant Dollar Tree breached its duty to Plaintiffs by failing to include information in relation to the increased risk of lead ingestion and lead poisoning caused by the Products. Defendant Dollar Tree was grossly negligent in that they acted reckless and in conscious disregard or indifference to the life, safety, or rights of persons exposed to the WanaBana products they provided for sale.

10. Defendant Dollar Tree's gross negligence was a substantial contributing factor of Plaintiff L.G.'s lead poisoning. As a result, L.G. suffered bodily injuries and resulting pain and suffering, disability,

33

disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring loss of earnings, and loss of ability to earn money in the future. The losses are permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

11. As a further result, Plaintiff, MARILYN GOMEZ has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of her minor child and will continue to suffer such losses in the future.

**Wherefore**, Plaintiffs request a judgment against Defendants jointly and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

### COUNT FIVE – WANABANA DEFENDANTS–NEGLIGENCE

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. At all pertinent times, the WanaBana Defendants had a duty to reasonably and properly design, manufacture, test, inspect, package, label, distribute, market, examine, maintain, supply, provide proper warnings and prepare for use the Products, as a reasonably prudent and careful manufacturer. The WanaBana Defendants owed this duty to Plaintiffs.

3. At all pertinent times, the WanaBana Defendants knew or in the exercise of reasonable care should have known that the Products were not properly designed, manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold, supplied, prepared and/or provided with the proper warnings, and was unreasonably likely to injure users and consumers, including Plaintiff L.G.. The WanaBana Defendants' conduct created a foreseeable risk of injury to Plaintiffs and all of its customers.

4. The WanaBana Defendants breached their duty by, among other things:

        a. Failing to comply with state and federal regulations concerning the study,

34

testing, design, development, manufacture, inspection, advertisement, marketing, promotion, distribution, and/or sale of the Products;

b. Failing to warn Plaintiffs of the hazards associated with the use of the Products, including the risk of ingesting lead and being lead poisoned after consuming the Products;

c. Failing to properly test the Products to determine the adequacy and effectiveness or safety measures, if any, prior to release for consumer use;

d. Failing to warn Plaintiffs that the Products contained lead;

e. Choosing a supplier that intentionally added lead to the product to increase the weight, and consequently, the value of the cinnamon;

f. Failing to properly test and/or conduct a quality control of the Products to determine the increased risk of children being lead poisoned from normal and/or intended use;

g. Failing to adequately test the Products to ensure the absence of lead contamination;

h. Failing to inform ultimate users, such as Plaintiffs as to the safe and proper consumption of the Products;

i. Failing to remove Products from the market or adding proper warnings when the WanaBana Defendants knew or in the exercise of reasonable care should have known the Products were defective;

j. Failing to instruct the ultimate user, such as Plaintiffs, as to the methods of reducing the type of exposure to Products which led to an increased risk of

35

lead poisoning; and

k. Marketing and labeling the Products as safe for all uses despite knowledge to the contrary and/or lack of testing to support their marketing and labeling claims.

5. The WanaBana Defendants' foregoing conduct was negligent and in breach of their duty to Plaintiffs, and a substantial contributing factor of Plaintiff L.G.'s lead poisonings. As a result, L.G. suffered bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring loss of earnings, and loss of ability to earn money in the future. The losses are permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

6. As a further result, Plaintiff, MARILYN GOMEZ has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of their minor child and will continue to suffer such losses in the future.

**Wherefore**, Plaintiffs request a judgment against Defendants jointly and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

## COUNT SIX– DEFENDANT DOLLAR TREE –NEGLIGENCE

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. Defendant Dollar Tree is engaged in the business of selling low-cost food products. Their business model is designed to maximize its profits as a retailer, and the Products are one such example of Defendant Dollar Tree's low-quality food products sold for a large financial return.

3. In so doing, Defendant Dollar Tree selected and provided for sale to consumers Defendant WanaBana's

36

products that contained lead.

4.At all pertinent times, Defendant Dollar Tree had a duty of a reasonably prudent and careful seller of the Products to take precautions and appreciate risks of harm associated with the ordinary use of the Products, in light of the risks associated with the Products and lead ingestion.

5.At all pertinent times, Defendant Dollar Tree had a duty to exercise reasonable care to consumers, including to Plaintiffs, to properly promote, market, distribute, and sell the Products.

6.At all pertinent times, Defendant Dollar Tree owed a duty of due care to consumers, including Plaintiffs, as a foreseeable user of the Products, that it would be reasonably safe for all intended uses and free from defects.

7.At all pertinent times, Defendant Dollar Tree knew or should have known in the exercise of reasonable care that use of the Products which contained lead significantly increases the risk of lead poisoning and the detrimental effects therefrom, especially to children.

8.At all pertinent times, Defendant Dollar Tree knew or in the exercise of reasonable care should have known that the WanaBana Defendants were not providing warnings to the consumers of the Products concerning the risk of lead ingestion and poisoning associated with the Products.Thus, Defendant Dollar Tree had a duty to warn its customers, including Plaintiffs, of a known and foreseeable risk.

9.Defendant Dollar Tree breached its duty to Plaintiffs by failing to include information in relation to the increased risk of lead ingestion and lead poisoning caused by the Products.

10.Defendant Dollar Tree's negligence was a substantial contributing factor of Plaintiff L.G.'s lead poisoning. As a result, L.G. suffered bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring loss of earnings, and loss of ability to earn money in the future. The losses are permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

11. As a further result, Plaintiff, MARILYN GOMEZ has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of her minor child and will continue to suffer such losses in the future.

**Wherefore**, Plaintiffs request a judgment against Defendants jointly and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

## COUNT SEVEN – DOLLAR TREE DEFENDANT – STRICT SELLER LIABILITY

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. Defendant Dollar Tree, at all times pertinent, engaged in the business of selling and distributing the Products to consumers nationwide, including in the States of New Jersey and New York and Middlesex County and Staten Island County.

3. Defendant Dollar Tree, upon information and belief, did and continues to derive substantial revenue in the State of New Jersey and the State of New York for the sale of WanaBana Defendants' fruit Purée pouches, including the Products at issue here.

4. At all pertinent times, the Products were defective at the time of sale to the ultimate consumer, like Plaintiffs, as the Products were unreasonably dangerous due to their inclusion of lead.

5. At all pertinent times, the Products were defective as the foreseeable risk of ingesting lead and lead poisoning as a result exceeds a reasonable consumer's expectations when used by children as food and is defective in design because the risk of lead exposure significantly outweighs any potential benefit.

6. The Products are defective as the packaging failed to include an adequate warning regarding the risk of lead exposure. Upon information and belief, Defendant Dollar Tree advertised and continues to sell the Products, displaying the fruit Purée pouches' packaging which purports to be "just fruit" with no

additives. Defendant Dollar Tree's website offers no warnings or details as to the potential harm associated with ingesting lead-containing fruit Purée pouches.

7. Defendant Dollar Tree knew or should have known that the presence of lead in the Products significantly increases the risk of lead ingestion and lead poisoning based upon extensive scientific knowledge dating back to the 1970s.

8. At all times pertinent, the Products were expected to and did reach the consumers, including Plaintiffs, without substantial change from the condition in which they were sold. The condition in which the Products reach Plaintiffs was one that Plaintiffs did not contemplate, in that they did not expect that the use of the Products would result in lead exposure and lead poisoning. Thus, the Products failed Plaintiffs' expectations as consumers.

9. Defendant Dollar Tree's acts and omissions, as alleged herein, were a substantial contributing factor of Plaintiff L.G.'s lead poisonings. As a result, L.G. suffered bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring loss of earnings, and loss of ability to earn money in the future. The losses are permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

10. As a further result, Plaintiff, MARILYN GOMEZ has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of her minor child and will continue to suffer such losses in the future.

**Wherefore,** Plaintiffs request a judgment against Defendants joint and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

## COUNT EIGHT – DOLLAR TREE DEFENDANT – BREACH OF EXPRESS WARRANTY

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. Defendant Dollar Tree expressly warranted, through direct-to-consumer marketing, social media, advertising, packaging and labeling, that the Products were safe and effective for all reasonably anticipated uses, including for ingestion by children. Plaintiff L.G. was a person whom the Dollar Tree Defendant would reasonably have expected to use, consume, and/or be affected by the Products and who did use and consume it.

3. Plaintiffs saw these advertisements and packaging, including at a retail location owned and operated by Defendant Dollar Tree, and believed the Products were safe and effective for L.G. to consume, leading them to rely on the Products' advertisements and packaging.

4. Plaintiffs are in privity with Defendant Dollar Tree because it directly sold the Products to Plaintiffs.

5. The Products are good as defined by U.C.C. § 2-105 and Defendant Dollar Tree knew or had reason to know of the specific use for which the Products, as good, are purchased.

6. The Products were defective because it did not conform to these express representations as well as New Jersey and New York common law, because the Products were unsafe for the reasonably foreseeable use and consumption of L.G. due to the increased risk of lead ingestion and lead poisoning when consumed.

7. As detailed above, Defendant Dollar Tree, through the written packaging, labeling, and advertising related to the Products expressly warranted that its Products were safe and fit for the purposes intended, that they were merchantable quality, that they were healthy and safe for human consumption, and that they did not pose dangerous health risks.

8. Plaintiff, MARILYN GOMEZ read and relied on these express warranties provided by Defendant Dollar Tree, including that the Products contained only cinnamon and apples, no added sugar, no gluten, no BPAs, and no preservatives. Plaintiff believed, based on the Defendant Dollar Tree's representations, that the Products were safe and health for her Minor Child L.G..

9. Defendant Dollar Tree breached its express warranties because the Products were not reasonably safe for their ordinary and intended purpose of providing Plaintiffs and consumers with safe and health food for their children. Instead, the Products contained lead, which is harmful to children and adults, not fit for human consumption, and not conforming to the Products' packaging.

10. Defendant Dollar Tree breached its express warranties by selling Products that contain lead.

11.The presence of lead rendered the Products unfit for their intended use and purpose and substantially impaired the use and value of the Products.

12.Defendant Dollar Tree was on notice of this breach, as it was aware or should have been aware of the inclusion of lead in the Products.

13.Defendant Dollar Tree's actions, as complained of herein, breached the warranties that the Products were of merchantable quality and fit for such use.

14.Defendant Dollar Tree's intended beneficiaries of these express warranties were ultimately consumers such as Plaintiffs, not third-party retailers, resellers, or distributors who sold the Products. Moreover, the Dollar Tree Defendant exercises substantial control over which retail locations can carry and sell the Products, which are the same outlets that Plaintiffs purchased the Products. In addition, the Dollar Tree Defendant's warranties are in no way designed to apply to third-party retailers, resellers, or distributors who purchase the Products in bulk and then sell them on an individual basis to consumers. Individual consumers are the ones who ultimately review the Product labels prior to making any purchasing decisions. Accordingly, these warranties are specifically designed to benefit the individual consumers who purchased the Products.

15. Defendant Dollar Tree's breach of express warranty was a substantial contributing factor of Plaintiff L.G.'s lead poisonings. As a result, L.G. suffered bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring loss of earnings, and loss of ability to earn money in the future. The losses are

permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

16. As a further result, Plaintiff, MARILYN GOMEZ has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of her minor child and will continue to suffer such losses in the future.

**Wherefore,** Plaintiffs request a judgment against Defendants joint and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

## COUNT NINE – WANABANA DEFENDANTS – BREACH OF EXPRESS WARRANTY

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. The WanaBana Defendants expressly warranted, through direct-to-consumer marketing, social media, advertising, packaging and labeling, that the Products were safe and effective for all reasonably anticipated uses, including for ingestion by children. Plaintiff L.G. was a person whom the WanaBana Defendants would reasonably have expected to use, consume, and/or be affected by the Products and who did use and consume it.

3. Plaintiffs saw these advertisements and packaging, including at a Dollar Tree retail location, and believed the Products were safe and effective for L.G. to consume, leading them to rely on the WanaBana Defendants advertisements and packaging.

42

4. Plaintiffs are in privity with the WanaBana Defendants because the WanaBana Defendants directly sold the Products to Plaintiffs via authorized retailers.

5. The Products are good as defined by U.C.C. § 2-105 and Defendants know or have reason to know of the specific use for which the Products, as good, are purchased.

6. The Products were defective because it did not conform to these express representations, as well as New Jersey and New York common law, because the Products were unsafe for the reasonably foreseeable use and consumption of L.G., due to the increased risk of lead ingestion and lead poisoning when consumed.

7. As detailed above, the WanaBana Defendants, through its written packaging, labeling, and advertising expressly warranted that its Products were safe and fit for the purposes intended, that they were merchantable quality, that they were healthy and safe for human consumption, and that they did not pose dangerous health risks.

8. Plaintiff, MARILYN GOMEZ read and relied on these express warranties provided by the WanaBana Defendants, including that the Products contained only cinnamon and apples, no added sugar, no gluten, no BPAs, and no preservatives. Plaintiff believed, based on the WanaBana Defendants' representations, that the Products were safe and health for her Minor Child L.G..

9. The WanaBana Defendants breached their express warranties because the Products were not reasonably safe for their ordinary and intended purpose of providing Plaintiffs and consumers with safe and health food for their children. Instead, the Products contained lead, which is harmful to children and adults, not fit for human consumption, and not conforming to the Products' packaging.

10. The WanaBana Defendants breached their express warranties by selling Products that contain lead.

11. The presence of lead rendered the Products unfit for their intended use and purpose and substantially impaired the use and value of the Products.

43

12. The WanaBana Defendants were on notice of this breach, as they were aware or should have been aware of the inclusion of lead in the Products.

13. The WanaBana Defendants' actions, as complained of herein, breached the warranties that the Products were of merchantable quality and fit for such use.

14. The WanaBana Defendants' intended beneficiaries of these express warranties were ultimately consumers such as Plaintiffs, not third-party retailers, resellers, or distributors who sold the Products. Moreover, the WanaBana Defendants exercise substantial control over which outlets can carry and sell their Products, which are the same outlets that Plaintiffs purchased the Products. In addition, the WanaBana Defendants' warranties are in no way designed to apply to third-party retailers, resellers, or distributors who purchase the Products in bulk and then sell them on an individual basis to consumers. Individual consumers are the ones who ultimately review the Product labels prior to making any purchasing decisions. Accordingly, these warranties are specifically designed to benefit the individual consumers who purchased the Products.

15. The WanaBana Defendants' breach of express warranty was a substantial contributing factor of Plaintiff L.G.'s lead poisonings. As a result, L.G. suffered bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring loss of earnings, and loss of ability to earn money in the future. The losses are permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

16. As a further result, Plaintiff, MARILYN GOMEZ has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of her minor child and will continue to suffer such losses in the future.

**Wherefore,** Plaintiffs request a judgment against Defendants joint and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

## COUNT TEN – ALL DEFENDANTS – NEGLIGENT MISREPRESENTATION

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. Defendants, as manufacturers and sellers of the Products at issue here, owed a duty to the consuming public in general, and to the Plaintiffs in particular, to exercise reasonable care to design, test, manufacture, inspect, label, advertise, market, and distribute a product free of unreasonable risk of harm to users, when such products are used in their intended manner and for their intended purpose.

3. Defendants' Products contained lead.

4. Exposure to lead has been linked with an increased risk of health problems, particularly for children.

5. Given the established and documented dangerous nature of lead, the presence of lead in Defendants' Products is a material fact about the safety of the Products.

6. Given the established and documented dangerous nature of lead, the presence of lead in Defendants' Products renders them unsafe, unhealthy, and unfit for human consumption.

7. As set forth fully above, Defendants made numerous misrepresentations and omissions about the health, safety, and nutrition of their Products on its advertising and labeling.

8. Defendants touted the health, safety, and nutrition of their products, including the limited ingredients and lack of preservatives or BPAs in their Products, with the intention of inducing confidence and driving consumers, including Plaintiffs, to purchase the Products.

9. Defendants knew that consumers, including Plaintiffs, would rely on these misrepresentations in making the decision to purchase their Products.

10. Such representations were materially false given the presence of lead in Defendants' Products.

11.Defendants knew that reliance on these representations could result in loss or injury.

12. Defendants omitted and/or concealed from its labeling, marketing, and advertising the material fact that lead was present in their Products.

13. Because of the false and misleading claims by Defendants, Plaintiff, MARILYN GOMEZ was unaware that Defendants' Products contained toxic lead. Plaintiff, MARILYN GOMEZ fed Defendants' Products to her Minor Child L.G. on the belief that Defendants' labeling and sale of Products was accurate and that the Products were unadulterated and safe for consumption.

14. Plaintiff relied on Defendants' misrepresentations and omissions on the Products' packaging, which was prepared, reviewed, and/or approved by Defendants and disseminated by Defendants throughout the United States.

15. Plaintiff did in fact justifiably rely on Defendants' representations in deciding to buy the products and feed the products to Minor Child L.G..

16. Plaintiff believed that she was allowing L.G. to consume a high-quality, additive-free, safe, and nutritious pureed fruit product from Defendants.

17. Plaintiff relied on the nutritional and safety claims on the packaging of the Products prior to allowing L.G. to consume the Products.

18.Plaintiff would not have fed L.G. the Defendants' Products had she known that there was a risk that the Products may contain lead.

19.As a result, Plaintiff Minor Child L.G. suffered bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring loss of earnings, and loss of ability to earn money in the future. The losses are permanent or

continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

20. As a further result, Plaintiff, MARILYN GOMEZ  has incurred the expenses of testing, treatment, and medical and nursing care of her Minor Child and will continue to suffer such losses in the future.

**Wherefore,** Plaintiffs request a judgment against Defendants joint and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

## COUNT ELEVEN – WANABANA DEFENDANTS – FRAUDULENT MISREPRESENTATION

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. In the course of business, the WanaBana Defendants designed, manufactured and sold the Products, knowing it was reasonable and foreseeable that children and consumers would consume the Products.

3. At all relevant times, the WanaBana Defendants intentionally, willfully, and/or recklessly, with the intent to deceive, misrepresented and/or concealed material facts to consumers, including Plaintiffs.

4. At all relevant times, the WanaBana Defendants misrepresent and/or concealed material facts concerning the Products to consumers, including Plaintiffs, with knowledge of the falsity of their misrepresentations.

5. The WanaBana Defendants were aware of the dangerous and defective condition of the Products and intentionally withheld this information from Plaintiffs, the healthcare field, and the general public even though these significant dangers were not readily obvious to ordinary users.

6. At all pertinent times and upon information and belief, the misrepresentations and concealments made by the WanaBana Defendants concerning the Products include, but are not limited to the following:

      i.   Falsely labeling and advertising the Products: "I am fruit."

47

     ii.   Knowingly misrepresenting to Plaintiffs and the public, through the advertisements described above, that the Products is safe for consumption;

    iii.   Intentionally failing to disclose that the Products contain lead on its packaging;

    iv.   Intentionally failing to issue statements on its United States social media pages which inform consumers of the recall of its products.

    v.   Intentionally failing to include adequate warnings with the Products regarding the potential and actual risks of consuming the Products which contain lead;

    vi.   Despite the WanaBana Defendants' knowledge regarding the harmful effects of lead poisoning, particularly in children, the WanaBana Defendants falsely marketed, advertised, labeled and sold the Products as safe for public consumption and usage, including for ingestion by children.

7. Plaintiffs justifiably relied upon the aforementioned misrepresentations and concealments by the WanaBana Defendants and the Minor Child L.G. consumed the Products as described herein for several months.

8. The WanaBana Defendants' fraudulent misrepresentations directly and in natural and continuous sequence produced and contributed substantially to Plaintiffs' reliance on the WanaBana Defendants' fraudulent misrepresentations and concealments, Plaintiff L.G. was seriously and permanently injured.

9. The WanaBana Defendants' fraudulent misrepresentations directly and proximately produced and contributed substantially to Plaintiffs' reliance, from which Minor Child L.G. sustained damages including injuries and illnesses and was deprived of the opportunity of informed free choice in connection with the purchase, use of and exposure to the Products.

10. As a direct and proximate result of Plaintiff's L.G.'s ingestion of the Products, L.G. suffered bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring, loss of earnings, and loss of ability to earn money in the future. The losses are permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

11. As a further result, Plaintiff, MARILYN GOMEZ has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of her minor child and will continue to suffer such losses in the future.

12. The conduct of the WanaBana Defendants in continuing to market, promote, sell and distribute the Products while fraudulently concealing knowledge that the Products were failing and performing as represented and intended, shows a complete indifference to, or conscious disregard for the safety of consumers, including Plaintiffs.

**Wherefore,** Plaintiffs request a judgment against Defendants joint and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

## COUNT TWELVE –ALL DEFENDANTS – VIOLATION OF DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. At all pertinent times, Defendants engaged in deceptive trade practices, in violation of New Jersey and New York's Deceptive and Unfair Trade Practice Act.

3. New Jersey and New York have enacted statutes to protect consumers from deceptive, fraudulent, and unconscionable trade and business practices. Defendants violated these statutes by knowingly and falsely representing that the subject Products were fit to be used for the purpose for which it was intended, when Defendants knew it was defective and dangerous, in the manufacturing, distributing, marketing, promoting, and sale of the Products in the following ways:

i. Representing that the Products contained "only fruit;" and were nutritional foods for children to ingest when the purported benefits of such usage were disproportionately outweighed by the significant increase in the likelihood of lead poisoning when consumed.

ii. Representing that the Products are of a particular standard or quality, purportedly safe for consumers and children to ingest, when Defendants knew or in the exercise of reasonable care should have known that such use would lead to significant increased likelihood of lead poisoning;

iii. Continuing to advertise the Products as safe, when Defendants have known that lead exposure and poisoning, particularly in children, can pose significant health and developmental issues.

iv. Consistently engaging in advertising campaigns in print and on the web promoting the purported health and nutritional benefits of the Products when consumed, promoting confusion as Product testing and health agencies say otherwise.

v. Otherwise engaging in practices that are unfair and/or deceptive to consumers, including Plaintiffs.

4. As a direct and proximate result of Defendants' deceptive trade practices in the marketing, promoting, selling, distributing, advertising, and offering for sale the Products to consumers, Plaintiff was harmed. Had Plaintiff received a warning that the use of the Products would expose her Minor Child L.G. to lead, Plaintiff would not have purchased or used the Products. Plaintiff L.G.'s use of the Products proximately caused her lead poisoning.

5. As a direct and proximate result of Defendants' design, manufacture, marketing, sale and distribution of the Products, Plaintiff Minor Child L.G. suffered bodily injuries

and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring, loss of earnings, and loss of ability to earn money in the future. The losses are permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

6. As a further result, Plaintiff, MARILYN GOMEZ has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of her minor child and will continue to suffer such losses in the future.

**Wherefore,** Plaintiffs request a judgment against Defendants joint and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

## COUNT THIRTEEN –ALL DEFENDANTS – UNJUST ENRICHMENT

1. All of the allegations contained in the foregoing paragraphs are incorporated and realleged herein.

2. Plaintiff, MARILYN GOMEZ and other consumers conferred a monetary benefit on Defendants, and Defendants had knowledge of this benefit.

3. By its wrongful acts and omissions described herein, including selling the Products containing lead, Defendants were unjustly enriched at the expense of Plaintiffs and consumers.

4. Plaintiffs' detriment and Defendants' enrichment were related to and flowed from the wrongful conduct alleged herein.

5. Defendants have profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiffs under circumstances in which it would be inequitable for Defendants to

retain the profits, benefits, and other compensation obtained from its wrongful conduct as described herein in connection with selling the Products.

6. Plaintiffs have been damaged as a direct and proximate result of Defendants' unjust enrichment because they would not have purchased the Products had they known that the Products contained lead.

7. Defendants either knew or should have known that payments rendered by Plaintiffs and other consumers were given and received with the expectation that the Products were free of lead. It is inequitable for Defendants to retain the benefit of payments under these circumstances.

8. Plaintiffs are in privity with Defendants because Defendants either directly sold the Products to Plaintiffs via authorized retailers or directly sold to Plaintiffs as an authorized retailer.

9. As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiffs are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants for their inequitable and unlawful conduct.

10. As a result, Plaintiff Minor Child L.G. suffered bodily injuries and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life in the past and in the future and will incur the expense of hospitalization, medical and nursing care and treatment, medical monitoring, loss of earnings, and loss of ability to earn money in the future. The losses are permanent or continuing and Plaintiff Minor Child L.G. will suffer the losses in the future.

11. As a further result, Plaintiff, MARILYN GOMEZ has incurred the expense of testing, hospitalization, and medical and nursing care and treatment of her minor child and will continue to suffer such losses in the future.

**Wherefore,** Plaintiffs request a judgment against Defendants joint and severally for compensatory and economic damages, together with interest, costs of suit, attorneys' fees and such further and other relief this Court deems just and appropriate and demands trial by jury of all issues raised herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against the Defendants on each of the above-referenced claims and Causes of Action and as follows:

     a. In favor of Plaintiff and against all Defendants, for damages in such amounts as may be proven at trial;

     b. Compensation for compensatory damages in excess of the jurisdictional amount, including, but not limited to mental pain and suffering, emotional distress, and all other- noneconomic damages in an amount to be determined at trial of this action.

     c. Awarding economic damages in the form of medical expenses, future medical expenses, chelation treatment, nutritional consulting, out of pocket expenses, lost earnings, and other economic damages in an amount to be determined at a trial of this action;

     d. Awarding restitution and disgorgement of revenues as appropriate;

     e. Attorney's fees and costs;

     f. Pre-judgment interest;

     g. Post-judgment interest;

     h. Statutory damages as available'

     i. Awarding Plaintiffs the cost of these proceedings; and

     j. Such other and further relief as this Court deems just and proper.

     k. Punitive damages

ANGLIN REA CAHALANE & PIEPER, P.A.
Attorney for Plaintiff(s)
By: Patrick H. Cahalane, Esq.

## JURY DEMAND

Pursuant to Rule 1:8-2(b), plaintiffs hereby demand that the issues herein be tried by a jury of six (6) persons.

ANGLIN REA CAHALANE & PIEPER, P.A.
Attorney for Plaintiff(s)
By: Patrick H. Cahalane, Esq.

## CERTIFICATION

I certify that to my knowledge the within action is the only action pending concerning the subject occurrence or transaction.

ANGLIN REA CAHALANE & PIEPER, P.A.
Attorney for Plaintiff(s)
By: Patrick H. Cahalane, Esq.

## DESIGNATION OF TRIAL COUNSEL

In accordance with R.4:25-4, Patrick H. Cahalane, Esq., is hereby designated as trial counsel for plaintiff.

ANGLIN REA CAHALANE & PIEPER, P.A.
Attorney for Plaintiff(s)
By: Patrick H. Cahalane, Esq.

L.G., A MINOR THROUGH HER
MOTHER AND NATURAL GUARDIAN,
MARILYN GONZALEZ, AND, MARILYN
GONZALEZ, INDIVIDUALLY

**Plaintiff**

Superior Court of New Jersey
Law Division
Middlesex County
Docket Number: MID-L-003463-25

vs.

WANABANA LLC, ET AL

**Defendant**

## AFFIDAVIT OF SERVICE

**Person to be served** (Name & Address):
DOLLAR TREE STORES, INC.
C/O CORPORATION SERVICE COMPANY, RA,  PRINCETON
SOUTH CORPORATE CENTER
100 CHARLES EWING BLVD, SUITE 160
EWING, NJ 08628

(For Use by Private Service)

```
STS2025043242
```

**Attorney:**
Patrick Cahalane, Esq.

Cost of Service pursuant to R. 4:4-3(c)

$_____

**Papers Served:**  Summons, Complaint, Prayer for Relief, Jury Demand, Certification, Designation Of Trial Counsel, CIS, Track Assignment Notice and Lawyers Referral List

**Service Data:**

Served Successfully __X__     Not Served _____     Date: 6/19/2025 _____     Time: 1:39 pm _____     Attempts:_____

| | |
|---|---|
| _____ Delivered a copy to him / her personally | Name of Person Served and relationship / title: |
| _____ Left a copy with a competent household member over 14 years of age residing therein | Johnnie Myers |
| __X__ Left a copy with a person authorized to accept service, e.g. managing agent, registered agent, etc. | Registered Agent/Managing Agent At RA Office |

**Description of Person Accepting Service:**

Sex: M____     Age: 37____     Height: 6'0"____     Weight: 200____     Skin Color: Brown_____     Hair Color: Bald_____

**Comments or Remarks:**

**Server Data:**

To Be Used Where Electronic Signature Not Available
Served Data: Subscribed and Sworn to before me on
_____2025 by the affiant who is personally known to me.

_____
NOTARY PUBLIC

HelloSign Approved E-Signature

I, Sharon McCabe Villa, was at the time of service a competent adult not having a direct interest in the litigation. I declare under penalty of perjury that the foregoing is true and correct.

06 / 19 / 2025

_____
Signature of Process Server               Date

STATUS, L.L.C.
PO Box 370
Bayville, NJ 08721
(908) 688-1414
Our Job Serial Number: STS-2025043242
Ref: GONZALEZ

Doc ID: 5b18506c50f3c26a0c1f0b7df264711ebaee1b4b